RECORD No. 24-2073

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

RICHARD P. HARROLD,

Plaintiff-Appellant,

v.

LEWIS J. HAGEN III, individually and in his
official capacity as an Officer of the Chesterfield
County Police Department,

Defendant-Appellee.

On appeal from the United States District Court
for the Eastern District of Virginia at Richmond
Civil Action No.: 3:23-cv-866

# JOINT APPENDIX

Robert J. Allen, Esquire
THORSENALLEN, LLP
5413 Patterson Ave., Suite 201
P.O. Box 17094
Richmond, VA 23226
Telephone: (804) 447-7234
Facsimile: (804) 447-7813
Email: rallen@thorsenallen.com
*Counsel for Plaintiff – Appellant*

Julie A.C. Seyfarth, Esquire
Senior Deputy County Attorney
Chesterfield County, Virginia
P.O. Box 40
Chesterfield, VA 23832
Telephone: (804) 748-1491
Facsimile: (804) 706-2615
Email: seyfarthj@chesterfield.gov
*Counsel for Defendant – Appellee*

# TABLE OF CONTENTS

Page

**Docket Sheet**……………………………………………………………………………..1

**Complaint**, ECF Doc. No. 1, filed December 20, 2023.......................................4

**Defendant's Motion to Dismiss**, ECF Doc. No. 5, filed January 11, 2024..........25

**Exhibit 1 to Defendant's Memorandum in Support of Motion to Dismiss**,
Thumb Drive with Officer Hagen's Body Worn Camera Video,
ECF Doc. No. 6-1.....................................................................................27

**Exhibit 2 to Defendant's Memorandum in Support of Motion to Dismiss**,
Warrant of Arrest (Chesterfield Cir. Ct. Dec. 26, 2021)
ECF Doc No. 6-2.....................................................................................28

**Exhibit 3 to Defendant's Memorandum in Support of Motion to Dismiss**,
Warrant of Arrest (Chesterfield Cir. Ct. Dec. 12, 2021),
ECF Doc. No. 6-3.....................................................................................30

**Exhibit 4 to Defendant's Memorandum in Support of Motion to Dismiss**,
Plea Agreement *(Commonwealth v. Harrold),* Chesterfield Cir. Ct. (Sept. 16,
2022), Case No. CR22F00804-01; -02, CR22M00805-01; -02,
ECF Doc. No. 6-4.....................................................................................32

**Exhibit 5 to Defendant's Memorandum in Support of Motion to Dismiss**,
Charge of Stat. Burglary of structure to commit larceny, etc.,
Chesterfield Cir. Ct. (May 16, 2022), Case No. CR22F00804-01,
ECF Doc. No. 6-5.....................................................................................36

Page

**Exhibit 6 to Defendant's Memorandum in Support of Motion to Dismiss**,
Charge of Stat. Burglary of structure to commit larceny, etc.,
Chesterfield Cir. Ct. (May 16, 2022), Case No. CR22F00804-02,
ECF Doc. No. 6-6.................................................................................................37

**Exhibit 1 to Defendant's Reply Memorandum in Support of Motion to
Dismiss**, Lewis Hagen III's Certificate of Authenticity of Body Worn
Camera Video, January 30, 2024,
ECF Doc. No. 10-1................................................................................................38

**Exhibit 2 Defendant's Reply Memorandum in Support of Motion to
Dismiss**, Captain Michael S. Breeden's Certificate of Authenticity
of Body Worn Camera Video, January 30, 2024, ECF No. 10-2...........................39

**Memorandum Opinion**, issued September 27, 2024, ECF No. 11.......................40

**Final Order**, entered September 27, 2024, ECF No. 12.........................................64

**Plaintiff's Notice of Appeal**, Filed October 24, 2024, ECF No. 13......................66

Respectfully submitted,

**RICHARD P. HARROLD**
*Appellant*

By: /s/ Robert J. Allen
        Counsel

Robert J. Allen (VSB No. 65214)
THORSENALLEN LLP
5413 Patterson Avenue, Suite 201
P. O. Box 17094
Richmond, VA  23226
Telephone: (804) 447-7234
Facsimile: (804) 447-7813
E-mail: rallen@thorsenallen.com
        *Counsel for Appellant*

**LEWIS J. HAGEN, III**
Appellee

By: /s/ Julie A.C. Seyfarth
        Counsel

Julie A.C. Seyfarth (VSB No. 46207)
Senior Deputy County Attorney
Chesterfield County, Virginia
P.O. Box 40
Chesterfield, VA 23832
Telephone: (804) 748-1491
Facsimile: (804) 706-2615
Email: seyfarthj@chesterfield.gov
        *Counsel for Appellee*

## CERTIFICATE OF SERVICE

In accordance with Rule 25 of the Federal Rules of Appellate Procedure and the Local Rules of the Fourth Circuit Court of Appeals, I hereby certify that on this 30th day of December, 2024, I electronically filed the foregoing Joint Appendix with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel:

> Julie A.C. Seyfarth, Esquire
> Senior Deputy County Attorney
> Chesterfield County, Virginia
> P.O. Box 40
> Chesterfield, VA 23832
> Email: seyfarthj@chesterfield.gov
> *Counsel for Appellee*

> By:        /s/ Robert J. Allen
> Robert J. Allen, Esquire
> VSB No. 65214
> ThorsenAllen LLP
> 5413 Patterson Ave., Suite 201
> P.O. Box 17094
> Richmond, VA  23226
> Telephone: (804) 447-7234
> Facsimile: (804) 447-7813
> Email: rallen@thorsenallen.com
> *Counsel for Appellant*

APPEAL,CLOSED,JURY

# U.S. District Court
# Eastern District of Virginia - (Richmond)
# CIVIL DOCKET FOR CASE #: 3:23-cv-00866-MHL

Harrold v. Hagen
Assigned to: District Judge M. Hannah Lauck
Demand: $3,000,000
Case in other court: USCA, 24-02073
Cause: 28:1331 Fed. Question: Civil Rights Violation

Date Filed: 12/20/2023
Date Terminated: 09/27/2024
Jury Demand: Plaintiff
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

## Plaintiff

**Richard P Harrold**

represented by **Robert Jackson Allen**
ThorsenAllen, LLP
5413 Patterson Ave
Suite 201
P.O. Box 17094
Richmond, VA 23226
(804) 447-7234
Fax: (804) 447-7813
Email: rallen@thorsenallen.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

## Defendant

**Lewis J Hagen, III**
*individually and in his official capacity as*
*an Officer of the Chesterfield County*
*Police Department, Chesterfield County,*
*Virginia*

represented by **Julie A.C. Seyfarth**
Chesterfield County Attorney's Office
PO Box 40
Chesterfield, VA 23832
804-748-1491
Fax: 804-717-6297
Email: seyfarthj@chesterfield.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 12/20/2023 | 1 | Complaint ( Filing fee $ 405, receipt number AVAEDC-9277816.), filed by Richard P Harrold.(Allen, Robert) (Additional attachment(s) added on 12/21/2023: # 1 Civil Cover Sheet) (jsmi, ). (Entered: 12/20/2023) |
| 12/20/2023 | 2 | Proposed Summons by Richard P Harrold. (Allen, Robert) (Entered: 12/20/2023) |
| 12/21/2023 |  | Initial Case Assignment to District Judge M. Hannah Lauck. (jsmi, ) (Entered: |

JA1

| | | 12/21/2023) |
|---|---|---|
| 12/21/2023 | 3 | Summons Issued as to Lewis J Hagen, III. NOTICE TO ATTORNEY: Please remove the headers and print two duplexed copies of the electronically issued summons for each Defendant. Please serve one copy of the summons and a copy of the Complaint upon each Defendant. Please ensure that your process server returns the service copy (executed or unexecuted) to your attention and electronically file it using the filing events, Summons Returned Executed or Summons Returned Unexecuted. (jsmi, ) (Entered: 12/21/2023) |
| 01/03/2024 | 4 | SUMMONS Returned Executed by Richard P Harrold Lewis J Hagen, III served on 12/21/2023, answer due 1/11/2024 (Allen, Robert) (Entered: 01/03/2024) |
| 01/11/2024 | 5 | MOTION to Dismiss for Failure to State a Claim by Lewis J Hagen, III. (Seyfarth, Julie) (Entered: 01/11/2024) |
| 01/11/2024 | 6 | Memorandum in Support re 5 MOTION to Dismiss for Failure to State a Claim filed by Lewis J Hagen, III. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6)(Seyfarth, Julie) (Entered: 01/11/2024) |
| 01/17/2024 | 7 | ORDER- This matter comes before the Court sua sponte. Rule 7(E) of the Local Civil Rules for the United States District Court for the Eastern District of Virginia shall not apply to this action. Any party desiring a hearing on a dispositive motion shall file a motion requesting a hearing when the motion is filed. The Court will determine whether a hearing is necessary. Signed by District Judge M. Hannah Lauck on 1/17/2024. (adun, ) (Entered: 01/17/2024) |
| 01/25/2024 | 8 | Memorandum in Opposition re 5 MOTION to Dismiss for Failure to State a Claim filed by Richard P Harrold. (Allen, Robert) (Entered: 01/25/2024) |
| 01/25/2024 | 9 | MOTION for Hearing re 5 MOTION to Dismiss for Failure to State a Claim by Richard P Harrold. (Allen, Robert) (Entered: 01/25/2024) |
| 01/31/2024 | 10 | REPLY to Response to Motion re 5 MOTION to Dismiss for Failure to State a Claim filed by Lewis J Hagen, III. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Seyfarth, Julie) (Entered: 01/31/2024) |
| 09/27/2024 | 11 | MEMORANDUM OPINION. Signed by District Judge M. Hannah Lauck on 09/27/2024. (Kski, ) (Entered: 09/27/2024) |
| 09/27/2024 | 12 | FINAL ORDER that the Court GRANTS Defendant Lewis J. Hagen Ill's Motion to Dismiss, (ECF No. 5 ). Counts I, II, III, and VII are DISMISSED WITH PREJUDICE. Counts IV, V, VI, and VIII are DISMISSED WITHOUT PREJUDICE. The Court DENIES AS MOOT Plaintiff Richard P. Harrold's Motion Requesting Oral Argument (ECF No. 9 ). Because the Court does not grant leave to amend at this time, this order is final and appealable. Mr. Harrold is advised that he has the right to appeal the decision of the Court. Should he wish to do so, written notice of appeal must be filed with the Clerk of the Court within 30 days of the date of entry hereof. Failure to file a written notice of appeal may result in the loss of the right to appeal. It is SO ORDERED. Signed by District Judge M. Hannah Lauck on 09/27/2024. (Kski, ) (Entered: 09/27/2024) |

| 10/24/2024 | 13 | NOTICE OF APPEAL by Richard P Harrold. Filing fee $ 605, receipt number AVAEDC-9812870. (Allen, Robert) (Entered: 10/24/2024) |
| 10/25/2024 | 14 | Transmission of Notice of Appeal to US Court of Appeals re 13 Notice of Appeal (All case opening forms, plus the transcript guidelines, may be obtained from the Fourth Circuit's website at www.ca4.uscourts.gov) (Lgar, ) (Entered: 10/25/2024) |
| 10/28/2024 |  | USCA Case Number 24-2073: Case Manager, RSewell, for 13 Notice of Appeal filed by Richard P Harrold. (Lgar, ) (Entered: 10/28/2024) |

| **PACER Service Center** | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 12/30/2024 13:18:04 | | | |
| **PACER Login:** | robertallenplc | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:23-cv-00866-MHL |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

JA3

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| RICHARD P. HARROLD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No.: 3:23-cv-866 |
| | ) |
| LEWIS J. HAGEN III, individually and in his | ) |
| official capacity as an Officer of the Chesterfield | ) |
| County Police Department, Chesterfield County, | ) |
| Virginia, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff, Richard P. Harrold ("Mr. Harrold" or "Plaintiff"), by counsel, respectfully states the following for his Complaint against the defendant, Lewis ("Lewie") J. Hagen III ("Officer Hagen" or "Defendant").

### I.    INTRODUCTION

1.    This action arises out of an incident in which Mr. Harrold was unnecessarily and wrongfully mauled and seriously injured by a police dog ("K-9") that was handled by Officer Hagen.

2.    Mr. Harrold is an amputee (missing his lower left leg below the knee) who also has serious a medical condition that, if untreated, can cause him to do things that are out of character for him which he later does not remember doing. For reasons that are unclear, Mr. Harrold, a man with no prior serious criminal record, broke into a car dealership on the night of December 26, 2021.

3.    That night, in responding to the call, Officer Hagen violated a series of fundamental principles concerning the use of police K-9s and the use of force by law enforcement officers

generally.

4.     Officer Hagen's actions violated Mr. Harrold's clearly established rights under the
Fourth Amendment to the United States Constitution to be free from unreasonable seizures and
excessive force in connection with a seizure. Mr. Harrold's rights under the common law of
Virginia were also violated.

5.     During his encounter with Officer Hagen and his K-9 police dog, Mr. Harrold was
unarmed and submissive and he was never a threat to any law enforcement officer, the K-9, or any
other person. Nevertheless, Officer Hagen caused the dog to attack Mr. Harrold, resulting in severe
and painful dog bites and scratches over multiple areas of his body, including his amputation stump
which was badly injured. Before gaining control of the K-9, Officer Hagen even allowed the K-9
to bite and scratch at Mr. Harrold's scrotum and anus.

## II.    PARTIES

6.     The plaintiff, Richard P. Harrold, is a natural person and citizen of the
Commonwealth of Virginia, where he currently resides.

7.     Defendant, Lewis ("Lewie") J. Hagen III, is a natural person and citizen of the
Commonwealth of Virginia, residing in Chesterfield County, Virginia.

8.     At all times relevant to this action, Officer Hagen was employed as an Officer with
the Chesterfield County Police Department ("CCPD") and acting within the scope of such
employment. His residence and regular place of business are in Chesterfield County, Virginia.

9.     CCPD is a department or agency of the County of Chesterfield, Virginia
("County").

10.    At all times relevant to this action, Officer Hagen was a K-9 handler with the
CCPD, meaning he was responsible for handling police K-9s for law enforcement purposes such

2

**JA5**

as searching for persons and drug detection.

11.    Upon information and belief, the police K-9 handled by Officer Hagen at the time
and place described herein was a patrol/drug dog named "Kona" (Badge #1599). Kona was a
Belgian Malinois which is described as "'an alert, high-energy breed, popular as both a police and
military working dog' that is 'sometimes mistaken for the German Shepherd Dog.'" *Brooks v.
Anderson Police Dept., City of Anderson,* 975 N.E.2d 395, 398 (Ind. Ct. App. 2012) (citing the
American Kennel Club website).  Kona died on January 20, 2023.

12.    Officer Hagen is sued in his individual capacity and in his official capacity as an
Officer with CCPD.

### III.    JURISDICTION AND VENUE

13.    Title 42 of the United States Code, section 1983, authorizes this action at law for
Mr. Harrold, the injured party, against Officer Hagen, who acted under color of a statute,
ordinance, regulation, custom and/or usage of the County, and subjected Mr. Harrold, or caused
Mr. Harrold to be subjected, to a deprivation of rights secured to him by the Fourth Amendment
to the Constitution of the United States, which prohibits unreasonable searches and seizures
without probable cause and the use of excessive force by law enforcement.

14.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331
and 1343 as Mr. Harrold's claims arise under an assertion of his rights under the United States
Constitution by and through 42 U.S.C. § 1983.

15.    Jurisdiction is also proper pursuant to 28 U.S.C. § 1331 as this is a civil action
arising under the Constitution or laws of the United States.

16.    This Court has supplemental jurisdiction over Mr. Harrold's state law claims
pursuant to 28 U.S.C. § 1367(a) because these claims are related to and form the same case or

3

**JA6**

controversy as Plaintiff's claims under 42 U.S.C. § 1983.

17.    Venue for this action properly lies in this Court pursuant to 28 U.S.C. § 1391(b)
and Local Rule 3 because a substantial part of the acts giving rise to the unconstitutional conduct
alleged herein arose in the Richmond Division of the Eastern District of Virginia.

## IV.    FACTUAL ALLEGATIONS

### A.    Mr. Harrold's background and medical conditions

18.    At the time of his arrest on December 26, 2021, Mr. Harrold was 44 years old.

19.    At the time, and according to documents associated with the subject charges, Mr.
Harrold was approximately five feet, ten inches tall and weighed 145 pounds.

20.    Years ago, Mr. Harrold had his left leg amputated below the knee and he uses a
prosthetic lower leg and foot. He has mobility limitations as a result.

21.    On the night in question, Mr. Harrold was unarmed. He had a small utility knife in
his pocket that he never removed or attempted to remove at any relevant time. After the K-9 attack,
while he was in handcuffs, he told officers that he had the knife in his pocket. That was the first
time any officer, including Officer Hagen, knew about the knife.

22.    After Mr. Harrold was mauled by the K-9 police dog and needed medical attention,
one of the CCPD officers described him as a "tiny human with one leg."

### B.    The events of December 26, 2021

23.    During the evening of December 26, 2021, for reasons that are unclear to Mr.
Harrold, he broke a glass door and entered a used car dealership called VA Cars, located at 7729
Midlothian Turnpike in Chesterfield County, Virginia.

24.    An alarm was triggered that eventually resulted in a report to the CCPD and
members of the CCPD responded to the scene. Officer Hagen was one of the CCPD officers who

4

responded to the scene along with his K-9 police dog, Kona.

25.     Mr. Harrold was apprehended and arrested in a most unfortunate manner, as described below.

26.     The resulting criminal charges concluded on September 16, 2022 with Mr. Harrold pleading guilty to two misdemeanors, trespassing and vandalism. All other charges were dismissed upon the Commonwealth's motion to *nolle prosequi*.

27.     Mr. Harrold was not suspected, accused, nor charged with any crime against any person (as opposed to property) or an offense that involves a threat of injury or violence against another person.

28.     Mr. Harrold was not suspected, accused, nor charged with any offense involving violence or a threat of injury directed at any of the law enforcement officers who participated in his arrest, including the K-9 police dog and Officer Hagen, the dog's handler.

**C.     The unlawful and unreasonable K-9 attack of Mr. Harrold's person caused by Defendant**

29.     On December 26, 2021, after police responded to the VA Cars location, Mr. Harrold went up a flight of stairs and waited in a storage room.

30.     He was scared, confused, and did not know what to do, but he intended to wait in the storage room until he was arrested.

31.     Mr. Harrold had been sick and without much sleep for the four previous days and he was having an episode caused by his medical condition.

32.     Mr. Harrold recalls calling out to the police, "I am not a threat" or words to that effect.

33.     Mr. Harrold heard the sound of police officers, and he expected that soon one of the officers would find him and arrest him without incident.

5

**JA8**

34.    Although the arrest could have, and should have, been routine and peaceful, it turned out to be about as violent and gory as an arrest can be due to the actions of Officer Hagen.

35.    Once other police officers had secured the perimeter of the building, Officer Hagen entered with his K-9 police dog on a leash. Officer Hagen and the K-9 began a search of the building.

36.    At about 7:10 p.m., while on a short leash held by Officer Hagen, the K-9 bit and "attacked" a cardboard box. The dog was being aggressive, and Officer Hagen was failing to bring the dog under proper control. This should have indicated to Officer Hagen that the K-9 was being improperly handled or simply out of control and should not have been used in the line of duty at that time and place.

37.    In about a minute, Officer Hagen and his K-9 police dog had located Mr. Harrold in an upstairs storage room. The K-9 stood beside Mr. Harrold who was on the floor with his knees under him and head down.

38.    Mr. Harrold glanced up at the dog and the dog saw him. Mr. Harrold recalls saying "what are you doing" in the type of friendly voice that a person often uses to speak to dogs. He recalls that the K-9 appeared calm and licked Mr. Harrold's face. Mr. Harrold then tucked his head back down towards the floor.

39.    Mr. Harrold could hear footsteps and the sound of police officers coming upstairs and approaching his location.

40.    At this time, since the K-9 had located him, Mr. Harrold fully expected that soon a police officer would ask him to surrender, put his hands in the air or behind his back, or some similar command and he intended to comply, give himself up, and allow the police to arrest him.

41.    Mr. Harrold was unaware of the presence of Officer Hagen who remained silent

6

**JA9**

and out of view. With all the commotion caused by the other officers, Mr. Harrold did not hear Officer Hagen's presence. Mr. Harrold remained still and kept his head down so as to not cause the K-9 to attack.

42.    Officer Hagen did not announce his presence or give any warning at that time that he was going to release the K-9 if Mr. Harrold did not comply with whatever order Defendant may have wanted to give. Officer Hagen gave Mr. Harrold no order at all.

43.    Officer Hagen allowed the K-9 to turn around and directly face Mr. Harrold's rear end. Mr. Harrold remained in the same submissive, fetal-like position with his head down, and continued expecting he would be asked to submit to an arrest in some manner. He was willing and prepared to do so.

44.    Yet Officer Hagen did not request or order Mr. Harrold to do anything nor did he give any warning that he was about to deploy the K-9.

45.    Instead of asking or ordering Mr. Harrold to give himself up, surrender or submit to a peaceful arrest (something Mr. Harrold was ready, willing, and able to do), and without giving any warning that the dog was going to be deployed, Officer Hagen gave a signal to the K-9 to sic Mr. Harrold. The dog did so.

46.    However, the K-9 did not simply bite Mr. Harrold and hold the same bite until an officer could perform an arrest. The K-9 went into a full blown, violent attack.

47.    While the K-9 continued attacking Mr. Harrold, Officer Hagen no longer exercised control over the animal. Officer Hagen gave no command to stop and failed to stop the dog from attacking.

48.    Officer Hagen continued allowing the K-9 to attack Mr. Harrold, even as Mr. Harrold made it to his feet and stood with his hands behind his back, making no attempt to flee,

7

and posing a threat to no one.

49.     Based the positioning of the dog which was facing toward Mr. Harrold's rear end, the K-9's attack was focused on Mr. Harrold's buttocks, anus and scrotum, along with his legs and his amputated stump.

50.     It took a considerable amount of time for Officer Hagen to separate the K-9 from Mr. Harrold and he required assistance from another officer, Sergeant Chris Murphy ("Sergeant Murphy") of the CCPD.

51.     Rather than give clear, forceful commands to the K-9 in order to stop the attack, Officer Hagen mainly tried to pull the dog's leash, much as an amateur, first-time dog owner might do.

52.     There was no legitimate law enforcement reason for Officer Hagen to allow the K-9 to attack Mr. Harrold. One can only reasonably conclude that Officer Hagen preferred a K-9 attack over any other method of arresting a suspect. He was plainly motivated by his own selfish and sadistic desire to injure a helpless man.

**D.      Defendant violated clearly established law and CCPD policies governing the use of police dogs and the use of force, particularly in light of Mr. Harrold's status as an unarmed citizen who was not a threat or a flight risk.**

53.     At the time of his arrest, and as confirmed by a Chesterfield County Sherriff's Office Inmate Statement of Personal Articles, Mr. Harrold had in his possession a prosthetic leg, flashlight, debit cards, and a wallet with contents. He also had a small utility knife that was discovered by officers only after Mr. Harrold was in handcuffs and under arrest.

54.     Mr. Harrold was unarmed, and Officer Hagen had no reason to believe otherwise.

55.     Officer Hagen knew or should have known Mr. Harrold was unarmed. Sergeant Murphy confirmed as much when he testified under oath at the preliminary hearing that he

8

observed Mr. Harrold in the building before the encounter with the K-9 and Mr. Harrold was unarmed and there was no reason to think he was armed.

56.    Mr. Harrold had no history of committing violent crimes and Officer Hagen had no reason to believe he was violent or a threat to do violence.

57.    As Mr. Harrold lay motionless on the floor, with his head down and oblivious to the close proximity of Officer Hagen, and especially considering his size and physical characteristics, Mr. Harrold posed no immediate threat to the safety of Officer Hagen, the police dog, or any other officer. There was no one else present except Mr. Harrold, the officers, and the K-9.

58.    Mr. Harrold did not attempt to flee or resist arrest. Indeed, he lay still on the floor awaiting directions from an officer. He was cornered in a small room with no exit. The only entry way to the room was blocked by Officer Hagen, with backup, and the building as a whole was surrounded by law enforcement officers.

59.    At the preliminary hearing, Officer Shawna Holt ("Officer Holt") of the CCPD testified that the permitter of the building was secured with officers surrounding the building.

60.    This was not one of those circumstances that was so tense, uncertain and/or rapidly evolving that Officer Hagen was required to make a split-second decision about whether or not to deploy the K-9. Rather, Mr. Harrold lay motionless (and unarmed) on the floor and Officer Hagen had plenty of time to determine how to effectuate an arrest using a reasonable amount of force.

61.    Under the circumstances, Officer Hagen's seizure and use of force with a violent attack by the K9 police dog was objectively unreasonable and in violation of Mr. Harrold's clearly established rights under the Fourth Amendment.

62.    Officer Hagen's deployment of the K-9 also violated CCPD operating procedures

9

**JA12**

and policies in many ways.

63.     For example, CCPD policy acknowledges that use of a K-9 to make physical contact with a suspect is a significant use of force and one that shall be done only in relatively serious situations and where lesser means of force are not available or reasonably practical. Officer Hagen's interaction with Mr. Harrold was not such a situation.

64.     CCPD policy requires verbal warnings anytime a K-9 is released and also recognizes that in searching large areas, multiple warnings are necessary and shall be given. The handler is required to verify the suspect and the suspect's non-compliance before utilizing the K-9. The policy also givens an example of an appropriate warning to give during building searches and the sample warning includes a specific warning that the K-9 will be released and will bite.

65.     Officer Hagen failed to follow these policies and procedures and, under the circumstances, failed to give an appropriate warning before deploying the K-9 to attack Mr. Harrold.

**E.      The coverup of Defendant's wrongful and unlawful acts.**

66.     In an effort to defend their own actions and the actions of Defendant, several CCPD police officers twisted the truth in an attempt to justify their wrongdoing.

67.     For example, Sergeant Murphy stated in the official incident report that "K9 was deployed on the suspect due to him refusing to give himself up." Sergeant Murphy's statement is contradicted by the footage from Officer Hagen's body worn camera. At Mr. Harrold's preliminary hearing, Sergeant Murphy testified under oath that Mr. Harrold was lying on the floor and made no movements.

68.     For his part, Officer Hagen falsely stated in the incident report that "Canine [Kona] located the suspect balled up in a corner and immediately bite [sic] the suspect on the back on the

10

**JA13**

left leg area." In reality, the K-9's bite was by no means "immediate", and it was only caused by
Officer Hagen's command for his K-9 to attack Mr. Harrold for no good reason, it was not a single
bite, nor was it only on the back of the left leg area.

69.     In the incident report, Officer Holt describes the K-9's attack of Mr. Harrold as a
"successful bite" even though she arrived after the dog attack was over. This is clear evidence of
her bias.

70.     Moreover, Sergeant Murphy, Officer Holt, and the Defendant have given
inconsistent and conflicting statements about if and when warnings about the K-9 police dog were
given. There are also material conflicts about what exactly, if anything, was announced about the
K-9, *e.g.,* an announcement that there was a dog on the scene versus a warning that a K-9 is going
to be released and will bite.

71.     Unfortunately, Officer Hagen, Sergeant Murphy, and Officer Holt have proven
themselves to be untruthful in official government documents in order to defend Officer Hagen's
wrongful and unlawful acts.

**F.      Mr. Harrold's injuries resulting from the mauling by Defendant's K-9 police
dog.**

72.     Due to the acts, omissions and/or negligence of Officer Hagen, the K-9 was allowed
to attack Mr. Harrold for a considerable period of time.

73.     At the scene, Mr. Harrold was bleeding profusely from the wounds sustained in the
mauling. His clothes, shoes, and prosthetic leg were covered in blood and his blood was smeared
all over the floor where the K9 attacked him.

74.     Mr. Harrold sustained widespread and severe, deep dog bites over multiple areas of
his body, some of which became infected.

75.     Mr. Harrold's prosthetic leg was destroyed by the K-9's powerful jaws. Doctors

11

found a piece of the prosthetic's rubber sleeve imbedded in one of the wounds on Mr. Harrold's leg where the K9's large teeth had sunk deep into his leg.

76.     The K-9 should have been subject to the control of its handler; however, it was not. Officer Hagen caused the dog to needlessly attack Mr. Harrold and do so for an extended period of time, resulting in severe and painful dog bites over multiple areas of his body, including his amputation stump which was badly injured. Before gaining control of the K-9, Officer Hagen even allowed the K-9 to bite and scratch at Mr. Harrold's scrotum and anus.

77.     Mr. Harrold's injuries were so severe that a tourniquet and Israeli bandage were applied at the scene to prevent him from bleeding out from his wounds.

78.     Due to the severity of his injuries and the extent of his bleeding, Mr. Harrold was transported from the scene by Chesterfield County Fire & EMS on a stretcher in an ambulance and taken to Chippenham Hospital's emergency department.

79.     After the incident, the K-9 police dog was confined for a period of ten days, the period of time it takes for symptoms of rabies to manifest. During this time period, Mr. Harrold worried that he may contract rabies or another type of bacterial infection or disease from the dog bites. In fact, Mr. Harrold did contract meningitis a few months after he was bitten.

80.     As a direct and proximate result of the foregoing, Mr. Harrold has sustained serious and permanent bodily injuries, including, but not limited to, scarring and deformity; physical pain and suffering; he has incurred considerable medical expenses in an effort to be cured of his injuries; he has been prevented from transacting his business and he has been inconvenienced by his injuries and the required medical care and medical appointments for the treatments he required; he has suffered with emotional distress, loss of enjoyment of life, a sense of anxiety, helplessness, hopelessness and stress; he continues to suffer great pain of body and mind; and he is reasonably

12

**JA15**

expected to continue suffering from such injuries and incurring additional medical expenses and damages in the future.

81.    Defendant's conduct with regard to Mr. Harrold was willful and wanton, malicious, reckless, grossly negligent, and with a conscious disregard for the rights of Mr. Harrold.

## CAUSES OF ACTION

### COUNT I:
### DEPRIVATION OF CIVIL RIGHTS UNDER THE FOURTH AMENDMENT – UNLAWFUL SEIZURE
### (A claim under 42 U.S.C. § 1983 against Defendant Hagen in his individual capacity)

82.    Plaintiff incorporates by reference and re-alleges each allegation set forth above.

83.    Mr. Harrold has a right against unreasonable seizures under the Fourth Amendment of the Constitution of the United States.

84.    Under these circumstances, it was objectively unreasonable for Officer Hagen to fail to give an appropriate verbal warning before releasing the K-9 police dog to seize Mr. Harrold.

85.    Under the circumstances described above, it was objectively unreasonable for Officer Hagen, an officer who faced no immediate threat, to deploy a K-9 to effectuate a seizure of Mr. Harrold as opposed to another method of arrest that did not involve such violence and risk of serious bodily injury or death.

86.    Officer Hagen's actions in allowing Mr. Harrold to be detained, bitten, attacked, and mauled by the K-9 police dog until he could be handcuffed and arrested, as described herein, constitutes an unreasonable and unlawful seizure under the Fourth Amendment.

87.    Mr. Harrold's Fourth Amendment rights were violated by Defendant who subjected Plaintiff to an unreasonable and unconstitutional seizure of his person.

88.    Officer Hagen was acting under the color of state law as a law enforcement officer

13

**JA16**

with the CCPD when he undertook the actions described herein.

89.    CCPD's policy and custom concerning the usage of K-9 police dogs was the moving force behind the deprivation of Mr. Harrold's constitutional rights.

90.    As a direct and proximate result of the foregoing, Plaintiff has incurred damages and losses as set forth herein. Pursuant to 42 U.S.C. § 1983, Mr. Harrold is entitled to monetary relief consisting of compensatory damages, punitive damages, declaratory and injunctive relief, other equitable relief, and his reasonable attorneys' fees and costs.

## COUNT II:
## DEPRIVATION OF CIVIL RIGHTS UNDER THE FOURTH AMENDMENT – EXCESSIVE FORCE
### (A claim under 42 U.S.C. § 1983 against Defendant Hagen in his individual capacity)

91.    Plaintiff incorporates by reference and re-alleges each allegation set forth above.

92.    Mr. Harrold has a right against excessive force at the hands of members of law enforcement in connection with a seizure under the Fourth Amendment of the Constitution of the United States.

93.    Mr. Harrold's Fourth Amendment rights were violated by Defendant who subjected Plaintiff to excessive force as described herein.

94.    Officer Hagen's improper deployment of the K-9 police dog that mauled Mr. Harrold constitutes excessive force in violation of the Fourth Amendment.

95.    Officer Hagen's improper actions that resulted in the K-9's prolonged attack of Mr. Harrold constitutes excessive force in violation of the Fourth Amendment.

96.    Officer Hagen and his K-9 police dog did more than simply seize Mr. Harrold, as in a situation where a K-9 bites a suspect once, holds, and then promptly releases the suspect upon command from its handler. Rather, Officer Hagen caused Mr. Harrold to endure an extensive dog attack.

14

97.    Officer Hagen's actions in allowing Mr. Harrold to be detained, bitten, attacked, and mauled by the K-9 police dog until he could be handcuffed and arrested, as described herein, constitutes excessive force under the Fourth Amendment.

98.    Officer Hagen was acting under the color of state law as a law enforcement officer with the CCPD when he undertook the actions described herein.

99.    CCPD's policy and custom concerning the use of K-9 police dogs was the moving force behind the deprivation of Mr. Harrold's constitutional rights.

100.   As a direct and proximate result of the foregoing, Plaintiff has incurred damages and losses as set forth herein. Pursuant to 42 U.S.C. § 1983, Mr. Harrold is entitled to monetary relief consisting of compensatory damages, punitive damages, declaratory and injunctive relief, other equitable relief, and his reasonable attorneys' fees and costs.

## COUNT III:
## DEPRIVATION OF CIVIL RIGHTS UNDER THE FOURTH AMENDMENT
### (A claim under 42 U.S.C. § 1983 against Defendant Hagen in his official capacity)

101.   Plaintiff incorporates by reference and re-alleges each allegation set forth above.

102.   Mr. Harrold had a right against unreasonable seizures and excessive force under the Fourth Amendment of the Constitution of the United States which right was violated by Defendant as described herein.

103.   Officer Hagen, in his official capacity, was acting under the color of state law in his position as an Officer with CCPD when he undertook the actions described herein.

104.   Officer Hagen deprived Mr. Harrold of his Fourth Amendment rights through an official policy or custom of CCPD and/or Defendant, namely CCPD and/or Defendant's policy and custom of subjecting persons such as Mr. Harrold to unreasonable searches and seizures and excessive force by K-9 police dogs, as described herein, despite what CCPD's written policies

15

**JA18**

may state to the contrary.

105. CCPD and/or Defendant's policies and customs concerning the use of K-9 police dogs were the moving force behind the deprivation of Mr. Harrold's constitutional rights.

106. As a direct and proximate result of the foregoing, Plaintiff has incurred damages and losses as set forth herein. Pursuant to 42 U.S.C. § 1983, for these official-capacity claims, Mr. Harrold is entitled to declaratory and prospective injunctive relief, and his reasonable attorneys' fees and costs.

107. CCPD's and/or Defendant's policies and customs concerning the use of K-9 police dogs are still effective as of the date hereof and, therefore, Defendant's violation of federal law is ongoing. The prospective relief Mr. Harrold seeks in this Count is available pursuant to the doctrine recognized in *Ex parte Young*, 209 U.S. 123 (1908).

## COUNT IV:
## ASSAULT
### (A claim against Defendant under Virginia common law)

108. Plaintiff incorporates by reference and realleges each allegation set forth above.

109. As set forth above, Officer Hagen and his K-9 made one or more threatening acts towards Mr. Harrold that placed Mr. Harrold in reasonable fear of imminent physical injury.

110. As a result of Officer Hagen's wrongful and/or intentional actions, Mr. Harrold has suffered damages and losses as set forth herein, including physical injuries, pain and suffering, emotional and mental distress, shame, humiliation, embarrassment and indignity to his feelings, and other damages for which Defendant is liable.

111. In assaulting Mr. Harrold, Officer Hagen was willfully reckless, he acted with actual malice, and his conduct was so willful and wanton as to evidence a conscious disregard for the rights of Plaintiff such that an award of punitive damages is appropriate and just.

16

**JA19**

## COUNT V:
## BATTERY
### (A claim against Defendant under Virginia common law)

112.    Plaintiff incorporates by reference and realleges each allegation set forth above.

113.    As set forth above, Officer Hagen committed one or more intentional and unwanted touchings of Mr. Harrold in a violent, harmful, and/or offensive manner by and through his use of the K-9 police dog.

114.    Officer Hagen committed one or more intentional and unwanted touchings of Mr. Harrold by setting in motion the K-9 police dog that bit, scratched, attacked, and mauled Mr. Harrold's person.

115.    Officer Hagen's actions were without justification, excuse, or consent, and his actions were not taken in self-defense.

116.    As a result of Officer Hagen's wrongful and/or intentional actions, Mr. Harrold has suffered damages and losses as set forth herein for which Defendant is liable.

117.    In battering Mr. Harrold, Officer Hagen was willfully reckless, he acted with actual malice, and his conduct was so willful and wanton as to evidence a conscious disregard for the rights of Mr. Harrold such that an award of punitive damages is appropriate and just.

## COUNT VI:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (A claim against Defendant under Virginia common law)

118.    Plaintiff incorporates by reference and re-alleges each allegation set forth above.

119.    As detailed above, Defendant subjected Mr. Harrold to intentional, outrageous and intolerable conduct, intending to cause him emotional distress, that resulted in Mr. Harrold suffering severe emotional distress.

17

**JA20**

120.    Officer Hagen had the specific purpose of inflicting emotional distress on Mr. Harrold and/or intended his specific conduct and knew or should have known that emotional distress would likely result.

121.    The conduct of the Defendant offends against the generally accepted standards of decency and morality and is atrocious and utterly intolerable in a civilized community.

122.    Due to the actions of the Defendant, Mr. Harrold suffered severe emotional distress and other damages and losses as set forth herein for which Officer Hagen is liable.

123.    Defendant's conduct was willful and wanton, malicious, reckless, grossly negligent, and with a conscious disregard for the rights of Mr. Harrold such that an award of punitive damages is appropriate and just.

## COUNT VII:
## NEGLIGENCE
### (A claim against Defendant under Virginia common law, pleaded in the alternative)

124.    Plaintiff incorporates by reference and re-alleges each allegation set forth above.

125.    At all relevant times, it was the duty of Officer Hagen to use ordinary and/or reasonable care and have due regard for the safety of others and, specifically, to not act in such a way with regard to another person, such as Mr. Harrold, so as to cause injury unnecessarily.

126.    At all relevant times, it was the duty of Officer Hagen to refrain from negligent and/or unlawful acts.

127.    Notwithstanding said duties, Officer Hagen carelessly, recklessly, and negligently acted as set forth above and caused injury to Mr. Harrold.

128.    In doing so, Officer Hagen breached his foregoing duties of ordinary and/or reasonable care, and he was negligent.

18

129.     As a result of Officer Hagen's negligence, Mr. Harrold has suffered damages and
losses as set forth herein for which Defendant is liable.

### COUNT VIII:
### GROSS NEGLIGENCE
### (A claim against Defendant under Virginia common law, pleaded in the alternative)

130.     Plaintiff incorporates by reference and re-alleges each allegation set forth above.

131.     At all relevant times, it was the duty of Officer Hagen to use ordinary and/or
reasonable care and have due regard for the safety of others and, specifically, to not to act in such
a way with regard to another person, such as Mr. Harrold, so as to cause injury unnecessarily.

132.     At all relevant times, it was the duty of Officer Hagen to refrain from grossly
negligent and/or unlawful acts.

133.     Officer Hagen was grossly negligent in that he showed such indifference to Mr.
Harrold as to constitute an utter disregard of caution amounting to a complete neglect for Mr.
Harrold's safety and welfare.

134.     As a result of Officer Hagen's gross negligence, Mr. Harrold has suffered damages
and losses as set forth herein for which Defendant is liable.

135.     Officer Hagen was grossly negligence, willfully reckless, he acted with actual
malice, and his conduct was so willful and wanton as to evidence a conscious disregard for the
rights of Mr. Harrold such that an award of punitive damages is appropriate and just.

### RELIEF REQUESTED

WHEREFORE, Plaintiff, Richard P. Harrold, respectfully requests that this Court:

A.     Enter judgment in his favor and against Defendant, Lewis ("Lewie") J. Hagen III;

B.     Declare the acts and practices complained of herein to be in violation of Plaintiff's
rights as secured by the Fourth Amendment of the Constitution of the United States, as enforced

19

**JA22**

by 42 U.S.C. § 1983;

 C. Issue a permanent injunction prohibiting Defendant from continuing its policies and practices that are inconsistent with the Constitution;

 D. Award Plaintiff money damages for all pecuniary losses, including, but not limited to, medical expenses, lost wages and legal expenses incurred and to be incurred in an amount to be shown at trial;

 E. Award Plaintiff money damages for Defendant's violation of Plaintiff's federal constitutional and civil rights, mental and/or emotional distress, inconvenience, humiliation, and embarrassment in an amount to be shown at trial;

 F. Award Plaintiff compensatory damages in the amount of Three Million Dollars ($3,000,000.00) or such amount to be shown at trial;

 G. Award Plaintiff punitive damages in an amount to be shown at trial;

 H. Award Plaintiff any and all reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988(b);

 I. Award Plaintiff any and all expert fees, pursuant to 42 U.S.C. § 1988(c);

 J. Award Plaintiff pre-judgment interest from December 26, 2021 until the day of judgment;

 K. Award Plaintiff post-judgment interest from the date of judgment;

and

 L. Award Plaintiff any and all other relief the Court deems just and appropriate, including leave to amend the facts, add parties and claims, and amend damages sought as further evidence is obtained through discovery in this matter.

20

**JA23**

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted,

RICHARD P. HARROLD,

*Plaintiff*

Dated: December 20, 2023.                By:   /s/ Robert J. Allen
                                              Counsel

Robert J. Allen (VSB No. 65214)
THORSENALLEN LLP
5413 Patterson Avenue, Suite 201
P. O. Box 17094
Richmond, VA 23226
Telephone: (804) 447-7234
Facsimile: (804) 447-7813
E-mail: rallen@thorsenallen.com
   *Counsel for Plaintiff*

21

**JA24**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

RICHARD P. HARROLD,

      Plaintiff,

v.                                          Civil Action No.: 3:23-CV-866

LEWIS J. HAGEN III, individually and
in his official capacity as an Officer of the
Chesterfield County Police Department,
Chesterfield County, Virginia,

      Defendant.

## **MOTION TO DISMISS**

      COMES NOW Lewis J. Hagen III ("Officer Hagen"), by counsel, pursuant to Fed. R. Civ.

P. 12(b)(6) and Local Rule 7 and moves the Court to dismiss the Complaint against him for failure

to state a claim upon which relief can be granted.

      Plaintiff has pled eight causes of action in his Complaint. Each cause of action arises out

of Officer Hagen's response, in his capacity as a law enforcement officer, to an alarm at the VA

Cars dealership in Chesterfield County, Virginia. Plaintiff's admissions in his Complaint

combined with Officer Hagen's body worn camera video of the search and seizure at issue

demonstrate why the Complaint should be dismissed in its entirety and with prejudice.

      WHEREFORE, for the reasons stated herein and in the accompanying Memorandum in

Support of Motion to Dismiss, Lewis J. Hagen III respectfully moves this Court to dismiss this

case with prejudice.

                             LEWIS J. HAGEN III

                             By:    /s/ Julie A. C. Seyfarth
                                     Julie A. C. Seyfarth (VSB #46207)

Senior Deputy County Attorney
Chesterfield County, Virginia
P. O. Box 40
Chesterfield, VA 23832
Telephone: (804) 748-1491
Facsimile: (804) 706-2615
seyfarthj@chesterfield.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

RICHARD P. HARROLD,

      Plaintiff,

v.                                          Civil Action No.: 3:23-CV-866

LEWIS J. HAGEN III, individually and
in his official capacity as an Officer of the
Chesterfield County Police Department,
Chesterfield County, Virginia,

      Defendant.

## **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

### **EXHIBIT 1**

Thumb Drive Containing Officer Hagen's Body Worn Camera

**JA27**

USCA4 Appeal: 24-2073      Doc: 11      Filed: 12/30/2024      Pg: 33 of 72

# WARRANT OF ARREST – FELONY

COMMONWEALTH OF VIRGINIA   Va. Code § 19.2-71, -72

SCANNED

Chesterfield
................................................
CITY OR COUNTY

[x] General District Court  [x] Criminal  [ ] Traffic
[ ] Juvenile and Domestic Relations District Court

**TO ANY AUTHORIZED OFFICER:**

You are hereby commanded in the name of the Commonwealth of Virginia forthwith to arrest and bring the Accused before this Court to answer the charge that the Accused, within this city or county, on or about **12/26/2021** ............................. did unlawfully and feloniously in violation of Section

**18.2-26/18.2-95/46.2-390** ................................................................, Code of Virginia:

ATTEMPT TO steal a motor vehicle valued at $1000 or more and belonging to BRIAN, SCHRIMPSHER.

CERTIFIED TO GRAND JURY

RECEIVED & FILED
CHESTERFIELD CIRCUIT COURT
WENDY S. HUGHES, CLERK

APR 2 2 2022

TESTE:

[ ] CLERK  [✗] DEPUTY CLERK

I, the undersigned, have found probable cause to believe that the Accused committed the offense charged, based on the sworn statements of

**HOLT, S. M.   1932   CCPD** ................................................, Complainant.

**CCRE/Fingerprinting Required**

**12/27/2021 04:06 AM**
................................
DATE AND TIME ISSUED

[ ] CLERK  [✗] MAGISTRATE  [ ] JUDGE
Claudia A. Wright

FORM DC-312 (MASTER, PAGE ONE OF TWO) 03/21

---

**CASE NO.** 21 008 627

**ACCUSED:**

**HAROLD, RICHARD**
LAST NAME, FIRST NAME, MIDDLE NAME

ADDRESS/LOCATION

**Richmond, VA 23225**

Feb 22, 2022
01:00 PM
Hearing Date/Time

4/21/22
8:30 AM

**COMPLETE DATA BELOW IF KNOWN**

| RACE | SEX | BORN | | | HT. | | WGT. | EYES | HAIR |
|------|-----|------|--|--|-----|--|------|------|------|
| | | YR. | | | FT. | IN. | | | |
| W | M | 977 | | | 5' | 10" | 145 | BRO | GRY |

SSN

D.L.# | | STATE

[ ] Commercial Driver's License
[ ] Commercial Motor Vehicle  [ ] Hazardous Materials

**CLASS** 5   **FELONY**

[✗] EXECUTED by arresting the Accused named above on this day:

12/27/21   0408   HRS
DATE AND TIME OF SERVICE

S. M. Holt ................., Arresting Officer

1932 CCPD   CCO
BADGE NO., AGENCY AND JURISDICTION

for ................................................
SHERIFF

Attorney for the Accused: Homberger

**Short Offense Description (not a legal definition):**
**GRAND LARCENY: STEAL MOTOR VEHICLE VALUE >=$1000**
Attempt

Offense Tracking Number:
**041GM2100039556**

**FELONY**

FOR ADMINISTRATIVE USE ONLY
Virginia Crime Code: **LAR-2404-A9**

Case 3:23-cv-00866-MHL    Document 6-2    Filed 01/11/24    Page 2 of 2 PageID# 56

**WAIVER OF PRELIMINARY HEARING**

...understanding my right to a preliminary hearing before the Court named in this warrant to determine whether there is probable cause to believe that I committed a felony AND, having the consequences of my waiver explained to me by the Judge of this Court, I nevertheless WAIVE MY RIGHT TO A PRELIMINARY HEARING on the felony charged in this warrant. Certified to the Circuit Court of this jurisdiction.

_____
ACCUSED

_____
ATTORNEY FOR ACCUSED

[✓] The named Accused was brought before me or appeared this day.

Upon hearing the evidence, I order the case certified to the grand jury of this jurisdiction, at its next term date, having found probable cause to believe that the Accused committed the felony charged in this warrant.

[✓] Bail on certification $ _____    Same

[ ] ORDER the accused discharged at preliminary hearing, and the charge is dismissed.

The Accused was reduced to _____.

The charge was this day -[ ] tried in absence  [✓] present

[✓] _____
PROSECUTING ATTORNEY PRESENT (NAME)    Olson

[✓] _____
DEFENDANT'S ATTORNEY PRESENT (NAME)    Hawkeys-

[ ] NO ATTORNEY  [ ] ATTORNEY WAIVED

[ ] Interpreter present - [ ] Certified pursuant to § 19.2-190.1.

Plea of Accused - [ ] guilty  [ ] witnesses sworn

[ ] guilty    [ ] nolo contendere

[ ] Plea voluntarily and intelligently entered after the defendant was apprised of his right against compulsory self-incrimination and his right to confront the witnesses against him.

[ ] Plea and Recommendation

[ ] Deferred § 19.2-298.02, and order attached and incorporated.

And was TRIED and FOUND by me: [ ] not guilty  [ ] guilty as charged

[ ] guilty of _____
VCC _____

[ ] facts sufficient to find guilt but defer adjudication/
disposition to _____

_____
DATE AND TIME

[ ] and place accused on probation, §§ 4.1-305, 4.1-1120, 18.2-57.3, 18.2-251, 19.2-303.2 or 19.2-303.6.

[ ] First Offender order attached and incorporated.

[ ] Deferred § 19.2-298.02, and order attached and incorporated.

4/7/22

_____
JUDGE

_____
DATE

[ ] And was FOUND by me to be: [ ] carrying hazardous materials

[ ] driving a commercial motor vehicle

[ ] ORDER a nolle prosequi on the prosecution's motion

[ ] ORDER the charge dismissed [ ] with prejudice

[ ] conditioned upon payment of costs and

[ ] successful completion of [ ] traffic school
[ ] mature driver school, § 16.1-69.48:1.
[ ] accord and satisfaction, § 19.2-151.
[ ] under §§ 4.1-305, 4.1-1120, 18.2-57.3, 18.2-251,19.2-303.2 or 19.2-303.6.

FORM DC-312 (MASTER, PAGE TWO OF TWO) 07/21

---

_____
JUDGE

_____
DATE

[ ] Guilty – upon a violation of a term or condition of a deferred adjudication/disposition.

I impose the following Disposition:

[ ] FINE of $ ........................................ with $ ......................... suspended.

[ ] JAIL SENTENCE of ............................ imposed.

[ ] of which ...................... days mandatory minimum, with ....................... suspended for a period

of .................................... conditioned upon being of good behavior, keeping the peace, obeying this order and paying fines and costs. Credit is allowed pursuant to § 53.1-187 for time spent in confinement.

[ ] Serve jail sentence beginning ...........................
[ ] on weekends only
[ ] Work release - [ ] authorized if eligible  [ ] required
[ ] not authorized

[ ] Public work force [ ] authorized [ ] not authorized

[ ] on PROBATION for ............................................

[ ] VASAP  [ ] local community-based probation agency
[ ] Monitoring by GPS/other tracking device

[ ] DRIVER'S LICENSE suspended for ............................
[ ] Restricted Driver's License per attached order

[ ] ignition interlock for ...................................

[ ] RESTITUTION order incorporated
[ ] Restitution payment is a condition of suspended sentence

[ ] COMMUNITY SERVICE ................ hours to be completed
by ................................... and supervised by
[ ] ............. to be credited against fines and costs

[ ] Contact prohibited between defendant and victim/victim's family or household members

[ ] Reimburse Commonwealth for investigatory medical fees

[ ] Pay $50 fee to the Court for Trauma Center Fund

[ ] § 19.2-298.02(D) – dismissal expungement eligible by parties' agreement

[ ] Other .......................................................

[ ] Submit to FINGERPRINTING and photograph per attached order
[ ] Remanded for [ ] FINGERPRINTING/CCRE Report

[ ] DNA order incorporated

[ ] Bail on Appeal $ .......................................

---

041GM21000395.56

| | FINE | |
|---|---|---|
| 120 Ct. Appt. Atty | | $ |
| 113 Court Reporter | | |
| 113 Witness | | |
| | **TOTAL** | |

| | **COSTS** | |
|---|---|---|
| 461 FIXED MISD FEE | | |
| 462 FIXED DRUG MISD FEE | | |
| 001 INT CRIM CHILD FEE | | |
| 113 WITNESS FEE | | |
| 113 IGNITION INTERLOCK | | |
| 113 DUI FEE | | |
| 113 | | |
| 120 CT. APPT. ATTY | | |
| 121 TRIAL IN ABSENCE FEE | | |
| 125 WEIGHING FEE | | |
| 133 BLOOD TEST FEE | | |
| 137 TIME TO PAY | | |
| 192 TRAUMA CENTER FEE | | |
| 228 COURTHOUSE CONSTRUCTION FEE | | |
| 234 JAIL ADMISSION FEE | | |
| 243 LOCAL TRAINING ACADEMY FEE | | |
| 244 COURTHOUSE SECURITY FEE | | |
| OTHER (SPECIFY) | | |
| | **TOTAL** | $ |

[ ] Stay of the proceedings pursuant to § 16.1-131.1

_____
JUDGE

_____
DATE

**JA29**

Case 3:23-cv-00866-MHL    Document 6-3    Filed 01/11/24    Page 1 of 2 PageID# 57

**WARRANT OF ARREST – FELONY**

COMMONWEALTH OF VIRGINIA    Va. Code § 19.2-71, -72

SCANNED

Chesterfield

................................................
CITY OR COUNTY

[x] General District Court  [x] Criminal  [ ] Traffic
[ ] Juvenile and Domestic Relations District Court

CASE NO.

2 1 0 0 8 6 2 5

ACCUSED:

HAROLD, RICHARD
LAST NAME, FIRST NAME, MIDDLE NAME

ADDRESS/LOCATION

Richmond, VA 23225

TO ANY AUTHORIZED OFFICER:

You are hereby commanded in the name of the Commonwealth of Virginia forthwith to arrest and bring the Accused before this Court to answer the charge that the Accused, within this city or county, on or about 12/26/2021 ..................... did unlawfully and feloniously in violation of Section

18.2-91 ........................................................ Code of Virginia;

enter in the nighttime CAR DEALERSHIP, a building permanently affixed to realty, with the intent to commit larceny, assault and battery, or a felony other than murder, rape, robbery or arson in violation of §§18.2-77, 18.2-79, or 18.2-80.

| RACE | SEX | BORN | | | HT. | | WGT | EYES | HAIR |
|------|-----|------|---|---|-----|---|-----|------|------|
| W | M | MO. DAY YR. | | | FT. IN | | | BRO | GRY |
| | | 9 77 | | | 5' 10" | | 145 | | |

SSN

DLN

STATE

Hearing Date/Time
Feb 22, 2022
01:00 PM

[ ] Commercial Driver's License
[ ] Commercial Motor Vehicle  [ ] Hazardous Materials

CLASS ___ U ___ FELONY

[X] EXECUTED by arresting the Accused named above on this day:

12/27/21  6416 HRS
DATE AND TIME OF SERVICE

S.M. Holt
BADGE NO., AGENCY AND JURISDICTION
1932  CCPD  020

Arresting Officer

for ..................................................................
SHERIFF

Attorney for the Accused

Short Offense Description (not a legal definition):
ENTER BUILDING NIGHT: INTENT LARCENY-UNARMED

Offense Tracking Number:
041GN21000359559

FOR ADMINISTRATIVE USE ONLY
Virginia Crime Code:  BUR-2216-F9

Pre Trial Services
1 - Contacts
2 - Alcohol/Drug Free
3 - Random Screens
4 - No contact
Erin Schmansky
12-22-21

I Subp:

Bail: 5,000 PC w/

CCRE/Fingerprinting Required

HOLT, S.M.    1932    CCPD

12/27/2021 04:14 AM
DATE AND TIME ISSUED

CLERK [x] MAGISTRATE [ ] JUDGE
Claudia A. Wright

TESTE:
[ ] CLERK    DEPUTY CLERK

RECEIVED & FILED
CHESTERFIELD CIRCUIT COURT
WENDY S. HUGHES, CLERK

APR 22 2022

CERTIFIED TO GRAND JURY

I, the undersigned, have found probable cause to believe that the Accused committed the offense charged, based on the sworn statements of

.......................................... Complainant.

FORM DC-312 (MASTER, PAGE ONE OF TWO) 03/21

TAKE BUCCAL SAMPLE IF LIDS SHOWS NO DNA SAMPLE IN DATA BANK
Check if sample previously taken: ___

Check if sample taken for this arrest:

EXHIBIT
3

JA30

Case 3:23-cv-00866-MHL   Document 6-3   Filed 01/11/24   Page 2 of 2 PageID# 560

WAIVER OF PRELIMINARY HEARING

I, ___, understanding my right to a preliminary hearing to determine whether there is probable cause to believe that I committed a felony AND, having the consequences of my waiver explained to me by the Judge of this Court, I nevertheless WAIVE MY RIGHT TO A PRELIMINARY HEARING on the felony charged in this warrant.

ACCUSED ___

ATTORNEY FOR ACCUSED ___

[ ] The named Accused was brought before me or appeared this day.
Upon hearing the evidence, I order the case certified to the grand jury of this jurisdiction, at its next term date, having found probable cause to believe that the Accused committed the felony charged in this warrant.
[ ] Bail on certification $ ___
[ ] ORDER the accused discharged at preliminary hearing and the charge is dismissed.
[ ] The charge was reduced to ___
The Accused was this day [ ] [ ] tried in absence [ ] present

ATTORNEY/NO ATTORNEY PRESENT (NAME)

PROSECUTING ATTORNEY PRESENT (NAME)

DEFENDANT'S ATTORNEY PRESENT (NAME)

[ ] NO ATTORNEY   [ ] ATTORNEY WAIVED
[ ] Interpreter present   [ ] Certified pursuant to § 19.2-190.1.
Plea of Accused:   [ ] not guilty   [ ] witnesses sworn
[ ] guilty   [ ] nolo contendere
[ ] Plea voluntarily and intelligently entered after the defendant was advised of his right against compulsory self-incrimination and his right to confront the witnesses against him.

[ ] Plea and Recommendation
[ ] Deferred § 19.2-298.02, and order attached and incorporated

And was TRIED and FOUND by me [ ] not guilty [ ] guilty as charged
[ ] guilty of ___
VCC ___
disposition to ___

[ ] facts sufficient to find guilt but defer adjudication/
by ___
[ ] First Offender: order attached and incorporated.
[ ] Deferred § 19.2-298.02, and order attached and incorporated.
[ ] § 19.2-298.02(D) – dismissal expungement eligible by parties' agreement

And was FOUND by me to be: [ ] carrying hazardous materials
[ ] driving a commercial motor vehicle
[ ] ORDER a nolle prosequi on the prosecution's motion
[ ] ORDER the charge dismissed [ ] with prejudice
[ ] conditioned upon payment of costs and
[ ] successful completion of [ ] traffic school
[ ] mature driver school, § 16.1-69.48:1.
[ ] accord and satisfaction, § 19.2-151.
[ ] under §§ 4.1-305, 4.1-1120, 18.2-57.3, 18.2-251,19.2-303.2 or 19.2-303.6.

DATE

FORM DC-312 (MASTER, PAGE TWO OF TWO) 07/21

---

JUDGE ___   DATE ___

[ ] Guilty – upon a violation of a term or condition of a deferred adjudication/disposition.

I impose the following Disposition:
[ ] FINE of $ ___ with $ ___ suspended
[ ] JAIL SENTENCE of ___ days mandatory minimum, with ___ imposed,
[ ] of which ___ suspended for a period of ___, conditioned upon being of good behavior, keeping the peace, obeying this order and paying fines and costs.
Credit is allowed pursuant to § 53.1-187 for time spent in confinement.
[ ] Serve jail sentence beginning ___
[ ] on weekends only
[ ] Work release:   [ ] authorized if eligible   [ ] required
[ ] not authorized
[ ] Public work force [ ] authorized [ ] not authorized
on PROBATION for ___
[ ] VASAP   [ ] local community-based probation agency
[ ] Monitoring by GPS/other tracking device
DRIVER'S LICENSE suspended for ___
Restricted Driver's License per attached order
[ ] ignition interlock for ___
RESTITUTION order incorporated
[ ] Restitution payment is a condition of suspended sentence
COMMUNITY SERVICE ___ hours to be completed
and supervised by ___
[ ] to be credited against fines and costs
Contact prohibited between defendant and victim/victim's family or household members
Reimburse Commonwealth for investigatory medical fees
Pay $50 fee to the Court for Trauma Center Fund
Other: ___

[ ] Submit to FINGERPRINTING and photograph per attached order
[ ] Remanded for [ ] FINGERPRINTING/CCRE Report

DNA order incorporated
Bail on Appeal $ ___

DATE ___   JUDGE ___

---

Preliminary Hearing Costs   $ ___

Criminal Case Number: ___   041GM2100039559

| | FINE | TOTAL |
|---|---|---|
| 120 Cl. Appt. Atty | | |
| 113 Court Reporter | | |
| 113 Witness | | |

| FINE | | |
|---|---|---|
| 461 FIXED MISD FEE | | |
| 462 FIXED DRUG/MISD FEE | | |
| 001 INT CRIM CHILD FEE | | |
| 113 WITNESS FEE | | |
| 113 IGNITION INTERLOCK | | |
| 113 DUI FEE | | |
| 113 | | |
| 113 | | |
| 120 CT. APPT. ATTY | | |
| 121 TRIAL IN ABSENCE FEE | | |
| 125 WEIGHING FEE | | |
| 133 BLOOD TEST FEE | | |
| 137 TIME TO PAY | | |
| 192 TRAUMA CENTER FEE | | |
| 228 COURTHOUSE CONSTRUCTION FEE | | |
| 234 JAIL ADMISSION FEE | | |
| 243 LOCAL TRAINING ACADEMY FEE | | |
| 244 COURTHOUSE SECURITY FEE | | |
| OTHER (SPECIFY) | | |

COSTS

TOTAL   $ ___

[ ] Stay of the proceedings pursuant to § 16.1-131.1

DATE ___   JUDGE ___

**JA31**

VIRGINIA:

### IN THE CIRCUIT COURT FOR THE COUNTY OF CHESTERFIELD

### COMMONWEALTH OF VIRGINIA

v.                    **Case Number:**     **CR22F00804-01; -02; CR22M00805-01; -02**
                      **Court Date:**        **September 16, 2022 at 9:00 a.m. LSB**
                      **Jury Trial Date:**   **October 17-18, 2022 at 9:00 a.m. LSB**

### RICHARD PAUL HAROLD,                                                   Defendant.

### PLEA AGREEMENT

THIS DAY CAME the Commonwealth of Virginia, as represented by Assistant
Commonwealth's Attorney, Geneva N. Gnam and the Defendant, Richard Paul Harold, by his
Counsel, Sarah Hornberger, Esquire, and represented to the Court that they have entered into the
following Plea Agreement in accordance with Rule 3A:8(C) of the Rules of the Supreme Court
of Virginia:

1) The Defendant stands charged in the Court with the following:

   a. One (1) count of Statutory Burglary with the Intent to Commit Larceny, Etc. in
      violation of Section 18.2-91 of the 1950 Code of Virginia, as Amended [VCC
      Code: BUR-2216-F9] (CR22F00804-01);

   b. One (1) count of Attempted Grand Larceny Auto in violation of Sections 18.2-95
      and 18.2-26 of the 1950 Code of Virginia, as Amended [VCC Code: LAR-2404-
      A9] (CR22F00804-02);

   c. One (1) count of misdemeanor Destruction of Property in violation of Section
      18.2-137 of the 1950 Code of Virginia, as Amended [VCC Code: VAN-2922-M1]
      (CR22M00805-01); and

   d. One (1) count of misdemeanor Obstruction of Justice in violation of Section 18.2-
      460 of the 1950 Code of Virginia, as Amended [VCC Code: JUS-4829-M1]
      (CR22M00805-02).

2) The Commonwealth agrees to amend the indictment of Burglary to Misdemeanor Enter
   the Property of Another with the Purpose of Damaging or Interfering with the Rights of

Commonwealth v. Richard Paul Harold<br>Page 1



**JA32**

the Owner in violation of Section 18.2-121 of the 1950 Code of Virginia, as Amended
[VCC Code: TRS-5717-M1].

3) The Defendant agrees to enter a plea of No Contest or Guilty to the amended
misdemeanor as well as to the misdemeanor charging Destruction of Property.

4) The Commonwealth agrees to nolle prosse the Attempted Grand Larceny Auto
Indictment and the Obstruction of Justice misdemeanor.

5) In exchange for the plea, the parties agree that the following specific terms are the
appropriate disposition of this case:

   a. On the charge of Enter the Property of Another with the Purpose of Damaging or
   Interfering with the Rights of the Owner, amended from a Felony, the defendant
   shall be sentenced to twelve (12) months in jail with all twelve (12) months
   suspended.

   b. On the charge of Destruction of Property the Defendant shall be sentenced to
   twelve (12) months with all but ten (10) days suspended.

   c. The defendant may serve the active term of incarceration by participating in any
   of the sheriff's alternatives for which he qualifies.

   d. The Commonwealth has no objection to a delayed report until Friday September
   23, 2022 at 3:00 p.m.

   e. The term of incarceration shall be suspended for a period of twelve (12) during
   which time the Defendant must keep the peace, be of good behavior, break no
   laws of the Commonwealth, her sister states, or the United States.

   f. The Defendant is to remain compliant with his mental health treatment.

   g. The Defendant is to be placed on Community Corrections, for restitution
   monitoring and compliance with mental health treatment.

   h. The Defendant shall pay court costs and fees.

   i. The Defendant shall submit to any additional terms the Court sees fit to impose.

6) As a part of this Plea Agreement, the Defendant hereby acknowledges and accepts the
terms, conditions, procedures, and waivers of rights contained as set out below:

   a. The Defendant stipulates that there is sufficient evidence to establish guilt on the
   charge to which the defendant is entering a plea and that this plea agreement is in
   conformance with the facts of this case.

Commonwealth v. Richard Paul Harold<br>Page 2

JA33

b. The Defendant stipulates and agrees that the following would be a fair and accurate summary of the Commonwealth's evidence had this case proceeded to trial and would be sufficient for a finding of guilt:

c. The Defendant gives up the right to ask for a sentence modification pursuant to 19.2-303 unless agreed to by the Commonwealth.

d. The Attorney for the Commonwealth, the Attorney for the Defendant and the Defendant agree that it is no longer necessary to preserve any physical evidence in possession of the Commonwealth or law enforcement officers that was recovered in connection with this case, and such evidence may be destroyed or returned to its lawful owners as its custodians deem fit.

e. If this Plea Agreement is rejected by any judge, the Commonwealth reserves the right to withdraw the Plea Agreement.

f. This Plea Agreement is the total agreement between the parties. There have been no other inducements, promises, understandings, representations, or coercion of any kind imposed upon the Defendant, nor suggested to the Defendant by the Attorney for the Commonwealth or any agent of the Commonwealth.

g. No Judges of the Circuit Court for the County of Chesterfield, nor any Court in the Commonwealth of Virginia have participated in any discussions leading to this Plea Agreement.

h. In this case, a previous Plea Agreement has not been submitted to a Judge of this Court.

CONTINUED ON NEXT PAGE

Case 3:23-cv-00866-MHL   Document 6-4   Filed 01/11/24   Page 4 of 4 PageID# 62

WHEREFORE, the parties ask the Court to accept the terms of the Plea Agreement in the matter of Commonwealth v. Richard Paul Harold.

WE ASK FOR THIS:

Geneva N. Gnam
Assistant Commonwealth's Attorney
Office of the Commonwealth's Attorney
County of Chesterfield
Post Office Box 25
9500 Courthouse Road
Chesterfield, Virginia 23832
(804) 748-1341 Telephone
(804) 717-6275 Facsimile

Sarah Hornberger, Esquire

Richard Paul Harold, Defendant

Accepted this _____ day of _____, 2022
Rejected and sealed this _____ day of _____ 2022

Honorable Judge
Chesterfield Circuit Court

Commonwealth v. Richard Paul Harold
Page 4

**JA35**

Case 3:23-cv-00866-MHL   Document 6-5   Filed 01/11/24   Page 1 of 1 PageID# 63

# *VIRGINIA:*

### *IN THE CIRCUIT COURT OF THE COUNTY OF CHESTERFIELD*

### *May 16, 2022*

The Grand Jurors of the County of Chesterfield, on their oaths, present that **Richard Harold**, **on or about December 26, 2021**, in said County, and within the jurisdiction of the Circuit Court of said County, did unlawfully and feloniously break and enter in the nighttime a building permanently affixed to realty, with intent to commit larceny, assault and battery, or a felony other than murder, rape, robbery or arson in violation of Virginia Code Section 18.2-77, 18.2-79, or 18.2-80, against the peace and dignity of the Commonwealth of Virginia.

Virginia Code Section: 18.2-91

**Charge: Stat. Burglary of structure to commit larceny, etc**

**VCC # BUR-2216-F9**

**Case Number: CR22F00804-01**

Unclassified Felony

Witnesses sworn and sent by the Court to the Grand Jury to give evidence:

~~Officer S. M. Holt~~  **D. Tenniss**

**Chesterfield Police Department**

*A TRUE BILL:*

*Foreperson*

*NOT A TRUE BILL:*

*Foreperson*

RECEIVED & FILED
CHESTERFIELD CIRCUIT COURT
WENDY S HUGHES. CLERK

MAY 16 2022

TESTE:
CLERK OF COURT

EXHIBIT
5

**JA36**

Case 3:23-cv-00866-MHL   Document 6-6   Filed 01/11/24   Page 1 of 1 PageID# 64

# *VIRGINIA:*

### *IN THE CIRCUIT COURT OF THE COUNTY OF CHESTERFIELD*

### *May 16, 2022*

The Grand Jurors of the County of Chesterfield, on their oaths, present that
**Richard Harold**, **on or about December 26, 2021**, in said County, and within the jurisdiction
of the Circuit Court of said County, did unlawfully and feloniously attempt to take, steal and
carry away a motor vehicle, having a value of $1000.00 or more, belonging to **Brian**
**Schrimpsher**, against the peace and dignity of the Commonwealth of Virginia.

Virginia Code Section: 18.2-95 & 18.2-26

**Charge: Attempted Grand larceny - Auto theft**

**VCC # LAR-2404-A9**

**Case Number: CR22F00804-02**

Unclassified Felony

Witnesses sworn and sent by the Court to the Grand Jury to give evidence:

~~Officer S. M. Holt~~   **D. Tennissen**

**Chesterfield Police Department**

*A TRUE BILL:*

*Foreperson*

*NOT A TRUE BILL:*

*Foreperson*

RECEIVED & FILED
CHESTERFIELD CIRCUIT COURT
WENDY S. HUGHES, CLERK

MAY 1 6 2022

TESTE:
CLERK OF COURT


EXHIBIT
6

**JA37**

Case 3:23-cv-00866-MHL   Document 10-1   Filed 01/31/24   Page 1 of 1 PageID# 



EXHIBIT
1

## CERTIFICATE OF AUTHENTICITY

I, Lewis J. Hagen, III, am employed by Chesterfield County, Chesterfield, Virginia, 10001 Iron Bridge Road, Chesterfield, VA 23832. My official title is Career Police Office. I hereby certify, in accordance with VIRGINIA CODE § 8.01-390, that I was the custodian of the attached Body Worn Camera ("BWC") video until such time as it was uploaded to our BWC storage database. I further certify that the video identified as ECF No. 6-1 to my Memorandum in Support of Motion to Dismiss is a true and accurate copy of the entire video captured by my BWC of my search and apprehension of Richard P. Harrold at the VA Cars dealership on December 26, 2021 and uploaded by me to the BWC storage database on December 26, 2021.

MICHELLE M. HEILMAN
NOTARY PUBLIC
REGISTRATION # 7060107
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES
MARCH 31, 2026

Lewis J. Hagen, III, Career Police Officer
Chesterfield County Police Department
Chesterfield County, Virginia

COMMONWEALTH OF VIRGINIA
COUNTY OF CHESTERFIELD, to-wit:

I, Michelle M. Heilman, a Notary Public in and for the Commonwealth and County aforesaid, do hereby certify that this 30ᵗʰ day of January, 2024, Lewis J. Hagen, III, Career Police Officer, with the Chesterfield County Police Department, whose name is signed to the foregoing Certificate of Authenticity, personally appeared before me in my jurisdiction aforesaid, and acknowledged the same before me in my jurisdiction aforesaid.

Given under my hand this 30ᵗʰ day of January.

My commission expires: March 31, 2026

My registration number: 7060107

Michelle M. Heilman
Notary Public

**JA38**



## CERTIFICATE OF AUTHENTICITY

I, Captain Michael S. Breeden, am employed by Chesterfield County, Chesterfield, Virginia, 10001 Iron Bridge Road, Chesterfield, VA 23832. My official title is Internal Affairs Division Commander for the Chesterfield County Police Department ("CCPD"). I hereby certify, in accordance with VA. CODE § 8.01-390, that on December 22, 2023 at 9:02 a.m., I accessed and downloaded from our evidence storage database the Body Worn Camera ("BWC") video that is attached as ECF No. 6-1 to Officer Hagen's Memorandum in Support of Motion to Dismiss. I confirmed from a review of the audit history that the downloaded video was the complete, unedited video that was uploaded by Officer Lewis Hagen on December 26, 2021. I then produced the BWC video, ECF No. 6-1, in its complete, unedited format to the Chesterfield County Attorney's Office for use in this litigation brought by Richard P. Harrold. I hereby certify, in accordance with VA. CODE § 8.01-390, that ECF No. 6-1 is a true and accurate copy of the original video maintained by and in the custody of the CCPD.

MICHELLE M. HEILMAN
NOTARY PUBLIC
REGISTRATION # 7060107
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES
MARCH 31, 2026

Michael S. Breeden, Captain
Chesterfield County Police Department
Chesterfield County, Virginia

COMMONWEALTH OF VIRGINIA
COUNTY OF CHESTERFIELD, to-wit:

I, Michael S. Breeden, a Notary Public in and for the Commonwealth and County aforesaid, do hereby certify that this 29th day of January, 2024, Michael S. Breeden, Captain, Chesterfield County Police Department, whose name is signed to the foregoing Certificate of Authenticity, personally appeared before me in my jurisdiction aforesaid, and acknowledged the same before me in my jurisdiction aforesaid.

Given under my hand this 29th day of January.

My commission expires: March 31, 2026

My registration number: 7060107

Michelle M. Heilman
Notary Public

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

**RICHARD P. HARROLD,**

       **Plaintiff,**

    v.                        **Civil Action No. 3:23cv866**

**LEWIS J. HAGEN III,** *individually and in his
official capacity as an Officer of the
Chesterfield County Police Department,
Chesterfield County, Virginia,*

       **Defendant.**

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Lewis J. Hagen III's ("Officer Hagen")

Motion to Dismiss (the "Motion to Dismiss").[1]  (ECF No. 5).  Plaintiff Richard P. Harrold

responded in opposition, (ECF No. 8), and Officer Hagen replied, (ECF No. 10).  On January 25,

2024, Mr. Harrold filed a Motion Requesting Oral Argument (the "Motion for Hearing").  (ECF

No. 9.)

The matter is ripe for disposition.  The Court dispenses with oral argument because the

materials before it adequately present the facts and legal contentions, and argument would not

aid in the decisional process.  Therefore, the Court will DENY the Motion for Hearing.  (ECF

No. 9.)

For the reasons articulated below, the Court will GRANT the Motion to Dismiss.  (ECF

No. 5.)

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system.

**JA40**

## I. Factual and Procedural Background

### A.    Factual Background[2]

Mr. Harrold is a resident of Virginia who is in his late forties. (ECF No. 1 ¶¶ 6, 18.) He

is "approximately five feet, ten inches tall" and at all times relevant to this action, "weighed 145

pounds." (ECF No. 1 ¶ 19.) He is also a below-the-knee amputee and uses a prosthetic knee and

foot, which limits his mobility. (ECF No. 1 ¶ 20.) Mr. Harrold's claims stem from his

---

[2] In considering the Motion to Dismiss, (ECF No. 5), the Court will assume the well-pleaded factual allegations in the Complaint to be true and will view them in the light most favorable to Mr. Harrold. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

The Court will also consider the nine-minute video of body worn camera footage submitted by Officer Hagen in support of the Motion to Dismiss. (ECF No. 6-1.) However, pursuant to a recent directive from the United States Court of Appeals for the Fourth Circuit, the Court will *only* consider the video "to the extent that [it] 'clearly depicts a set of facts contrary to those alleged in the complaint,' or 'blatantly contradicts' [Mr. Harrold's] allegations, rendering [his] allegations implausible." *Doriety for Est. of Crenshaw v. Sletten*, 109 F.4th 670, 679–80 (4th Cir. 2024) (quoting *Saalim v. Walmart, Inc.*, 97 F.4th 995, 1002 (6th Cir. 2024).) As a result, the Court will not credit Mr. Harrold's allegations to the extent Officer Hagen's relevant footage "clearly depicts a set of facts contrary to those alleged in the complaint" or "blatantly contradicts' [Mr. Harrold's] allegations, rendering [his] allegations implausible." *Id.* (quotation marks and citation omitted).

The Court is permitted to consider this footage for this limited purpose because the footage "is 'integral' to the complaint and its authenticity is not challenged." *Sletten*, 109 F.4th at 679. Although Mr. Harrold states that the body worn camera footage in ECF No. 6-1 is "unauthenticated", he does not challenge whether the footage is a true and accurate copy of what Officer Hagen's body worn camera captured on the night of Mr. Harrold's arrest, nor does he contend that the footage was altered in any way. (ECF No. 8, at 2–5.) Furthermore, Mr. Harrold cites to the footage in his Complaint, (ECF No. 1 ¶ 67), and relies on the footage in support of his Opposition, (ECF No. 8, at 10–11, 26). Plainly, the footage is integral to the Complaint.

Finally, as Exhibits to his Reply, Officer Hagen attaches the following: (1) Officer Hagen's Certificate of Authenticity, (ECF No. 10-1); and (2) Captain Michael S. Breeden's Certificate of Authenticity, (ECF No. 10-2). Both Exhibits certify that ECF No. 6-1 is a true and accurate copy of the entire video captured by Officer Hagen's body worn camera during his search and arrest of Mr. Harrold at the VA Cards dealership on December 26, 2021. (ECF No. 10-1, at 1; ECF No. 10-2, at 1.)

2

December 26, 2021 arrest by Officer Hagen of the Chesterfield County Police Department

("CCPD"). (ECF No. 1 ¶¶ 18, 24, 34.)

### 1.    Mr. Harrold Breaks Into a VA Cars Dealership in the Evening

During the evening of December 26, 2021, "[f]or reasons that are unclear [to him]", Mr.

Harrold broke into the VA Cars dealership in Chesterfield County, Virginia, by breaking one of

the dealership's glass doors. (ECF No. 1 ¶¶ 2–3, 23, 26.) While breaking into the dealership,

Mr. Harrold triggered a security alarm, which resulted in an emergency call to CCPD. (ECF No.

1 ¶¶ 23–24.) Multiple CCPD officers arrived at the scene, including Officer Hagen and his

police dog, Kona. (ECF No. 1 ¶¶ 23–24.)

After CCPD officers arrived at the scene, Mr. Harrold "went up a flight of stairs" to the

second floor of the building and "waited in a storage room." (ECF No. 1 ¶ 29.) Mr. Harrold

explains that at this time, "[h]e was scared, confused, and did not know what to do, but he

intended to wait in the storage room until he was arrested." (ECF No. 1 ¶ 30.) At an

unidentified point in time, Mr. Harrold "calle[d] out to the police, 'I am not a threat'", or words

of similar effect. (ECF No. 1 ¶ 32.)

After "other police officers . . . secured the perimeter of the building, Officer Hagen

entered with [Kona] on a leash", and "Officer Hagen and [Kona] began a search of the building."

(ECF No. 1 ¶ 35.)

### 2.    After CCPD Officers Shout Six Explicit Warnings, Kona Forcibly Subdues Mr. Harrold While Officer Hagen Handcuffs Him

CCPD policy requires officers to give verbal warnings whenever an officer releases a

canine. (ECF No. 1 ¶ 64.) When searching large areas, officers must give multiple warnings.

(ECF No. 1 ¶ 64.)

3

**JA42**

Mr. Harrold notes that at some point prior to his arrest, he "heard the sound of police

officers" but, read favorably, alleges that once Officer Hagen found him, no warnings were

issued. (ECF No. 1 ¶¶ 33, 44.) Prior to Mr. Harrold's arrest, CCPD officers had already issued

six warnings:

> (1)   After a CCPD officer entered the dealership by breaking out the remaining glass
>        in the dealership's doorway, and as Kona entered the building, a CCPD officer
>        shouted an initial warning: "Chesterfield police canine!" (ECF No. 6-1, at
>        01:14–1:46.)
>
> (2)   Running with Kona on a leash toward a staircase to the second floor, Officer
>        Hagen shouted a second warning: "Police canine, come on out now and I'll
>        release the dog and the dog bites!  You will be bit!  You understand me?" (ECF
>        No. 6-1, at 01:46–01:53.)
>
> (3)   As Officer Hagen and Kona ascended the staircase to the second floor, Officer
>        Hagen repeated this warning a third time, shouting: "Police canine, come on out
>        now!" (ECF No. 6-1, at 01:46–01:53.)
>
> (4)   After Office Hagen and Kona reached the second floor, Officer Hagen shouted a
>        fourth warning: "Police canine, come on out now!" (ECF No. 6-1, at 01:59–
>        02:00.) Officer Hagen then shouted: "Find him, find him!" (ECF No. 6-1, at
>        02:01–02:03.)
>
> (5)   As Officer Hagen and Kona searched the second floor, he gave a fifth warning:
>        "Police canine, come on out now!" (ECF No. 6-1, at 02:10–02:12.) Officer
>        Hagen then told Kona: "Find him, find him, find him, find him." (ECF No. 6-1,
>        at 02:13–02:18.)
>
> (6)   After entering the same room where he would find Mr. Harrold approximately
>        one minute and sixteen seconds later, Officer Hagen provided a sixth and final
>        warning, loudly stating: "Police canine!" (ECF No. 6-1, at 02:18–02:20; 3:35–
>        3:38.)[3]

As Officer Hagen and Kona searched the room, which was packed with boxes, shelves,

and computer equipment, Officer Hagen repeatedly stated: "Where's he at?" (ECF No. 6-1, at

02:19–03:38.) Kona and Officer Hagen then entered a narrow aisle that was cluttered with

---

[3] This footage blatantly contradicts Mr. Harrold's Complaint to the extent he alleges that
Officer Hagen failed to give *any* warning at any point in time. (*See* ECF No. 1 ¶¶ 64–65.)

4

JA43

numerous objects including boxes, computer equipment, and office chairs. (ECF No. 6-1, at 03:10–3:40.) Officer Hagen ultimately located Mr. Harrold "with his head down", "lay[ing] still on the floor" of the narrow aisle, which amounted to "a small room with no exit." (ECF No. 1 ¶¶ 57, 58.) Specifically, Mr. Harrold was balled up in the narrow aisle, with his hands out of view, passively resisting. (No. 6-1, at 03:37.) Mr. Harrold was "cornered . . . with no exit", as Officer Hagen, "with backup," blocked "[t]he only entry way to the room." (ECF No. 1 ¶ 58.) Furthermore, "the building as a whole was surrounded by law enforcement officers." (ECF No. 1 ¶ 58.)

Kona initially walked past Mr. Harrold while Officer Hagen still held the leash, albeit without slack. (ECF No. 6-1, at 03:31–35.)[4] After locating Mr. Harrold, Officer Hagen failed to issue a seventh oral warning, and instead "gave a [silent hand] signal to [Kona] to sic Mr. Harrold." (ECF No. 1 ¶ 45; ECF No. 6-1 3:26–3:39.) Kona complied. (ECF No. 1 ¶ 45.) Kona's "attack was focused on Mr. Harrold's buttocks, anus", scrotum, legs, and amputated stump. (ECF No. 1 ¶ 49.) While Officer Hagen commanded Mr. Harrold to "show me your hands" and "stop resisting", he attempted to handcuff Mr. Harrold. (ECF No. 6-1, at 03:40–03:59.) While Officer Hagen attempted to handcuff Mr. Harrold, Mr. Harrold shouted: "Get him off!" and "Pull him off!" (ECF No. 6-1, at 03:55–03:57.) An officer shouted back: "Not until you are in handcuffs!" (ECF No. 6-1, at 03:55–03:57.) Kona continued to "attack Mr. Harrold . . . for an extended period of time." (ECF No. 1 ¶ 76.)

---

[4] This footage blatantly contradicts Mr. Harrold's allegation that Kona first found Mr. Harrold and licked his face, leading Mr. Harrold to "fully expect[] that soon a police officer would ask him to surrender." (ECF No. 1 ¶¶ 38, 40.) The upshot of that disparity is discussed later.

Immediately after Officer Hagen handcuffed Mr. Harrold, Officer Hagen placed his hands on Kona's harness and pulled; while still pulling on Kona's harness, Officer Hagen maneuvered around the cluttered, narrow aisle and, with some difficulty, separated Kona from Mr. Harrold while he remained lying on the ground. (ECF No. 6-1, at 04:02–04:10.)[5] After Mr. Harrold was in handcuffs, officers found a "small utility knife" among his possessions. (ECF No. 1 ¶ 21.)

### 3. Mr. Harrold's Resulting Injuries

"Mr. Harrold sustained widespread and severe, deep dog bites over multiple areas of his body", namely his buttocks, anus, scrotum, legs, and amputated stump. (ECF No. 1 ¶¶ 49, 74.) Mr. Harrold bled "profusely from the wounds sustained" during his arrest. (ECF No. 1 ¶ 73.) Mr. Harrold's clothing, shoes, and prosthetic leg were "covered in blood," and a tourniquet and Israeli bandage[6] were applied at the scene to prevent Mr. Harrold from bleeding out. (ECF No. 1 ¶¶ 73, 77.) Due to Mr. Harrold's injuries and blood loss, he was transported by ambulance to Chippenham Hospital's emergency department. (ECF No. 1 ¶ 78.) Some of Mr. Harrold's wounds became infected. (ECF No. 1 ¶ 74.) Mr. Harrold contracted meningitis several months after the incident, and he has suffered additional bodily injuries including scarring and deformity. (ECF No. 1 ¶¶ 79, 80.) Mr. Harrold has also suffered emotional and economic harm as a result of the arrest. (ECF No. 1 ¶ 80.)

---

[5] This footage blatantly contradicts Mr. Harrold's allegation that "Officer Hagen continued allowing [Kona] to attack Mr. Harrold, even as Mr. Harrold made it to his feet and stood with his hands behind his back, making no attempt to flee, and posing a threat to no one." (ECF No. 1 ¶ 48). The upshot of this disparity is discussed later.

[6] Also known as an Emergency Bandage, an Israeli bandage is a specifically designed, first-aid device that is used to stop bleeding from traumatic hemorrhagic wounds in pre-hospital emergency situations.

6

**JA45**

## B.    Procedural Background

In his Complaint Mr. Harrold asserts eight counts:

**Count I:**      Deprivation of Civil Rights under the Fourth Amendment–
                  Unlawful Seizure–against Officer Hagen in his personal
                  capacity pursuant to 42 U.S.C. § 1983.

**Count II:**     Deprivation of Civil Rights under the Fourth Amendment–
                  Excessive Force–against Officer Hagen in his personal
                  capacity pursuant to 42 U.S.C. § 1983.

**Count III:**    Deprivation of Civil Rights under the Fourth Amendment
                  against Officer Hagen in his official capacity pursuant to 42
                  U.S.C. § 1983.

**Count IV:**     Assault under Virginia common law.

**Count V:**      Battery under Virginia common law.

**Count VI:**     Intentional Infliction of Emotional Distress ("IIED") under Virginia
                  common law.

**Count VII:**    Negligence under Virginia common law (pleaded in the alternative).

**Count VIII:**   Gross Negligence under Virginia common law (pleaded in the alternative).

(ECF No. 1, at 13–19.)

On January 11, 2024, Officer Hagen filed the instant Motion to Dismiss. (ECF No. 5.)

Officer Hagen argues that dismissal is proper under Fed. R. Civ. P. 12(b)(6). (ECF No. 5, at 1.)

On January 25, 2024, Mr. Harrold filed his opposition to the Motion to Dismiss. (ECF No. 8.)

The same day, Mr. Harrold filed a Motion for Hearing. (ECF No. 9.) On January 31, 2024,

Officer Hagen replied to Mr. Harrold's opposition. (ECF No. 10.)

For the reasons articulated below, the Court will grant the Motion to Dismiss.

(ECF No. 5.) The Court will deny as moot the Motion for Hearing. (ECF No. 9.)

7

**JA46**

## II. Standard of Review

### A.    Rule 12(b)(6)

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint;
importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the
applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir.
1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356
(1990)). To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual
information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for
relief must contain . . . a short and plain statement of the claim showing that the pleader is
entitled to relief."). Mere labels and conclusions declaring that the plaintiff is entitled to relief
are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate
some factual enhancement within the complaint to cross the line between possibility and
plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009)
(quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a
reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S.
at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This analysis is context-specific
and requires "the reviewing court to draw on its judicial experience and common sense."
*Giacomelli*, 588 F.3d at 193 (citation omitted). The court must assume all well-pleaded factual
allegations to be true and determine whether, viewed in the light most favorable to the plaintiff,
they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Kensington
Volunteer Fire Dep't, Inc. v. Montgomery Cnty, Md.*, 684 F.3d 462, 467 (4th Cir. 2012)

8

**JA47**

(concluding that the court in deciding a Rule 12(b)(6) motion to dismiss "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff'" (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011))).

## III. Analysis

Officer Hagen seeks dismissal of all eight counts in the Complaint. He seeks relief on the following grounds: (1) Mr. Harrold fails to state an official capacity claim (Count III); (2) Counts I and II are duplicative and therefore should be considered as a single Count;[7] (3) Officer Hagen is entitled to qualified immunity, and therefore Mr. Harrold fails to state a claim for Counts I, II, IV, and V; (4) Mr. Harrold fails to state a claim for intentional infliction of emotional distress ("IIED") (Count VI); (5) Mr. Harrold fails to state a claim for negligence (Count VII);[8] and (6) Mr. Harrold fails to state a claim for gross negligence (Count VIII). (ECF No. 6, at 9–10, 18, 20–22.)

As it must at this juncture, the Court accepts Mr. Harrold's well-plead allegations as true, but does not credit Mr. Harrold's allegations to the extent Officer Hagen's body worn camera footage "clearly depicts a set of facts contrary to those alleged in the complaint" or "blatantly contradicts' [Mr. Harrold's] allegations, rendering [his] allegations implausible." *Doriety for Est. of Crenshaw v. Sletten*, 109 F.4th 670, 679–80 (4th Cir. 2024) (quotation marks omitted).

---

[7] As discussed in more detail below, Mr. Harrold concedes in his Opposition that Counts I and II are duplicative. (*See* ECF No. 1, at 6.)

[8] In his Opposition, Mr. Harrold consents to the dismissal of Count VII, which pleads negligence. (ECF No. 8, at 28.)

9

**JA48**

For the reasons articulated below, the Court concludes that Mr. Harrold fails to state any

federal claim against Officer Hagen. The Court will, in its discretion, decline to exercise

supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(a), (c)(3).[9]

## A.    Mr. Harrold Fails to State a Claim for Deprivation of Civil Rights Under the Fourth Amendment Under 42 U.S.C. § 1983 (Count III)

In his Opposition, Mr. Harrold clarifies that he is not asserting a claim in Count III under

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). (ECF No. 8, at 5–6.) Rather, Mr. Harrold

asserts an official capacity claim against Officer Hagen "seek[ing] only declaratory and

prospective injunctive relief pursuant to *Ex Parte Young*, 209 U.S. 123 (1908)." (ECF No. 8, at

1.) Because Mr. Harrold alleges only a past violation of his rights, rather than any ongoing

violation, this claim fails as a matter of law.

### 1.    Legal Standard: *Ex Parte Young*

"The *Ex Parte Young* exception to the Eleventh Amendment 'allows private citizens, in

proper cases, to petition a federal court to enjoin State officials in their official capacities from

engaging in future conduct that would violate the Constitution or a federal statute.'" *Wicomico*

*Nursing Home v. Padilla*, 910 F.3d 739, 746 (4th Cir. 2018) (quoting *Antrican v. Odom*, 290

F.3d 178, 184 (4th Cir. 2002)). "Under this exception, a state official who acts in violation of

federal law is 'stripped of his official or representative character and is subjected in his person to

the consequences of his individual conduct.'" *Id.* at 746–47 (quoting *Ex Parte Young*, 209 U.S.

---

[9] "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

10

at 160). "By subjecting a state official to a legal action, the *Ex Parte Young* exception seeks to 'conform [his or her] *future* conduct to the requirements of federal law, even though such an injunction may have an ancillary effect on the state treasury.'" *Id.* at 747 (quoting *Quern v. Jordan*, 440 U.S. 332, 337(1979) (emphasis added)).

To take advantage of this narrow exception, a plaintiff must bring an action against the proper state officials, *see Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 249 (4th Cir. 2012), and must properly characterize the relief sought as prospective and injunctive in nature, *see Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004). "Determining whether a suit may proceed under *Ex [P]arte Young* requires only that the court 'conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Pickering v. Virginia State Police*, 59 F.Supp.3d 742, 747 (E.D. Va. 2014) (quoting *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011)).

### 2. Mr. Harrold's *Ex Parte Young* Founders Because He Fails to Allege Any Ongoing Violation of His Rights

Officer Hagen is a police officer employed by the County of Chesterfield. (ECF No. 1 ¶ 8.) Mr. Harrold fails to provide any case law or argument explaining why the Court should consider Officer Hagen to be a proper "state official" for the purposes of his *Ex Parte Young* claim. In any event, even if Officer Hagen were properly considered a state official in this context, this claim nevertheless must be dismissed because Mr. Harrold fails to allege any ongoing violation of his rights. *See Pickering*, 59 F. Supp. 3d at 747.

11

**B.     Mr. Harrold Concedes that Count I and II are Duplicative, and Can Be Considered as a Single Claim for Excessive Force**

Mr. Harrold correctly concedes that Counts I and II are duplicative.[10]  Out of deference to

Mr. Harrold, who is the non-moving party, the Court will grant Mr. Harrold's request and will

consider the two Counts as a single claim for excessive force under 42 U.S.C. § 1983, and will

consider Count I to be subsumed within Count II.  The Court will dismiss Count I, and will

analyze Count II below.

**C.     Officer Hagen is Entitled to Qualified Immunity, Requiring the Court to Dismiss Mr. Harrold's § 1983 Claim for Excessive Force (Count II)**

In Count II, Mr. Harrold asserts a claim against Officer Hagen under 42 U.S.C. § 1983

for excessive force.  For the reasons articulated in detail below, he plausibly alleges that Officer

Hagen's actions amount to excessive force in violation of the Fourth Amendment.  Mr. Harrold

fails, however, to establish that the right violated was clearly established at the time of the

violation.  As a result, Office Hagen is entitled to qualified immunity.  The Court must dismiss

Count II.

---

[10] In his Opposition, Mr. Harrold clarifies that "Count I relates to the initial seizure of Mr. Harrold's person using the K-9 police dog[,] while Count II involves Officer Hagen's actions that resulted in the prolonged dog bite attack of Mr. Harrold." (ECF No. 8, at 6.) Mr. Harrold explains that he "originally believed it made sense to plead these claims separately", but upon further review of the case law, he "does not object to having the Counts considered as one." (ECF No. 8, at 6.) Mr. Harrold states that "[i]f the Court finds Counts I and II should not be pleaded separately, Plaintiff asks the Court to consider the two Counts as a single claim for excessive force under 42 U.S.C. § 1983, and consider Count I to be subsumed within Count II." (ECF No. 8, at 6.) In support of his Motion to Dismiss, Officer Hagen explains that "[a] seizure allegedly using excessive force in effectuating an arrest (Count II) would be an unreasonable seizure in violation of the Fourth Amendment (Count I)." (ECF No. 6, at 11.) Accordingly, Officer Hagen argues, "Count II should be dismissed as it is duplicative of and subsumed within Count I." (ECF No. 6, at 11 (citing *Graham v. Connor*, 490 U.S. 386, 394-96 (1989).)

12

**JA51**

### 1.    Legal Standard:  Qualified Immunity

Law enforcement officers sued under § 1983 are protected by qualified immunity "when performing their duties within the scope of their employment insofar as their conduct does not breach 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sigman v. Town of Chapel Hill*, 161 F.3d 782, 786 (4th Cir. 1998) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity is not merely a defense to liability but is "an immunity from suit" and courts must therefore "scrutinize and dismiss appropriate cases on qualified immunity grounds early in the litigation." *Id.*; *see also Hunter v. Bryant*, 502 U.S. 224, 227 (1991) ("[W]e repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." (collecting cases).)

"The goal of the doctrine is to balance two important concerns, first the need to hold public officials accountable when they exercise power irresponsibly and second the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Melgar ex rel. Melgar v. Greene*, 593 F.3d 348, 357 (4th Cir. 2010) (internal quotation marks and citations omitted). "The purpose of the immunity is to allow some room for discretionary judgment in what are indisputably difficult circumstances and not to have the prospect of being blind-sided in hindsight discourage officers from the constructive tasks they can in fact perform." *Id.* (citing *Gooden v. Howard County*, 954 F.2d 960, 967 (4th Cir.1992) (en banc)). "Thus officers will not be held liable, even if they violate statutory or constitutional rights, unless they had prior guidance which would allow them to determine that their contemplated action was improper." *Id.*

Determining whether a defendant is entitled to qualified immunity involves a two part inquiry as the Court must determine:  (1) whether the facts "make out a violation of a

13

**JA52**

constitutional right"; and (2) "whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal quotations omitted). For a right to be "clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right.'" *M.C. ex rel. Crawford v. Amrhein*, 598 F.App'x 143, 147 (4th Cir. 2015) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).)

Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. A defendant "is entitled to qualified immunity if either prong is not satisfied." *Attkisson v. Holder*, 925 F.3d 606, 623 (4th Cir. 2019), *as amended* (June 10, 2019) (citing *Pearson*, 555 U.S. 223 at 244–45)).

### 2.    Legal Standard:  Federal Excessive Force Violations

"It is well-established that all claims that law enforcement officers have used excessive force . . . should be analyzed under the Fourth Amendment and its reasonableness standard, including claims that police canines were improperly deployed." *Melgar*, 593 F.3d at 355 (internal quotation marks and citations omitted); *Vathekan v. Prince George's Cnty.*, 154 F.3d 173, 178 (4th Cir. 1998); *see also Erreguin v. Accomack Cnty.*, No. 2:08CV475, 2009 WL 10731049 (MSD), at *5 (E.D. Va. Mar. 6, 2009). The standard of review for allegations of unreasonable force under the Fourth Amendment is "an objective one," and "the question is whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." *Elliott v. Leavitt*, 99 F.3d 640, 642 (4th Cir. 1996). "Reasonableness is evaluated from the officer's perspective in recognition of the fact that

14

**JA53**

officers cannot be expected to respond to information they did not possess at the time they
acted[.]" *Melgar*, 593 F.3d at 355 (internal citation omitted).

In determining the objective reasonableness of an officer's use of force, the United States
Court of Appeals for the Fourth Circuit has explicitly rejected taking "a 'segmented view of the
sequence of events' . . . concluding that it 'miss[es] the forest for the trees.'" *Smith v. Ray*, 781
F.3d 95, 101 (4th Cir. 2015) (quoting *Rowland v. Perry*, 41 F.3d 167, 173 (4th Cir. 1994).)
Rather, the Fourth Circuit has "determined that '[t]he better way to assess the objective
reasonableness of force is to view it in full context, with an eye toward the proportionality of the
force in light of all the circumstances.'" *Id.* (quoting *Rowland*, 41 F.3d at 173). "*Graham v.
Connor* also frames the reasonableness determination in a larger perspective, evaluating all
relevant factors rather than any one in isolation." *Rowland*, 41 F.3d at 173.

The *Graham* factors include: (1) "'the severity of the crime at issue"; (2) "'whether the
suspect poses an immediate threat to the safety of the officers or others"; and (3) "whether [he or
she] is actively resisting arrest or attempting to evade arrest by flight." *Southworth v. Jones*, 529
F. Supp. 3d 454, 460 (E.D. Va. 2021) (cleaned up) (quoting *Graham*, 490 U.S. at 396).

The Fourth Circuit has also instructed that when considering the "facts and
circumstances" of each case, the extent of the plaintiff's injury is also relevant consideration.
*Jones v. Buchanan*, 325 F.3d 520, 527–28 (4th Cir. 2003). "Furthermore, any use of force 'must
be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20
vision of hindsight' and such calculus must make allowance for the reality that 'police officers
are often forced to make split-second judgments—in circumstances that are tense, uncertain, and
rapidly evolving—about the amount of force that is necessary in a particular situation."
*Erreguin*, 2009 WL 10731049, at *5 (quoting *Graham*, 490 U.S. at 396–97).

15

**JA54**

An officer's "failure to give a warning before releasing a police dog is objectively

unreasonable in an excessive force context." *Vathekan v. Prince George's Cnty.*, 154 F.3d 173,

179 (4th Cir. 1998) (quoting *Kopf v. Wing*, 942 F.2d 265, 266 (4th Cir. 1991)). Additionally,

when considering the objective reasonableness of a prolonged seizure by a police dog, whether

the police dog's actions affected a defendant's ability to immediately submit to arrest is a

relevant consideration. *Kopf*, 942 at 268 ("We believe that a jury could find it objectively

unreasonable to require someone to put his hands up and calmly surrender while a police dog

bites his scrotum.")

### 3.    Because the Constitutional Violation Was not Clearly Established, Officer Hagen Properly Invokes Qualified Immunity

Officer Hagen invokes qualified immunity on the grounds that his actions did not violate

"'clearly established statutory or constitutional rights of which a reasonable person would have

known.'" (ECF No. 6, at 12 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).)

Considering the totality of the circumstances, the Court is particularly troubled by the severity of

Mr. Harrold's injuries, the prolonged nature of Kona's bite, and Officer Hagen's failure to issue

an additional verbal warning upon locating Mr. Harrold while he lay passively on the ground.

Mr. Harrold plausibly alleges a violation of his Fourth Amendment rights based on Officer

Hagen's use of excessive force when arresting him. Nonetheless, despite officers shouting at

least six warnings regarding the presence of a police canine (five from Officer Hagen and one

from another CCPD officer), (ECF No. 6-1, at 01:14-02:20),[11] Mr. Harrold failed to come out of

---

[11] Officer Hagen's briefing, which pre-dates *Doriety for Est. of Crenshaw v. Sletten*, 109
F.4th 670 (4th Cir. 2024), asks the Court to consider the entirety of Officer Hagen's nine-minute
body worn camera footage. (ECF No. 6, at 9.) He heavily relies on the footage throughout his
briefing, emphasizing, for example, that Mr. Harrold "hid behind a partial wall next to the
surveillance camera feed", and that "there were no other officers immediately behind Officer

16

his hiding place or orally respond during a suspected commercial burglary, forcing law enforcement to seek him out. (*See* ECF No. 1 ¶¶ 30, 37.) Under these circumstances, the Court is unable to conclude that it would have been clear to a reasonable officer in Officer Hagen's position that Officer Hagen's deployment of Kona, which was preceded by at least *some* warning, was unlawful. Therefore, Mr. Harrold fails to satisfy the second prong of the qualified immunity analysis, and Officer Hagen is entitled to qualified immunity for Count II. The Court will address each prong in depth below.

### i. Mr. Harrold Plausibly Alleges a Violation of the Fourth Amendment

"[I]n light of the circumstances in the particular case at hand", the Court will first address the first prong of the qualified immunity analysis: whether the facts alleged "make out a violation of a constitutional right." *See Pearson*, 555 U.S. 223, 232, 236 (2009). Mr. Harrold's excessive force claim, which arises in the context of an arrest of a free citizen, properly invokes the protections of the Fourth Amendment. (*See* ECF No. 1, at 14); *see also Graham*, 490 U.S. at 396. Accordingly, to determine if Officer Hagen violated Mr. Harrold's constitutional rights, the

---

Hagen and Kona when Officer Hagen gave the bite command." (ECF No. 6, at 16–17.) The Court does not consider these arguments nor these facts in reaching its decision today. As previously articulated, in light of the Fourth Circuit's binding guidance in *Doriety*, the Court *only* considers Officer Hagen's body worn camera footage to the limited extent that it "clearly depicts a set of facts contrary to those alleged in the complaint" or "blatantly contradicts' [Mr. Harrold's] allegations, rendering [his] allegations implausible." 109 F.4th at 679–80.

The Court follows *Doriety* reluctantly. As the *Doriety* court itself warned, "courts must be mindful not to short-circuit at the motion to dismiss stage a plaintiff's plausible claim of excessive force based on a video that does not blatantly contradict those allegations." 109 F.4th at 681. But allowing a Court to consider body worn camera footage in *any* capacity in a § 1983 case does just that. The Court is loath to consider Officer Hagen's body worn camera footage at all at this nascent stage—before discovery has begun and before Mr. Harrold has been given a chance to issue discovery requests and proffer evidence in support of his side of the story. Nonetheless, the Court is bound by *Doriety*'s holding at this time.

17

**JA56**

Court must apply an "objective reasonableness" test, which requires a "careful balancing of 'the nature and quality of the intrusion on [Mr. Harrold's] Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.*

Here, reading Mr. Harrold's well-plead allegations favorably and combining them with Officer Hagen's body worn camera footage—which the court considers *only* to the extent it clearly depicts a set of facts contrary to those alleged in the Complaint or blatantly contradicts Mr. Harrold's allegations—establish that Officer Hagen's application of force was not objectively reasonable.

Turning to the first *Graham* factor—the severity of the crime at issue—Mr. Harrold forcibly broke into the VA Cars dealership in the evening by breaking a glass door to the building. (ECF No. 1 ¶¶ 23–24.) A reasonable officer in the same circumstances could conclude that a burglary by Mr. Harrold was in progress. Federal law defines "burglary" as a violent crime. *See* 18 U.S.C. § 924(e)(2)(B).[12] This factor weighs in favor of Officer Hagen.

*Graham* factor two— whether the suspect poses an immediate threat to the safety of the officers or others—weighs slightly in Mr. Harrold's favor. Mr. Harrold forcibly broke into a car dealership at night, and from a reasonable officer's perspective, he could have even been armed when doing so. Nonetheless, at the time Officer Hagen located Mr. Harrold, he "lay motionless

---

[12] The definition of "violent felony" found in § 924(e)(2)(B)(ii) states in pertinent part:

(B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year . . . that–

\*          \*          \*

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]

§ 924(e)(2)(B)(ii).

18

on the floor, with his head down." (ECF No. 1 ¶ 57.) Furthermore, Mr. Harrold was on the floor

of a narrow aisle, which amounted to "a small room with no exit." (ECF No. 1 ¶ 58.) Mr.

Harrold was "cornered", as Officer Hagen, "with back up," blocked "[t]he only entry way to the

room." (ECF No. 1 ¶ 58.) Although it is possible that Mr. Harrold could have been armed, Mr.

Harrold's body positioning at this time supports a conclusion that he did not pose an immediate

threat to Officer Hagen's safety at the moment Officer Hagen discovered him and silently

signaled Kona to attack in lieu of issuing an additional warning. (ECF No. 1 ¶ 45; ECF No. 6-1

3:26–3:39.) When confronted directly, Mr. Harrold engaged in passive, not active, resistance.

*C.f. Putman v. Harris*, 66 F.4th 181, 188 (4th Cir. 2023); *see Barker v. Gaylor*, No. 2:20-CV-

00357, 2021 WL 3354161, at *6 (S.D.W. Va. Aug. 2, 2021).

 The final *Graham* factor—regarding whether Mr. Harrold actively resisted arrest or

attempted to evade arrest by flight—weighs slightly in Mr. Harrold's favor. Rather than

immediately surrender when CCPD officers arrived at the scene, Mr. Harrold fled up a flight of

stairs. (ECF No. 1 ¶ 29.) After Mr. Harrold reached the second floor, he "waited in a storage

room." (ECF No. 1 ¶ 29.) Despite officers shouting at least six warnings regarding the presence

of a police canine (five from Officer Hagen and one from another CCPD officer), (ECF No. 6-1,

at 01:14-02:20), Mr. Harrold failed to come out of his hiding place or orally respond, forcing law

enforcement to seek him out. (ECF No. 1 ¶¶ 30, 37.) A reasonable officer in Officer Hagen's

situation could conclude that Mr. Harrold, at least initially, attempted to evade arrest by flight.

 Nonetheless, at the time Officer Hagen encountered Mr. Harrold and subsequently

released Kona, Mr. Harrold was at most passively resisting by lying prone on the floor. (ECF

No. 1 ¶ 57.) *See Kopf*, 924 F.2d at 268 ("We believe that a jury could find it objectively

unreasonable to require someone to put his hands up and calmly surrender while a police dog

19

bites his scrotum.") Considering the totality of the circumstances, the Court is unable to conclude on this limited record that Mr. Harrold was actively resisting arrest or attempting to flee at the time Officer Hagen discovered Mr. Harrold.

Finally, Mr. Harrold's injures from Kona's prolonged attack were undeniably severe. Mr. Harrold describes gruesome injuries that were so "widespread and severe" that they resulted in life-threatening blood loss requiring emergency medical intervention. (ECF No. 1 ¶¶ 73, 77–78.) Some of these injuries are long lasting and include "scarring and deformity" as well as emotional and economic harm. (ECF No. 1 ¶¶ 79, 80.) Reading the Complaint liberally, it is plausible that these lasting injuries may have been avoided altogether if Officer Hagen had issued a final warning upon locating Mr. Harrold while he lay passively on the ground, or if Officer Hagen had released Kona from Mr. Harrold sooner and asked him to surrender.

Viewing Officer Hagen's prolonged deployment of Kona "in full context, with an eye toward the proportionality of the force in light of all the circumstances", and "evaluating all relevant factors rather than any one in isolation", it is plausible that Officer Hagen's use of force was objectively unreasonable for failing to issue a final warning before deploying Kona. *Rowland*, 41 F.3d at 173. The Court now turns to prong two of its qualified immunity analysis: "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232.

## ii.    The Constitutional Violation Was Not Clearly Established

For a right to be "clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right.'" *M.C. ex rel. Crawford*, 598 F. App'x at 147 (4th Cir. 2015) (quoting *Anderson*, 483 U.S.

20

at 640). An officer's "failure to give a warning before releasing a police dog is objectively
unreasonable in an excessive force context." *Vathekan*, 154 at 179 (quoting *Kopf*, 942 at 266).

Here, Officer Hagen deployed a police dog to bite Mr. Harrold, who had forcibly broken
into a commercial building at night, who fled after CCPD officers arrived, and who, from a
reasonable officer's perspective, could have been armed. The Court credits Mr. Harrold's well-
plead allegation, which is not contradicted by video evidence, that after locating Mr. Harrold,
Officer Hagen failed to issue a warning, and instead merely silently signaled Kona to sic Mr.
Harrold. (ECF No. 1 ECF No. 1 ¶ 45; ECF No. 6-1 3:26–3:39.) In light of *Doriety*, however,
the Court is also obligated to credit Officer Hagen's video footage to the extent it shows that
officers shouted at least six warnings regarding the presence of a police canine (five from Officer
Hagen and one from another CCPD officer), (ECF No. 6-1, at 01:14-02:20), because it blatantly
contradicts Mr. Harrold's Complaint to the extent it suggests that Officer Hagen failed to give
any warning at all. On this record, the Court cannot conclude that a reasonable officer in Officer
Hagen's situation would have concluded that Officer Hagen's deployment of Kona was
unlawful. While in the same room approximately one minute and sixteen seconds earlier,
Officer Hagen loudly announced "Police canine!" (ECF No. 6-1, at 02:18–02:20; 3:35–3:38.)
As a result, Officer Hagen's conduct did "not breach clearly established statutory or
constitutional rights of which a reasonable person would have known." *Sigman*, 161 F.3d at 786
(quotation marks omitted). Officer Hagen is therefore entitled to qualified immunity, and the
Court will dismiss Count II on this ground.

21

**JA60**

**D.     The Court Will Dismiss Mr. Harrold's Claim for Negligence (Count VII)**

Officer Hagen moves to dismiss Mr. Harrold's claim for negligence for failure to state a

claim. (ECF No. 6, at 20.)  In response, Mr. Harrold "consents to the dismissal of Count VII."

(ECF No. 8, at 28.)  The Court will dismiss Count VII.

**E.     The Court Will Decline to Exercise Supplemental Jurisdiction Over Mr.
         Harrold's Remaining State Law Claims**

The four remaining claims allege causes of action under Virginia law over which the

Court does not have original jurisdiction.[13]  The Court may consider the remaining state law

claims only if it exercises supplemental jurisdiction.  Because all relevant factors weigh against

exercising supplemental jurisdiction, the Court will decline to do so here.  *See, e.g.*, *Ruttenberg*

*v. Jones*, 603 F. Supp. 2d 844, 873 (E.D. Va. 2009), *aff'd*, 375 F. App'x 298 (4th Cir. 2010)

(declining to exercise supplemental jurisdiction over state law claims after dismissing all federal

claims in § 1983 action).

**1.     Legal Standard:  Supplemental Jurisdiction After Federal Claims Are
         Dismissed**

Federal district courts have supplemental jurisdiction over state law claims that "form

part of the same case or controversy" as a federal claim.  28 U.S.C. § 1367(a).  A district court,

however, may decline to exercise supplemental jurisdiction over state law claims if the district

court has dismissed all claims over which it has original jurisdiction.  28 U.S.C. § 1367(c)(3); *see*

*also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (generally, if federal

claims are dismissed before trial, state claims should be dismissed as well).

---

[13] The claims still at bar are:  Count IV (assault); Count V (battery); Count VI (intentional
infliction of emotional distress); and Count VIII (gross negligence).

"The doctrine of supplemental jurisdiction is one of flexibility, and there is no 'mandatory rule' requiring dismissal when the federal claim is disposed of before trial." *Peter Farrell Supercars, Inc. v. Monsen*, 82 F. App'x 293, 297 (4th Cir. 2003); *see also Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise [subject-matter] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."); *Shanaghan v. Cahill*, 58 F.3d 106,109 (4th Cir. 1995) ("The doctrine of supplemental jurisdiction indicates that federal courts generally have discretion to retain or dismiss state law claims when the federal basis for an action drops away."). Among the factors that inform the Court's discretionary determination are "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan*, 58 F.3d at 110.

### 2.    The Court Will Decline to Exercise Supplemental Jurisdiction

Although the court has unbridled discretion in deciding whether to exercise supplemental jurisdiction in this case, *Carlsbad Tech., Inc.*, 556 U.S. at 639, the United States Court of Appeals for the Fourth Circuit advises that the Court *should* consider "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy," *Shanaghan*, 58 F.3d at 110. An evaluation of these four factors uniformly favors dismissal.

As to the federal policy factor, none of the remaining counts directly involve federal policy. All remaining counts allege causes of action under Virginia law.

The Court's consideration of comity and judicial economy likewise favors dismissal. Mr. Harrold's remaining claims rely entirely upon Virginia law. It would be imprudent for this Court, one of limited jurisdiction, to suggest that it could more readily decide matters of Virginia

23

**JA62**

law than Virginia courts could.  Allowing a state court to address state law matters would best serve judicial economy.

Fairness and convenience to the parties also weigh in favor of the Court declining supplemental jurisdiction. This case remains in an early stage of litigation. Mr. Harrold has filed a single Complaint, and Officer Hagen has moved to dismiss that pleading. The Court has not decided any disputed state-law-based claims. The Court has not entered any discovery orders, and no matters will remain under consideration after this Court issues its decision. Were Mr. Harrold to subsequently file his claims in a court of appropriate jurisdiction, the parties would, for all intents and purposes, begin at the same stage of the litigation process. Accordingly, the Court's consideration of the convenience to the parties also favors dismissal.

### IV. Conclusion

For the reasons articulated above, the Court will grant the Motion. (ECF No. 5.) The Court will dismiss Mr. Harrold's federal law claims (Counts I, II, and III) with prejudice. The Court will also dismiss Count VII, negligence, with prejudice. Because the Court declines to exercise supplemental jurisdiction over Mr. Harrold's remaining state law claims, the Court will dismiss these claims (Counts IV, V, VI, and VIII) without prejudice.

An appropriate Order shall issue.

Date: 9/27/24
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge

24

**JA63**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## Richmond Division

### RICHARD P. HARROLD,

#### Plaintiff,

v.                                          Civil Action No. 3:23cv866

**LEWIS J. HAGEN III,** *individually and in his*
*official capacity as an Officer of the*
*Chesterfield County Police Department,*
*Chesterfield County, Virginia,*

#### Defendant.

### FINAL ORDER

For the reasons stated in the accompanying Memorandum Opinion, the Court GRANTS

Defendant Lewis J. Hagen III's Motion to Dismiss, (ECF No. 5).

1. Counts I, II, III, and VII are DISMISSED WITH PREJUDICE.

2. Counts IV, V, VI, and VIII are DISMISSED WITHOUT PREJUDICE.

The Court DENIES AS MOOT Plaintiff Richard P. Harrold's Motion Requesting Oral

Argument. (ECF No. 9.)

Because the Court does not grant leave to amend at this time, this order is final and

appealable. *See Britt v. DeJoy*, 45 F.4th 790, 796 (4th Cir. 2022) (holding that an order

dismissing a case without leave to amend is final and appealable). Mr. Harrold is advised that he

has the right to appeal the decision of the Court. Should he wish to do so, written notice of

**JA64**

appeal must be filed with the Clerk of the Court within thirty (30) days of the date of entry

hereof. Failure to file a written notice of appeal may result in the loss of the right to appeal.

It is SO ORDERED.

Date: 9/27/24
Richmond, Virginia

M. Hannah Lauck
United States District Judge

2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| RICHARD P. HARROLD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: 3:23-cv-866 |
| | ) |
| LEWIS J. HAGEN III, individually and in his | ) |
| official capacity as an Officer of the Chesterfield | ) |
| County Police Department, Chesterfield County, | ) |
| Virginia, | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFF'S NOTICE OF APPEAL

Richard P. Harrold ("Mr. Harrold" or "Plaintiff"), by counsel, appeals to the United States

Court of Appeals for the Fourth Circuit from the Final Order of this Court entered on September

27, 2024. Pursuant to Fed. R. App. P. 3(c)(6), Plaintiff states that this appeal is limited to the parts

of said Final Order dismissing Counts I, II and III of the Complaint.

Respectfully submitted,

RICHARD P. HARROLD,

*Plaintiff*

Dated: October 24, 2024.            By:___/s/ Robert J. Allen_____
                                         Counsel

Robert J. Allen (VSB No. 65214)
THORSENALLEN LLP
5413 Patterson Avenue, Suite 201
P. O. Box 17094
Richmond, VA 23226
Telephone: (804) 447-7234
Facsimile: (804) 447-7813
E-mail: rallen@thorsenallen.com
    *Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 24th day of October 2024, a copy of the foregoing *Notice of Appeal* was filed electronically with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record as follows:

> Julie A.C. Seyfarth, Esquire
> Senior Deputy County Attorney
> Chesterfield County, Virginia
> P.O. Box 40
> Chesterfield, VA 23832
> Email: seyfarthj@chesterfield.gov
> *Counsel for Defendant*

> _____/s/ Robert J. Allen_____
> Robert J. Allen (VSB No. 65214)
> THORSENALLEN LLP
> 5413 Patterson Avenue, Suite 201
> P. O. Box 17094
> Richmond, VA 23226
> Telephone: (804) 447-7234
> Facsimile: (804) 447-7813
> E-mail: rallen@thorsenallen.com
> *Counsel for Plaintiff*

2

**JA67**