———————————

RECORD NO. 24-2073

———————————

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

RICHARD P. HARROLD,

Plaintiff-Appellant,

v.

LEWIS J. HAGEN III, individually and in his
official capacity as an Officer of the Chesterfield
County Police Department,

Defendant-Appellee.

———————————

On appeal from the United States District Court
for the Eastern District of Virginia at Richmond
Civil Action No.: 3:23-cv-866

———————————

APPELLANT'S BRIEF

———————————

Robert J. Allen, Esquire
THORSENALLEN, LLP
5413 Patterson Ave., Suite 201
P.O. Box 17094
Richmond, VA 23226
Telephone: (804) 447-7234
Facsimile: (804) 447-7813

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 24-2073          Caption: Richard P. Harrold v. Lewis J. Hagen III

Pursuant to FRAP 26.1 and Local Rule 26.1,

Richard P. Harrold
(name of party/amicus)

who is _____ Appellant _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation?                    ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
    party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
    caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
    corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational
    victim of the criminal activity and (2) if an organizational victim is a corporation, the
    parent corporation and any publicly held corporation that owns 10% or more of the stock
    of victim, to the extent that information can be obtained through due diligence.

Signature: _____     Date: _____11/6/24_____

Counsel for: Appellant _____

Print to PDF for Filing

# **TABLE OF CONTENTS**

**Page**

DISCLOSURE STATEMENT

TABLE OF AUTHORITIES .................................................................... iii

APPELLANT'S BRIEF ...........................................................................1

I.      INTRODUCTION ..........................................................................1

II.     JURISDICTIONAL STATEMENT .................................................2

III.    STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ....................3

IV.    STATEMENT OF THE CASE ......................................................3

V.     SUMMARY OF THE ARGUMENT ...............................................9

VI.    ARGUMENT ..............................................................................11

        A.     STANDARD OF REVIEW ...............................................11

        B.     Officer Hagen's actions were objectively unreasonable, and his excessive force violated Mr. Harrold's Fourth Amendment rights ........15

                1.     The severity of the crime at issue (first *Graham* factor) ..........16

                2.     Mr. Harrold did not pose an immediate threat to the safety of Officer Hagen or others (second *Graham* factor) .................19

                3.     Mr. Harrold was not actively resisting arrest or attempting to evade arrest by flight at the relevant time (third *Graham* factor) ......................................................................21

                4.     The severity of Mr. Harrold's injuries (additional factor). .......23

        C.     Mr. Harrold's clearly established rights were violated, and Officer Hagen is not entitled to qualified immunity ...........................24

1.    Defendant's conduct violated Mr. Harrold's constitutional rights. (First prong under *Saucier/Pearson*.) ............................24

2.    Mr. Harrold's Fourth Amendment right was clearly established at all relevant times. (Second prong under *Saucier/Pearson*.).................................................................25

    a.    Mr. Harrold's rights were clearly established by decisional law from this Circuit in cases involving police dogs........................................................................27

    b.    Mr. Harrold's rights were clearly established by general constitutional principles from decisional law in this Circuit ....................................................................34

    c.    Mr. Harrold's rights were clearly established by a consensus of persuasive authority from other circuits ......40

    Sixth Circuit .......................................................................41

    Seventh Circuit...................................................................42

    Eighth Circuit .....................................................................43

    Ninth Circuit .......................................................................43

    Tenth Circuit .......................................................................44

    Eleventh Circuit..................................................................44

VII.   CONCLUSION..............................................................................46

VIII.  REQUEST FOR ORAL ARGUMENT .........................................46

CERTIFICATE OF COMPLIANCE ......................................................47

CERTIFICATE OF SERVICE ................................................................48

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abbott v. Sangamon Cty.*,
    705 F.3d 706 (7th Cir. 2013) ..................................................................42

*Adams v. City of Cedar Rapids*,
    74 F.4th 935 (8th Cir. 2023) ...................................................................43

*Adams v. Ferguson*,
    884 F.3d 219 (4th Cir. 2018) ..................................................................12

*Alicea v. Thomas*,
    815 F.3d 283 (7th Cir. 2016) ..................................................................42

*American Chiropractic v. Trigon Healthcare*,
    367 F.3d 212 (4th Cir. 2004) ..................................................................14

*Anderson v. Creighton*,
    483 U.S. 635 (1987)................................................................................25

*Ashcroft v. al–Kidd*,
    563 U.S. 731 (2011)................................................................................25

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................12

*Bailey v. Kennedy*,
    349 F.3d 731 (4th Cir. 2003) ..................................................................33

*Becker v. Elfreich*,
    821 F.3d 920 (7th Cir. 2016) ..................................................................42

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................12

*Bonnell v. Beach*,
    408 F. Supp. 3d 733 (E.D. Va. 2019) .....................................................13

*Booker v. S.C. Dep't of Corr.*,
   855 F.3d 533 (4th Cir. 2017) ...........................................................26, 27, 40

*Bromwell v. Pankoke*,
   Civil Action No. 4:17cv60, 2018 WL 3580767 (E.D. Va. 2018) ................17

*Brooks v. Anderson Police Dept., City of Anderson*,
   975 N.E.2d 395 (Ind. Ct. App. 2012) ...........................................................4

*Bryant v. City of Cayce*,
   332 Fed. Appx. 129 (4th Cir. 2009) ...........................................................13

*Campbell v. City of Springboro, Ohio*,
   700 F.3d 779 (6th Cir. 2012) ......................................................................41

*Cantley v. W. Virginia Reg'l Jail & Corr. Facility Auth.*,
   771 F.3d 201 (4th Cir. 2014) ......................................................................25

*Cooper v. Sheehan*,
   735 F.3d 153 (4th Cir. 2013) ......................................................................37

*Cowles v. Peterson*,
   344 F. Supp. 2d 472 (E.D. Va. 2004) .........................................................37

*Cromartie v. Billings*,
   298 Va. 284 (2020) ......................................................................................38

*Dean v. McKinney*,
   976 F.3d 407 (4th Cir. 2020) ......................................................................27

*Doriety for Estate of Crenshaw v. Sletten*,
   109 F.4th 670 (4th Cir. 2024) ...............................................................14, 15

*E.I. Du Pont De Nemours & Co. v. Kolon Indus., Inc.*,
   683 F. Supp. 2d 401 (E.D. Va. 2009) .........................................................14

*Edwards v. City of Goldsboro*,
   178 F.3d 231 (4th Cir. 1999) ...........................................................12, 24, 26

*Elliott v. Leavitt*,
   99 F.3d 640 (4th Cir. 1996) ...........................................................16, 21, 22

*Estate of Armstrong ex rel. Armstrong v. Vill. of Pinehurst*,
    810 F.3d 892 (4th Cir. 2016) .......................................................36, 37, 39, 40

*Estate of Rodgers ex rel. Rodgers v. Smith*,
    188 Fed. Appx. 175 (4th Cir. 2006) ............................................................31

*Graham v. Connor*,
    490 U.S. 386 (1989)..................................................................................*passim*

*Harlow v. Fitzgerald*,
    457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) ..........................12, 26

*Hope v. Pelzer*,
    536 U.S. 730 (2002)......................................................................................26

*Jean v. Collins*,
    155 F.3d 701 (4th Cir.1998) (*en banc*)........................................................26

*Jones v. Buchanan*,
    325 F.3d 520 (4th Cir. 2003) ........................................................................37

*Keenan v. Ahern*,
    524 F.Supp.3d 472 (E.D. Va. 2021) .........................................31, 32, 34, 35

*Kopf v. Wing*,
    942 F.2d 265 (4th Cir. 1991) .................................................................*passim*

*Krein v. Price*,
    596 Fed. Appx. 184 (4th Cir. 2014) .......................................................20, 21

*Lawhon v. Mayes*,
    Nos. 20-1906, 20-1907 and 20-1908, 2021 WL 5294931
    (4th Cir. Nov. 15, 2021) ................................................................................16

*M.Y.M. by & through Portillo v. Chavis*,
    582 F. Supp. 3d 323 (E.D. Va. 2022).....................................................20, 22

*Maciariello v. Sumner*,
    973 F.2d 295 (4th Cir. 1992) ........................................................................31

*Malley v. Briggs*,
    475 U.S. 335 (1986)....................................................................24

*Mendoza v. Block*,
    27 F.3d 1357 (9th Cir. 1994) .......................................................44

*Meyers v. Baltimore County*,
    713 F.3d 723 (4th Cir. 2013) ...............................................*passim*

*Miller v. Gonzalez*,
    761 F.3d (7th Cir. 2014) ..............................................................42

*Orem v. Rephann*,
    523 F.3d 442 (4th Cir. 2008) .......................................................16

*Owens v. Lott*,
    372 F.3d 267 (4th Cir. 2004) ...................................26, 27, 39, 40

*Park v. Shiflett*,
    250 F.3d 843 (4th Cir. 2001) .......................................................33

*Pearson v. Callahan*,
    555 U.S. 223 (2009).............................................................13, 24

*Penaloza v. City of Rialto*,
    836 F. App'x 547 (9th Cir. 2020) ...............................................43

*Priester v. City of Riviera Beach*,
    208 F.3d 919 (11th Cir. 2000) ....................................................45

*Rainey v. Patton*,
    534 Fed. Appx. 391 (6th Cir. 2013) ...........................................41

*Rockville Cars, LLC v. City of Rockville*,
    891 F.3d 141 (4th Cir. 2018) .......................................................12

*Rowland v. Perry*,
    41 F.3d 167 (4th Cir. 1994) ...................................17, 22, 35, 38

*Saalim v. Walmart, Inc.*,
    97 F.4th 995 (6th Cir. 2024) .......................................................14

*Saucier v. Katz*,
    533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) ........................13, 24

*Scheuer v. Rhodes*,
    416 U.S. 232 (1974)..................................................................................12

*Sims v. Labowitz*,
    885 F.3d 254 (4th Cir. 2018) ........................................................13

*Smith v. Murphy*,
    634 Fed. Appx. 914 (4th Cir. 2015) ............................................22

*Smith v. Ray*,
    781 F.3d 95 (4th Cir. 2015) ..................................15, 20, 22, 35, 38

*Smith v. Ray*,
    855 F. Supp. 2d 569 (E.D. Va. 2012) ..........................................17

*Smith v. Reddy*,
    101 F.3d 351 (4th Cir. 1996) ......................................................12

*Smith v. Town of S. Hill*,
    611 F. Supp. 3d 148 (E.D. Va. 2020) ..........................................36

*Taylor v. United States*,
    495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) ........................17, 18

*Tennessee v. Garner*,
    471 U.S. 1 (1985)......................................................................15

*Thompson v. Commonwealth*,
    878 F.3d 89 (4th Cir. 2017) ........................................................26

*Tobey v. Jones*,
    706 F.3d 379 (4th Cir. 2013) ................................................11, 37

*Tolan v. Cotton*,
    572 U.S. 650, 134 S.Ct. 1861, 188 L.Ed.2d 895 (2014) ..............................13

*United States v. Bryant*,
    237 F. Supp. 3d 379 (W.D. Va. 2017)..........................................17

*Vathekan v. Prince George's Cnty.*,
  154 F.3d 173 (4th Cir. 1998) ................................................................*passim*

*Vette v. Sanders*,
  989 F.3d 1154 (10th Cir. 2021) ................................................................44

*Waterman v. Batton*,
  393 F.3d 471 (4th Cir. 2005) ................................................................24, 36

*Watkins v. City of Oakland*,
  Cal., 145 F.3d 1087 (9th Cir. 1998) ................................................39, 43, 44

*Williamson v. Stirling*,
  912 F.3d 154 (4th Cir. 2018) ................................................................26

*Yates v. Terry*,
  817 F.3d 877 (4th Cir. 2016) ................................................................34, 35, 40

*Ex Parte Young*,
  209 U.S. 123 (1908)................................................................1

**Statutes**

18 U.S.C. § 924(e)(2)(B) ................................................................17

28 U.S.C. § 1291 ................................................................2

28 U.S.C. § 1331 ................................................................2

42 U.S.C. § 1983................................................................1, 2, 3, 12, 24

Armed Career Criminal Act [ACCA] ................................................................17, 18

Va. Code § 18.2–90................................................................18

Va. Code § 18.2-121 ................................................................16

Va. Code § 18.2-137 ................................................................16

Va. Code § 18.2-406(E) ................................................................19

Va. Code § 18.2-460 ................................................................19

Va. Code § 18.2-479.1 ........................................................................19

**Constitutional Amendments**

U.S. Const. amend. IV ...................................................*passim*

**Rules**

Fed. R. Civ. P. 12(b)(6).................................................................9, 11, 14

## APPELLANT'S BRIEF

Richard P. Harrold ("Mr. Harrold" or "Appellant"), by counsel, respectfully submits this brief in support of his appeal from the Final Order (JA64) of the United States District Court for the Eastern District of Virginia – Richmond Division ("District Court") dismissing this case on the basis of qualified immunity in favor of the defendant-appellee, Lewis J. Hagen III ("Officer Hagen" or "Appellee").

## I.    INTRODUCTION

On December 26, 2021, Mr. Harrold was mauled and seriously injured by a police dog ("K-9") handled by Officer Hagen. As a result, Mr. Harrold filed an eight-count Complaint against Officer Hagen. (Compl., JA4.) Count I of the Complaint is a claim for unlawful seizure in violation of the Fourth Amendment to the United States Constitution brought pursuant to 42 U.S.C. § 1983 against Officer Hagen in his individual capacity. (Compl. §§ 82-90, JA16-17.) Count II is an individual capacity claim under § 1983 for excessive force. (*Id*. §§ 91-100, JA17-18.) Count III is an official capacity claim pursuant to § 1983 and *Ex Parte Young*, 209 U.S. 123 (1908). (*Id*. §§ 101-107, JA18-19.) The remaining claims arise under Virginia common law - assault (Count IV), battery (Count V), intentional infliction of emotional distress (Count VI), negligence (Count VII), and gross negligence (Count VIII). (*Id*. §§ 108 *et seq.*, JA19-23.)

On September 27, 2024, the District Court entered a Final Order dismissing Counts I, II, III, and VII with prejudice and dismissing Counts IV, V, VI, and VIII without prejudice.  (Final Order, JA64.)   Plaintiff's Notice of Appeal was filed with respect to the District Court's rulings on Counts I, II, and III.  (Notice of Appeal, JA66.) At this time, Appellant abandons his appeal as to Count III.

With regard to Counts I and II of the Complaint, which are the subject of this appeal, the parties agreed that the two counts could be considered together, and the District Court considered them as a single claim for excessive force under 42 U.S.C. § 1983.  (Memo. Op., at 12, JA51.)   The issue of this appeal is, therefore, whether Officer Hagen was entitled to qualified immunity with regard to Mr. Harrold's excessive force claims (*i.e.,* Count II which subsumes Count I.)  (*See id*.)

## II.  JURISDICTIONAL STATEMENT

The District Court had jurisdiction over Mr. Harrold's federal claims under 28 U.S.C. § 1331.  The District Court's decision dismissing Mr. Harrold's claims was a Final Order.   (JA64.)  The Final Order was entered on September 27, 2024. (*Id*.)  Appellant timely filed a Notice of Appeal of the District Court's Final Order granting Officer Hagen's Motion to Dismiss on October 24, 2024.  (JA66.)   This Court has appellate jurisdiction under 28 U.S.C. § 1291.  This appeal is from a final order that disposed of the claims which are appealed, *i.e.,* Counts I and II of the Complaint.

2

III.  STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

The issue presented for appeal is whether Officer Hagen is entitled to qualified immunity for Mr. Harrold's claims in Counts I and II of the Complaint for excessive force pursuant to 42 U.S.C. § 1983 under the facts presented.

More specifically, the issue is whether, under the facts and circumstances of this case, Mr. Harrold's right to be free from excessive  force by Officer Hagen was clearly established.

IV.  STATEMENT OF THE CASE

This case involves Mr. Harrold's serious injuries inflicted by a police dog ("K-9") that was handled by Officer Hagen during an otherwise routine and uneventful arrest.  (Compl. ¶ 1, JA4.)  Mr. Harrold is an amputee (missing his lower left leg below the knee) who also has serious a medical condition that, if untreated, can cause him to do things that are out of character for him. (*Id.* ¶ 2, JA4.)  Around Christmastime 3 years ago, Mr. Harrold had been sick and without much sleep for days and he was having an episode caused by his medical condition. (*Id.* ¶ 31, JA8.) On the night of December 26, 2021, during an episode, he broke into a used car dealership called VA Cars, located at 7729 Midlothian Turnpike in Chesterfield County, Virginia.  (*Id.* ¶ 23, JA7.)  The police responded to the scene and surrounded the building. (*Id.* ¶¶ 24, 35, JA7, 9.)  At the time, Officer Hagen was employed as a law enforcement officer with the Chesterfield County Police Department ("CCPD")

3

which is a department or agency of the County of Chesterfield, Virginia ("County"). (*Id.* ¶¶ 8-10, JA5-6.) Officer Hagen was a K-9 officer who was responsible for handling police K-9s for law enforcement purposes such as searching for persons and drug detection. (*Id.* ¶ 10, JA5-6.) At the time, Officer Hagen handled a patrol/drug dog named "Kona" (Badge #1599). (*Id.* ¶ 11, JA6.) Kona was a Belgian Malinois which is described as "'an alert, high-energy breed, popular as both a police and military working dog' that is 'sometimes mistaken for the German Shepherd Dog.'" *Brooks v. Anderson Police Dept., City of Anderson,* 975 N.E.2d 395, 398 (Ind. Ct. App. 2012) (citing American Kennel Club). (*Id.*)

The Complaint alleges how Mr. Harrold did not present a threat of injury to any law enforcement officer or anyone else nor was he a flight risk at the time of his arrest. On the night of December 26, 2021, Mr. Harrold was 44 years old. (*Id.* ¶ 18, JA7.) Mr. Harrold was approximately five feet, ten inches tall and weighed 145 pounds. (*Id.* ¶ 19, JA7.) Years ago, Mr. Harrold had his left leg amputated below the knee and he uses a prosthetic lower leg and foot. (*Id.* ¶ 20, JA7.) As a result, he has limitations with his mobility. (*Id.*) On the night in question, Mr. Harrold was unarmed. (*Id.* ¶ 21, JA7.) After Mr. Harrold was bitten and scratched by Officer Hagen's K-9 and needed medical attention, one of the CCPD officers described him as a "tiny human with one leg." (*Id.* ¶ 22, JA7.)

The Complaint details the facts of Mr. Harrold's arrest and the Motion to Dismiss includes a video recording from Officer Hagen's body worn camera ("BWC") (*See* BWC video, JA27.)  On December 26, 2021, after police responded to the car dealership, Mr. Harrold went up a flight of stairs and waited in a storage room. (*Id.* ¶ 29, JA8.)  As the Complaint alleges, Mr. Harrold was scared, confused, and did not know what to do, but he intended to wait in the storage room until he was arrested.  (*Id.* ¶ 30, JA8.)  Mr. Harrold recalls calling out to the police, "I am not a threat" or words to that effect.  (*Id.* ¶ 32, JA8.)  Mr. Harrold thought the officers would find him and arrest him without incident. (*Id.* ¶ 33, JA8.)  Once other police officers secured the perimeter of the building, Officer Hagen entered with Kona, the K-9 police dog, on a leash, and began a search of the building. (*Id.* ¶ 35, JA9.)  It did not take long for Officer Hagen and the K-9 to locate Mr. Harrold in the upstairs storage room.  (*Id.* ¶ 37, JA9.)  The K-9, still on the leash held by Officer Hagen, stood beside Mr. Harrold who was on the floor with his knees under him and head down.  (*Id.* ¶ 37, JA9.)  At this time, since the K-9 had located him, Mr. Harrold fully expected that soon a police officer would ask him to surrender, put his hands in the air or behind his back, or some similar command and he intended to comply and be arrested.  (*Id.* ¶ 40, JA9.)  However, at that time, Officer Hagen did not announce his presence, warn he was about to release the K-9, or give Mr. Harrold any other order.  (*Id.* ¶ 42, JA10.)  Instead, Officer Hagen silently allowed the K-9

to turn around and directly face Mr. Harrold's rear end. (*Id.* ¶ 43, JA10.) Instead of ordering Mr. Harrold to surrender at that time, and without warning that the K-9 was going to be deployed if he did not surrender, Officer Hagen gave a signal to the K-9 to sic Mr. Harrold. (*Id.* ¶ 45, JA10.) K-9 Kona, still on the leash, went into a full blown, violent attack which is shown on the BWC video and described in the Complaint. (*Id.* ¶¶ 46-51, JA10-11 and 27.) Officer Hagen allowed the K-9 to stay latched onto Mr. Harrold until he was in handcuffs. (*Id.* ¶ 48, JA10, 27). Apart from his prior poor attempt to hide, once he encountered Officer Hagen and K-9 Kona, Mr. Harrold made no attempt to flee, and he did not threaten anyone. (*Id.* ¶¶ 58, 72, JA12, 14 and 27.)

The K-9, at the direction of Officer Hagen and on the leash held by Officer Hagen, was allowed to bite and attack Mr. Harrold and cause multiple injuries. (*Id.* ¶¶ 46-51, JA10-11.) At the scene, Mr. Harrold was bleeding profusely from his wounds. (*Id.* ¶ 73, JA14.) He sustained painful and severe, deep dog bites over multiple areas of his body, some of which later became infected. (*Id.* ¶ 74, JA14.) Mr. Harrold's amputation stump was injured, his prosthetic leg was destroyed, and the K-9 bit and scratched at Mr. Harrold's scrotum and anus. (*Id.* ¶ 75, JA14-15.) Mr. Harrold's injuries were so severe that a tourniquet and Israeli bandage were applied at the scene to prevent him from bleeding out on the floor of the car dealership. (*Id.* ¶ 77, JA15.) Due to the severity of his injuries and the extent of his

bleeding, Mr. Harrold was transported from the scene by Chesterfield County Fire & EMS on a stretcher in an ambulance and taken to Chippenham Hospital's emergency department. (*Id.* ¶ 78, JA15.)  After the incident, Mr. Harrold contracted bacterial meningitis.  (*Id.* ¶ 79, JA15.)  Officer Hagen's use of the K9 in this arrest caused Mr. Harrold to sustain serious and permanent bodily injuries, scarring and deformity, and associated pain and suffering and emotional distress.  (*Id.* ¶ 80, JA15.)  Mr. Harrold has incurred considerable medical expenses for his injuries. (*Id.* ¶ 80, JA15-16.)

At the time of the arrest, Officer Hagen had no reason to believe Mr. Harrold was violent or a threat to commit violence. (*Id.* ¶¶ 54-56, JA11-12.)  Mr. Harrold was unarmed, and Officer Hagen had no reason to believe otherwise.  (*Id.* ¶ 54, JA11.)  A Sergeant with the CCPD testified under oath at the preliminary hearing that he observed Mr. Harrold in the building before the encounter with the K-9 and Mr. Harrold was unarmed and there was no reason to think he was armed. (*Id.* ¶ 55, JA11-12.)  Mr. Harrold had no history of committing violent crimes. (*Id.* ¶ 56, JA12.)

As Mr. Harrold lay the floor just before the K9 attacked, he posed no threat to the safety of Officer Hagen, the K-9, any other officer, or any other person.[1]  (*Id.* ¶ 57, JA12.)   As alleged in the Complaint and as shown on the BWC video,

---

[1] There was no one else present except Mr. Harrold, the officers, and the K-9. (*Id.* ¶ 57, JA12.).

Mr. Harrold did not attempt to flee or resist arrest and, with the building and storage room surrounded, he would not have been able to escape.  (*Id.* ¶ 58, JA12, 27.)  Mr. Harrold was not suspected, accused, nor charged with any crime against any person (as opposed to property) or an offense that involves a threat of injury or violence against another person.  (*Id.* ¶ 27, JA8.)  The resulting criminal charges concluded on September 16, 2022 with Mr. Harrold pleading guilty to two misdemeanors, trespassing and vandalism.  All other charges were dismissed upon the Commonwealth's motion to *nolle prosequi.*  (*Id.* ¶ 26, JA8.)

In this case, Officer Hagen has taken the position that it was proper to use a particularly violent method of arresting a submissive suspect who was neither a threat nor a flight risk.  Officer Hagen snuck up on Mr. Harrold who was lying face down on the floor and quietly sicced a high-energy and aggressive K-9 police dog on him, an action that unsurprisingly caused severe, life-threatening injuries.  Officer Hagen's use of the K-9 as a weapon in the arrest could have led to Mr. Harrold bleeding out on the floor and dying if not for the Israeli tourniquet and emergency transport to the hospital.  As alleged in the Complaint, Mr. Harrold maintains that, under the circumstances, Officer Hagen's seizure and use of force with a violent attack by the K-9 police dog was objectively unreasonable and excessive and, therefore, in violation of Mr. Harrold's clearly established rights under the Fourth Amendment.

8

Mr. Harrold filed his Complaint on December 20, 2023. (JA4.) In response, Officer Hagen filed a Motion to Dismiss under Rule 12(b)(6). (JA25.) The Court granted the Motion to Dismiss and entered a Final Order on September 27, 2024, finding that Mr. Harrold's rights were not clearly established, and Officer Hagen was entitled to qualified immunity. (JA64.) Mr. Harrold filed a timely Notice of Appeal on October 24, 2024. (JA66.)

## V.    SUMMARY OF THE ARGUMENT

Officer Hagen's actions violated Mr. Harrold's clearly established rights under the Fourth Amendment to be free from unreasonable seizures and excessive force in connection with a seizure. During his encounter with Officer Hagen and his K-9 police dog, Mr. Harrold was unarmed and submissive and he was never a threat to cause injury to anyone. Nevertheless, Officer Hagen chose excessive force as a method of arrest by directing K-9 Kona to attack and seize Mr. Harrold, resulting in severe and painful dog bites and scratches over multiple areas of his body, including his amputation stump, scrotum, and anus.

In deciding qualified immunity, the District Court erred in focusing almost exclusively on cases involving an officer's duty to warn before releasing a K-9 police dog. The question of whether, after giving a warning, Officer Hagen could release the K-9 and allow the dog to freely search for Mr. Harrold and bite him to detain him for an arrest is not the appropriate inquiry because that is not what Officer Hagen

did.  Instead, Officer Hagen kept the K-9 on a leash and used the dog and its nose to locate Mr. Harrold.  Officer Hagen found Mr. Harrold in a situation in which there was no need for any significant force whatsoever because there was no immediate threat to the police or anyone else and there was no risk of Mr. Harrold escaping. *See discussion, supra*.  However, Officer Hagen did not even attempt a peaceful arrest.  Rather, after finding Mr. Harrold, without announcing his presence or giving any further warning or opportunity to surrender, he ordered the K-9 to bite Mr. Harrold, and a very violent attack ensued.

The fundamental question presented on the issue of qualified immunity is whether it was clearly established that Officer Hagen, who faced no immediate threat, could order his leashed K-9 to bite Mr. Harrold, a suspect who presented no risk of fleeing.  Obviously, Officer Hagen had less violent means of arresting Mr. Harrold.  For example, after cornering and trapping Mr. Harrold in the storage room surrounded by other officers, Officer Hagen could have ordered Mr. Harrold to put his hands behind his back.  In all likelihood, a peaceful arrest would have followed because, after all, Mr. Harrold was outnumbered and surrounded by police (including a K-9), unarmed, and limited in mobility due to his amputated leg. Instead, as alleged in the Complaint, at that time, Officer Hagen did not even alert Mr. Harrold to his presence, gave no further command to Mr. Harrold, and ordered his K-9 to attack Mr. Harrold from the rear.  Even if Mr. Harrold, balled up on the

10

floor in an instinctual, fetal-like position, was perceived as resisting, Officer Hagen's use of force was excessive and it was clearly established as much. Perceiving Mr. Harrold as a risk of causing harm or fleeing was objectively unreasonable as was Officer Hagen's use of the K-9 in arresting Mr. Harrold in the first place.

Officer Hagen's actions violate clearly established principles concerning the use of police dogs and, more generally, the fundamental principle that a law enforcement officer may only use significant force when the circumstances require it, such as when there is an immediate threat posed by the suspect or when a suspect is actively fleeing. *See discussion infra.* None of these circumstances were present and, therefore, Officer Hagen's use of force was excessive under clearly established law.

## VI.   ARGUMENT

### A.   STANDARD OF REVIEW

The case below was decided on the basis of a Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) addresses only whether a claim is stated, and "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013). In a evaluating a Rule 12(b)(6) motion, the court "must accept the factual allegations of the complaint as true and construe them in the light most favorable to the nonmoving party. To survive a 12(b)(6) motion, the 'complaint must

contain sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face.'" A claim is 'plausible on its face,' if a plaintiff can demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141, 145 (4th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court considering a Rule 12(b)(6) motion must "draw all reasonable factual inferences" from the facts alleged in the complaint in the plaintiff's favor. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly,* 550 U.S. at 556 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).

The District Court dismissed Counts I and II by holding that Officer Hagen was entitled to qualified immunity. (Memo. Op., at 12, JA51.) This Court reviews "qualified immunity determinations de novo." *Adams v. Ferguson*, 884 F.3d 219, 226 (4th Cir. 2018).

In this district, the legal framework for analyzing a qualified immunity defense is "well-settled" and it is summarized as follows:

> "Law enforcement officers are entitled to qualified immunity from § 1983 liability arising from their official discretionary acts that do not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Smith v. Reddy*, 101 F.3d 351, 355 (4th Cir. 1996) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982)) (internal quotation marks

omitted). When "resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry. The first asks whether the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a federal right." *Tolan v. Cotton*, 572 U.S. 650, 655-56, 134 S. Ct. 1861, 188 L.Ed.2d 895 (2014) (*quoting Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L.Ed.2d 272 (2001)) (internal quotation marks and alterations omitted). The second asks "whether the right in question was 'clearly established' at the time of the violation ... Courts have discretion to decide the order in which to engage these two prongs." *Id.* at 656, 134 S. Ct. 1861. However, "under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment" because, as in any summary judgment motion, courts must interpret the facts in the light most favorable to the opposing party. *Id.* at 656-57, 134 S. Ct. 1861.

*Bonnell v. Beach*, 408 F. Supp. 3d 733, 758–59 (E.D. Va. 2019). A court may consider either prong of the qualified immunity analysis first. *Sims v. Labowitz*, 885 F.3d 254, 260 (4th Cir. 2018). *See Meyers v. Baltimore County*, 713 F.3d 723, 731 (4th Cir. 2013) (explaining that the analysis in *Saucier v. Katz*, 533 U.S. 194 (2001), was later refined in *Pearson v. Callahan*, 555 U.S. 223 (2009), to allow courts to consider the two prongs in either order).

The plaintiff has the burden of proof under the first prong and the defendant bears the burden on the second prong. *Bryant v. City of Cayce*, 332 Fed. Appx. 129, 132 (4th Cir. 2009) ("When government officials properly assert the defense of qualified immunity, they are entitled to summary judgment if either (1) the facts the plaintiff has alleged or shown do not make out a violation of a constitutional right—a question on which the plaintiff bears the burden of proof; or (2) the right at issue

13

was not 'clearly established' at the time of the defendant's alleged misconduct—a question on which the defendant bears the burden of proof.").

"Ordinarily, courts considering a motion under Rule 12(b)(6) need consider only the pleadings themselves, without evaluating extrinsic evidence." *E.I. Du Pont De Nemours & Co. v. Kolon Indus., Inc.*, 683 F. Supp. 2d 401, 419 (E.D. Va. 2009). However, when a plaintiff relies on an item outside the pleadings to substantiate its claim, the court may consider it. *American Chiropractic v. Trigon Healthcare,* 367 F.3d 212, 234 (4th Cir. 2004). Also, a video can be considered at the motion to dismiss stage "when (1) the video is 'integral' to the complaint and its authenticity is not challenged, but (2) only to the extent that the video 'clearly depicts a set of facts contrary to those alleged in the complaint,' or 'blatantly contradicts' the plaintiff's allegations, rendering the plaintiff's allegations implausible." *Doriety for Estate of Crenshaw v. Sletten*, 109 F.4th 670, 679–80 (4th Cir. 2024) citing *Saalim v. Walmart, Inc.,* 97 F.4th 995, 1002 (6th Cir. 2024). In considering a motion to dismiss, a court "must credit the plaintiff's version of the facts to the extent they are not 'blatantly contradicted' by the recording." *Sletten*, 109 F.4th at 680 (citations omitted). In this case, the District Court considered the BWC video that Officer Hagen submitted with his Motion to Dismiss. (Memo. Op., at 9, JA48.)[2]

---

[2] The District Court was "loath to consider Officer Hagen's body worn camera footage at all at [the] nascent stage – before discovery has begun and before Mr. Harrold has been given a chance to issue discovery requests and proffer evidence in

**B.  Officer Hagen's actions were objectively unreasonable, and his excessive force violated Mr. Harrold's Fourth Amendment rights.**

Claims that a law enforcement officer used excessive force in effectuating a seizure are analyzed under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386 (1989).  The Fourth Amendment prohibition against unreasonable seizures bars the use of excessive force on free citizens, whether it be "in the course of an arrest, investigatory stop, or other 'seizure.'" *Id.* at 395.  Incidents involving "attacks by police dogs improperly deployed by their handlers" are analyzed under the Fourth Amendment's reasonableness standards. *Vathekan v. Prince George's Cnty.*, 154 F.3d 173, 178 (4th Cir. 1998).

In applying the Fourth Amendment test of reasonableness, a court considers the facts and circumstances of the particular case, and the issue is, "ultimately, ... 'whether the totality of the circumstances justifie[s] a particular sort of ... seizure'." *Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2015) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)).  In doing so, courts consider the following factors: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.  In the Fourth Circuit, courts should also

---

support of his side of the story." (Memo. Op., at 17,  fn 11, JA55.)  However, the Court considered the video pursuant to the *Doriety* decision.  (*Id.*)

consider the severity of the injury that a plaintiff suffered. *See Lawhon v. Mayes*, Nos. 20-1906, 20-1907 and 20-1908, 2021 WL 5294931 (4th Cir. Nov. 15, 2021). Applying the *Graham* factors to this case demonstrates that the force used by Officer Hagen was excessive and violated Mr. Harrold's clearly established constitutional rights.[3]

### 1.    The severity of the crime at issue (first *Graham* factor).

The Fourth Circuit holds that "*Graham* requires us to focus on the moment force was used; conduct prior to that moment is not relevant in determining whether an officer used reasonable force." *Elliott v. Leavitt*, 99 F.3d 640, 643 (4th Cir. 1996). At the time the K-9 police dog was deployed, Mr. Harrold could only be reasonably suspected of misdemeanor destruction of property under Va. Code § 18.2-137 and entering property for purposes of damaging it under Va. Code § 18.2-121, also a

---

[3] In addition to violating clearly established law, Officer Hagen's actions violated the CCPD's own policy which "acknowledges that use of a K-9 to make physical contact with a suspect is a significant use of force and one that shall be done only in relatively serious situations and where lesser means of force are not available or reasonably practical." (Compl. ¶ 63, JA13.) Officer Hagen's interaction with Mr. Harrold was <u>not</u> such a situation. Officer Hagen also failed to give multiple warnings when necessary and to verify Mr. Harrold's noncompliance before deploying the K-9 in violation of county policy. (*Id.* ¶ 64, JA13.) Overall, Officer Hagen's use of the K-9 to bite Mr. Harrold was not for any legitimate purpose because there were nonviolent options of making the arrest. *See Orem v. Rephann*, 523 F.3d 442, 448–49 (4th Cir. 2008) (discussing that "the taser gun was not used for a legitimate purpose; such as protecting the officers, protecting Orem, or preventing Orem's escape.")

16

misdemeanor. Therefore, the first *Graham* factor does not support a significant use of force. *Bromwell v. Pankoke*, Civil Action No. 4:17cv60, 2018 WL 3580767, at *5 (E.D. Va. 2018) ("All of the crimes Bromwell was suspected of having committed were misdemeanors, and none involved any allegation of injury or violence to any person. As a result, the first factor does not support a significant use of force.") citing *Smith v. Ray*, 855 F. Supp. 2d 569, 579 (E.D. Va. 2012) (denying qualified immunity for conduct during arrest of suspect believed to be contributing to the delinquency of a minor) and *Rowland v. Perry*, 41 F.3d 167, 171 (4th Cir. 1994) (affirming denial of qualified immunity for officer's arrest of suspect over a lost five dollar bill).

The District Court erred in finding that burglary was a violent crime such that the first *Graham* factor weighed in favor of Officer Hagen. (Memo. Op., at 18, JA57.) The District Court relied on the federal Armed Career Criminal Act ("ACCA") which defines "violent felony" as including "burglary, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious risk of physical injury to another[.]" (*Id*., citing 18 U.S.C. § 924(e)(2)B)(ii).) However, this interpretation of the ACCA has been rejected in this Circuit. "Virginia statutory burglary—now and since *Taylor v. United States*, 495 U.S. 575, 110 S. Ct. 2143, 109 L.Ed.2d 607 (1990), was decided—does not qualify as one of the enumerated offenses in Subsection (ii) of § 924(e)(2)(B)[.]" *United States v. Bryant*, 237 F. Supp. 3d 379, 384, 396–97 (W.D. Va. 2017)

("Accordingly, Virginia Code § 18.2–90, taken as a whole, has never qualified as a violent felony under the enumerated clause, as it does not square with generic burglary.").  Moreover, as discussed above, Mr. Harrold's conduct did not present a serious risk of physical injury to anyone else because, among other things, he was unarmed and the car dealership was closed and not occupied when he broke into it. The U.S. Supreme Court has indicated that not all burglaries are considered violent felonies.  *Taylor v. United States*, 495 U.S. 575, 594 (1990) (concerning the application of the ACCA to burglary, the Court noted "even assuming that Congress intended to restrict the predicate offense to some especially dangerous subclass of burglaries, restricting it to common law burglary would not be a rational way of doing so. The common-law definition does not require that the offender be armed or that the dwelling be occupied at the time of the crime.  An armed burglary of an occupied commercial building, in the daytime, would seem to pose a far greater risk of harm to persons than an unarmed nocturnal breaking and entering of an unoccupied house. It seems unlikely that Congress would have considered the latter, but not the former, to be a 'violent felony' counting towards a sentence enhancement.")

Mr. Harrold was not involved in a violent crime that involved the requisite severity for this factor to weigh against him.[4]  As such, the first *Graham* factor weighs in favor of Mr. Harrold and the District Court erred in finding otherwise.

### 2.    Mr. Harrold did not pose an immediate threat to the safety of Officer Hagen or others (second *Graham* factor).

The District Court appropriately found that *Graham* factor two "weighs slightly in Mr. Harrold's favor." (Memo. Op., at 18, JA57.)  This finding is supported by the record including the fact that Mr. Harrold was found in an upstairs storage room, on the floor with his knees under him and head down in a "submissive, fetal-like position." As discussed above, Mr. Harrold was unarmed, Officer Hagen had no reason to believe otherwise, and Mr. Harrold had no history of committing violent crimes.  (Compl. ¶¶ 53-56, JA11-12.)  For this second factor, consideration

---

[4] Below, Officer Hagen also argued that Mr. Harrold was "obstructing justice and fleeing from law enforcement in violation of Va. Code §§ 18.2-460 and 18.2-479.1." (Def's Br. in Sup., at 16, ECF Doc. 6.) Virginia Code § 18.2-479.1 was repealed in 2018, Va. Acts 2018, c. 417, and Mr. Harrold did not flee under circumstances that would constitute obstruction under Virginia Code § 18.2-460 because he did not flee after an officer applied physical force or told him he was under arrest, and, in any event, obstruction of justice would also be a non-violent misdemeanor.  Va. Code § 18.2-406(E) ("Any person who intentionally prevents or attempts to prevent a law-enforcement officer from lawfully arresting him, with or without a warrant, is guilty of a Class 1 misdemeanor. For purposes of this subsection, intentionally preventing or attempting to prevent a lawful arrest means fleeing from a law-enforcement officer when (i) the officer applies physical force to the person, or (ii) the officer communicates to the person that he is under arrest and (a) the officer has the legal authority and the immediate physical ability to place the person under arrest, and (b) a reasonable person who receives such communication knows or should know that he is not free to leave.").

19

should be given to the fact that Mr. Harrold was a 44-year old amputee with mobility limitations and he was a slender man at 5' 10" weighing 145 pounds. (*Id.* ¶¶ 2, 4, 5, 19, JA5-7.)  *See M.Y.M. by & through Portillo v. Chavis,* 582 F. Supp. 3d 323, 335 (E.D. Va. 2022) (discussing that "Fourth Circuit case law makes clear that a reasonable officer could and ought to take into account the 6–7-inch difference in height and the 70-pound difference in weight….").  One of the responding officers noted that Mr. Harrold was a "tiny human with one leg" and he was cornered in a room, on the floor, with the only exit blocked by Officer Hagen in a building surrounded by law enforcement officers. (*Compl.* ¶¶ 22, 58, JA7, 12.)  Mr. Harrold was unarmed but, in any event, a belief that a suspect is armed, without more, is insufficient to justify the use of significant force.  *M.Y.M.*, 582 F. Supp. 3d at 336 ("Fourth Circuit case law is clear that an officer cannot justify the use of force with the fear that a suspect may be armed where the officer can cite to no reason for thinking the detainee to be armed.")[5]

Furthermore, a prior threat of harm does not justify a significant use of force once that harm is no longer present.  For example, in *Krein v. Price*, the Fourth

---

[5] The *M.Y.M.* case cites *Smith v. Ray*, a case in which officers did not know a suspect had a knife until after the interaction was over and so it could not justify the officer's use of force.  *Smith*, 781 F.3d at 104-5 (4th Cir. 2015).  Similarly, the Complaint alleges Mr. Harrold was unarmed but he had small utility knife in his pocket that he never reached for, and it was not discovered until he was in custody.  (Compl. ¶ 21, JA7.).

Circuit found that an officer was justified in shooting at a suspect while the suspect was driving a vehicle in the direction of officers but shooting at the vehicle after it had passed them was excessive force. *Krein v. Price*, 596 Fed. Appx. 184, 189 (4th Cir. 2014) ("But even allowing Price some leeway to account for the tense, hurried nature of the incident cannot change the fact that the record contains numerous indications that a reasonable officer would have realized that deadly force was not necessary to protect himself or others when he was no longer in the direction of Krein's vehicle.")

For these reasons, the second *Graham* factor was appropriately resolved in favor of Mr. Harrold because he could not objectively be viewed as an immediate threat to the safety of Officer Hagen or anyone else at the moment the K-9 was ordered to attack.

> **3.    Mr. Harrold was not actively resisting arrest or attempting to evade arrest by flight at the relevant time (third *Graham* factor).**

The District Court also found that the third *Graham* factor "weighs slightly in Mr. Harrold's favor." (Memo. Op., at 19, JA58.) Whether or not Mr. Harrold initially attempted to flee or conceal himself is irrelevant because only his actions at the time of the arrest should be considered, and, at that time, he was lying on the floor. *Elliott*, 99 F.3d at 643 ("*Graham* requires us to focus on the moment force was used; conduct prior to that moment is not relevant in determining whether an

officer used reasonable force."). The District Court noted that "Mr. Harrold was at most passively resisting by lying prone on the floor." (*Id.*) Since Officer Hagen did not give him an order or tell Mr. Harrold that he was under arrest at that time, it is unclear how Mr. Harrold could be found to be resisting arrest after Officer Hagen found him. Similarly, Mr. Harrold was not resisting after the K-9 was latched onto him. The Fourth Circuit recognizes that "a jury could find it objectively unreasonable to require someone to put his hands up and calmly surrender while a police dog bites his scrotum." *Kopf v. Wing*, 942 F.2d 265, 268 (4th Cir. 1991).

As the District Court found, Mr. Harrold was not "*actively* resisting arrest" at the moment Officer Hagen gave his K-9 the command to seize and bite Mr. Harrold.[6] (Memo. Op., at 20, JA59.) In light of the fact that Mr. Harrold was unarmed, not actively fleeing, cornered, and surrounded by law enforcement, this was not a situation where Officer Hagen was "forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397 (internal

---

[6] "Fourth Circuit case law clearly establishes that reflexive, or 'automatic,' resistance is not uncommon, should be anticipated by police officers, and does not justify the use of substantial force in response absent some additional reason to believe that force is necessary." *M.Y.M.*, 582 F. Supp. 3d at 339 (citing *Smith v. Murphy*, 634 Fed. Appx. 914 (4th Cir. 2015) ("As for the third Graham factor, resistance from Smith could be characterized as instinctive, and we have twice concluded that such reactions do not constitute active resistance.") (citing *Smith v. Ray*, 781 F.3d 95 (4th Cir. 2015) and *Rowland v. Perry*, 41 F.3d 167 (4th Cir. 1994))).

citations omitted). Instead, with Mr. Harrold trapped in a storage room, and especially with the K-9 on a leash, Officer Hagen could have attempted a non-violent arrest that did not involve the K-9 at all. Officer Hagen had choices, and he chose violence – one of the most forceful methods of arrest he had at his disposal. Officer Hagen's use of force was unreasonable and excessive under the third *Graham* factor and the District Court appropriately resolved this factor in Mr. Harrold's favor.

### 4.  The severity of Mr. Harrold's injuries (additional factor).

Mr. Harrold suffered immediate and severe bodily injuries. At the scene, he was bleeding profusely from deep dog bites over multiple areas of his body, his prosthetic leg was destroyed, a piece of the prosthetic's rubber sleeve was embedded in one of his wounds, and he had flesh wounds to his scrotum and anus areas. (Compl. ¶¶ 73-79, JA14-15.) The District Court found that "Mr. Harrold's injuries from Kona's prolonged attack were undeniably severe." (Memo. Op., at 20, JA59.) Officer Hagen did not dispute Mr. Harrold's injuries as alleged. (*See* Def. Memo. in Sup., at 15, fn. 2, ECF Doc. No. 6.) For purposes of the *Graham* analysis, the extent and severity of Mr. Harrold's injuries weighs in favor of a finding that the force used by Officer Hagen was excessive.

The District Court found "it is plausible that Officer Hagen's use of force was objectively unreasonable for failing to issue a final warning before deploying Kona."

(Memo. Op., at 20, JA59.)  The next question is whether Officer Hagen is shielded from Section 1983 liability based on qualified immunity.

### C. Mr. Harrold's clearly established rights were violated, and Officer Hagen is not entitled to qualified immunity.

As discussed above, to determine if qualified immunity applies, a court must resolve a two-pronged inquiry (in any order): one, whether an officer's conduct violated a federal right and, two, was the right clearly established.  *Saucier v. Katz*, 533 U.S. 194 (2001); *Pearson v. Callahan*, 555 U.S. 223 (2009). "The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Pearson*, 555 U.S. at 244.  But qualified immunity does not protect "the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Waterman v. Batton*, 393 F.3d 471, 476 (4th Cir. 2005).

### 1. Defendant's conduct violated Mr. Harrold's constitutional rights. (First prong under *Saucier/Pearson*.)

In the first prong of the analysis, the court must "identify the specific right that the plaintiff asserts was infringed by the challenged conduct at a high level of particularity." *Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999).  The Fourth Amendment protects citizens against excessive force at the hands of law enforcement officers and "[a]n attack by an unreasonably deployed police dog in the course of a seizure is a Fourth Amendment excessive force violation." *Vathekan v.*

*Prince George's Cnty.*, 154 F.3d 173, 178 (4th Cir. 1998), *see also Kopf v. Wing*, 942 F.2d 265, 268 (4th Cir. 1991). When Officer Hagen ordered the K-9 police dog to bite and detain Mr. Harrold, it was a seizure under the Fourth Amendment. Mr. Harrold has identified a specific right against excessive force under Fourth Amendment and, for the reasons stated above, he has set forth in the Complaint how his rights were violated by Officer Hagen. *See Vathekan*, 154 F.3d at 178-79.

### 2.  Mr. Harrold's Fourth Amendment right was clearly established at all relevant times. (Second prong under *Saucier/Pearson*.)

The United States Supreme Court explains the "clearly established" requirement as follows:

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (internal citations omitted). The law is clearly established if "'the contours of a right are sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al–Kidd*, 563 U.S. 731 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *see also Cantley v. W. Virginia Reg'l Jail & Corr. Facility Auth.*, 771 F.3d 201, 205 (4th Cir. 2014). The Fourth Circuit holds that "the nonexistence of a case holding the defendant's identical conduct to be unlawful does

25

not prevent the denial of qualified immunity." *Edwards*, 178 F.3d at 251 citing *Jean v. Collins*, 155 F.3d 701, 708 (4th Cir.1998) (*en banc*); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

To determine if a right is clearly established, courts start by surveying cases from the U.S. Supreme Court, the Court of Appeals, and the highest court of the state in which the action arose. However, those cases may not end the inquiry into whether the right is clearly established. Public officials "can still be on notice that their conduct violates established law even in novel factual circumstances, so long as the law provided fair warning that their conduct was wrongful." *Williamson v. Stirling*, 912 F.3d 154, 187 (4th Cir. 2018) (internal quotation marks omitted). "In the absence of 'directly on-point, binding authority,' courts may also consider whether 'the right was clearly established based on general constitutional principles or a consensus of persuasive authority.'" *Thompson v. Commonwealth*, 878 F.3d 89, 98 (4th Cir. 2017) (quoting *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 543 (4th Cir. 2017)). Therefore, a "right may be clearly established if 'a general constitutional rule already identified in the decisional law [] appl[ies] with obvious clarity to the specific conduct in question.'" *Booker*, 855 F.3d at 543 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). Or, a right may be clearly established by a "'consensus of cases of persuasive authority' from other jurisdictions." *Id*. (quoting *Owens v. Lott*, 372 F.3d 267, 280 (4th Cir. 2004)). A right is clearly established if:

(1) "a general constitutional rule already identified in the decisional law applies with obvious clarity," *Booker*, 855 F.3d at 543; (2) the right is "manifestly apparent from broader applications of the constitutional premise in question," *Owens v. Lott*, 372 F.3d 267, 279 (4th Cir. 2004); and (3) the right is "manifestly included within more general applications of the core constitutional principles invoked," *Dean v. McKinney*, 976 F.3d 407, 419 (4th Cir. 2020).[7]   A right is clearly established when it is "manifestly apparent" based on general constitutional principles that apply to the conduct in question. *Booker*, 855 F.3d at 544.

> **a.      Mr. Harrold's rights were clearly established by decisional law from this Circuit in cases involving police dogs.**

Several of Mr. Harrold's constitutional rights concerning K-9 police dogs were clearly established at the relevant time.   In December 2021, in the Fourth Circuit, it was clearly established that "the improper deployment of a police dog that mauls the target constitutes excessive force in violation of the Fourth Amendment." *Vathekan*, 154 F.3d at 179 citing *Kopf*, 942 F.2d at 268.

---

[7] In *Dean v. McKinney*, this Court affirmed a denial of qualified immunity, finding "core constitutional principles set forth in numerous cases" clearly established the plaintiff's substantive due process right. 976 F.3d 407, 418 (4th Cir. 2020).   Even though the courts had yet to "consider a case where an officer engaged in the same conduct as [the defendant], he [was] not absolved of liability solely because the court has not adjudicated the exact circumstances of his case." *Id*.

Furthermore, the Fourth Circuit has held "[i]t was clearly established in 1995 that it is objectively unreasonable for a police officer to fail to give a verbal warning before releasing a police dog to seize someone." *Vathekan*, 154 F.3d at 175. A K-9 warning is a loud verbal announcement prior to the release of a dog which allows "innocent persons to exit the area and afford[s] suspects an opportunity to surrender." *Id.,* at 176. The Complaint alleges, after locating Mr. Harrold in the upstairs storage room, Officer Hagen "did not give any warning *at that time* that he was going to release the K-9 if Mr. Harrold did not comply with whatever order Defendant may have wanted to give." Compl. ¶ 42 (emphasis added), JA10.) The BWC video confirms the accuracy of this allegation. (JA27.)

Equally important as the issue of whether an appropriate warning was given is the question of whether the warning was heard. In this case, the record contains no evidence that Mr. Harrold heard any warning that he would be bitten by the K-9 if he did not come out and surrender. Because this issue is unresolved, the District Court's dismissal of the case was improper. *See Vathekan,* 154 F.3d at 18 (quoting *Kopf,* 942 F.2d at 266 ("where the fact that civilian witnesses 'heard no such warning' was enough for the plaintiffs to survive summary judgment on the issue of whether a warning was given."). As the District Court found, "it is plausible that Officer Hagen's use of force was objectively unreasonable for failing to issue a final warning before deploying Kona." (Memo. Op., at 20, JA59.).

28

In *Vatheka*, this Court reversed summary judgment granting on qualified immunity based on the facts involving the sufficiency of a K-9 officer's warning in investigating a suspected home invasion. In that case, a Lieutenant and commander of the agency's special operations division stated that "canine officers are trained to give a second warning when a dog alerts to a person's presence behind an interior door" and the plaintiff's expert testified that the K-9 officer "violated generally accepted police standards, practices and policies by failing to give a warning after [the dog] alerted on the door" and said "[s]tandard police procedure would have been to give a warning at that point in order [to] allow any such person an opportunity to surrender prior to being bitten by the dog." *Vathekan*, 154 F.3d at 176.

In *Kopf*, police were responding to an armed robbery of a pizza shop and the perpetrators had fled the scene in a vehicle and later on foot. *Kopf*, 942 F.2d at 266. Eventually officers, including an officer with a K-9, located the two other suspects in an "extremely narrow passage between the shed's wall and a fence." *Id*. The dog was released from its leash and it "ran to the rear of the shed" where the suspects were located and it started biting the suspects. *Id*. At trial, "well-credentialed experts on the use of canine units" testified "that use of the dog when the suspects were surrounded was unreasonable, announcements notwithstanding," "release of a dog without allowing time for the suspects to give up, especially where the suspects were cornered and escape impossible, was unreasonable", "[t]he primary purpose of

a police dog… is to locate suspects, not to bite them", and "the release of Iron [the K-9] was 'contrary to any legitimate purpose for the use of the dog.'" *Id.* at 268.  On appeal, this Court held that a reasonable jury could find excessive force under the facts presented.  *Id.*

In this case, the District Court erred in focusing exclusively on the question of whether a pre-deployment warning about the K-9 was given by Officer Hagen, especially since this is not a case in which the K-9 officer let the dog run free.  The District Court should have also considered whether the K-9 was otherwise improperly deployed  notwithstanding a prior warning and whether the overall use of force by Officer Hagen was unreasonably excessive, without restricting the Court's view to only cases involving police K-9s.  In this case, Mr. Harrold alleges that he was not aware of Officer Hagen's presence and, after locating Mr. Harrold, there was no warning by Officer Hagen that he was about to deploy the K-9.  (Compl. ¶¶ 42-44.)  The BWC video includes a series of warnings, (Memo. Op., at 4, JA43), but this should not have been the end the analysis.  After consideration of the BWC video, the District Court was particularly troubled by the severity of Mr. Harrold's injuries, the prolonged nature of the K-9 bite "and Officer Hagen's failure to issue an additional verbal warning upon locating Mr. Harrold while he lay passively on the ground.  (Memo. Op., at 16, JA55.)  Officer Hagen's use of force was excessive but the District Court apparently found that prior warning(s)

made Officer Hagen immune for everything that happened after the warnings.  This was error.

In *Estate of Rodgers ex rel. Rodgers v. Smith*, 188 Fed. Appx. 175, 178 (4th Cir. 2006) (unpublished), the Fourth Circuit declined to hold that "deploying a police dog without a verbal warning is always objectively unreasonable" but rather found "*Kopf* and *Vathekan* stand at most for the principle that the Fourth Amendment is violated when an officer *who faces no immediate threat* deploys a police dog without prior warning." *Id.* at 180, 182 (emphasis in original).  But giving a verbal warning does not give an officer carte blanche to deploy a K-9 police dog when the circumstances make it unreasonable, for example, against an unarmed suspect who is not a threat of causing injury or a flight risk. Rather, the law is clear that "deploying a police dog against a motionless, unresponsive, and outnumbered individual, who, in his physical state, has given police virtually no cause to suspect that he poses a risk of injury to others or will attempt to flee, cannot seriously be characterized as a permissive 'bad guess [ ] in [a] gray area[.]'" *Keenan v. Ahern*, 524 F.Supp.3d 472, 483 (E.D. Va. 2021) quoting *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).  Deployment of a K-9 police dog can be unreasonable and excessive force even when a pre-deployment warning is given.  In *Keenan*, the district court explained as follows:

> While *Vathekan* and *Kopf* involved situations in which the officers'
> failure to issue a warning before deploying a police dog rendered such

31

deployment unreasonable under the Fourth Amendment, the Court does not read those cases as establishing the sole manner of conduct that constitutes improper deployment. That is to say, "improper" deployment of a police dog amounting to a violation of clearly established law is not limited to those situations in which a police officer fails to provide a forewarning. Indeed, one could easily imagine other scenarios in which, notwithstanding a prior warning, the deployment of a police dog would be entirely unreasonable and without question a violation of clearly established law as a reasonable officer would plainly know that such conduct is unlawful—even in "the absence of a judicial decision [so] holding,"

*Keenan,* 524 F. Supp. 3d at 482 quoting *Meyers v. Baltimore Cnty., Md*., 713 F.3d 723, 734 (4th Cir. 2013).  Even with Officer Hagen's apparent warnings, the deployment and use of K-9 Kona was improper and objectively unreasonable under the circumstances existing at the time of Mr. Harrold's arrest.

In *Meyers*, this Court found that a suspect's right to be free of excessive force was clearly established where the suspect was tased seven times by an officer after he was already unarmed and "effectively . . . secured with several officers sitting on his back." *Meyers*, 713 F.3d at 735.  There, the suspect was initially tased three times when he was not yet secured and armed with a baseball bat, and this Court found that the initial three uses of the taser were constitutionally permissible since the suspect was unsecured, actively resisting, and armed with a baseball bat, thus constituted an "immediate threat." *Id.* at 733.  However, this Court found the seven additional uses of the taser after the suspect was unarmed with several officers sitting on his back was a violation of his "clearly established" constitutional right to be free

from excessive force. *Id.* at 735.  This Court came to this conclusion despite the "absence of a judicial decision holding that it is unlawful to use a taser repeatedly and unnecessarily under similar circumstances." *Id.* at 734.  This Court noted that it had "repeatedly held that it is not required that a right violated have been recognized by a court in a specific context before such right may be held 'clearly established' for the purposes of qualified immunity." *Id.* Also, the Court noted that it had stated in "forthright terms that 'officers using unnecessary, gratuitous, and disproportionate force to seize a secured, unarmed citizen, do not act in an objectively reasonable manner and, thus, are not entitled to qualified immunity.'" *Id.* (quoting *Bailey v. Kennedy*, 349 F.3d 731, 744-45 (4th Cir. 2003)). The fact that the weapon at issue was a taser rather than a "more traditional device" was "not dispositive" as the "use of any 'unnecessary, gratuitous, and disproportionate force,' whether arising from a gun, a baton, a taser, or other weapon, precludes an officer from receiving qualified immunity if the subject is unarmed and secured." *Id.* at 734–35 (*quoting Park v. Shiflett,* 250 F.3d 843, 852–53 (4th Cir. 2001)).

Similarly, Mr. Harrold was unarmed and effectively secured since he was surrounded by multiple police officers, was not actively resisting arrest, and was of no "immediate threat" to any of the officers.  The actions by Officer Hagen and K-9 Kona constituted "unnecessary, gratuitous, and disproportionate" force that amounts to a violation of Mr. Harrold's Fourth Amendment right to be free from the

33

use of excessive and unreasonable force. *See id.* at 735.  The fact that the weapon in this case was a K-9 and not a taser or gun is not dispositive.  *Id.* at 734–35

> **b.    Mr. Harrold's rights were clearly established by general constitutional principles from decisional law in this Circuit.**

The District Court erred in focusing almost exclusively on whether Officer Hagen gave a prior warning about the K-9, and the Court also erred in restricting its view to only cases involving police K-9s.  A right can be clearly established based on cases decided on different facts or general constitutional principles, and a number of such principles clearly establish that Officer Hagen violated Mr. Harrold's rights.  In *Keenan v. Ahern,* the district court summarized certain applicable constitutional principles from this Circuit:

> Critically, the Fourth Circuit has held on more than one occasion that the use of serious or violent force (i.e., disproportionate force) in arresting or otherwise seizing an individual that has surrendered, is not actively resisting or attempting to flee, does not present a danger to others, or is effectively secured amounts to a constitutional violation. For example, in *Meyers*, the court observed that "[t]he use of any unnecessary, gratuitous, and disproportionate force, whether arising from a gun, a baton, a taser, or other weapon, precludes an officer from receiving qualified immunity if the subject is unarmed and secured." 713 F.3d at 735 (internal quotation marks omitted) (citing cases). More recently, the Fourth Circuit held in *Yates v. Terry* that an officer was not entitled to qualified immunity where the officer tased an unarmed and compliant suspect three times, and the evidence did not "support an inference that [the suspect] was a danger to [the officer] at any time" or was actively resisting, even when considering that the suspect "was not handcuffed." 817 F.3d 877, 885-88 (4th Cir. 2016). The court reiterated that, under its precedent, "a nonviolent misdemeanant who is compliant, is not actively resisting arrest, and poses no threat to the

34

safety of the officer or others should not be subjected to 'unnecessary, gratuitous, and disproportionate force.' " *Id.* at 888 (quoting *Meyers*, 713 F.3d at 735). And in *Smith v. Ray*, the court reversed a district court's finding of qualified immunity for an officer that, despite having no reason to believe that the suspect was armed or "was at all inclined to cause him any harm," grabbed the compliant and non-aggressive suspect, forced her to the ground, and—after punching her multiple times—handcuffed her. 781 F.3d 95, 98-99, 102 (4th Cir. 2015). Although the defendant in *Smith* attempted to "draw fine distinctions" between the factual circumstances of that case and a similar case previously decided, *Rowland v. Perry*, 41 F.3d 167 (4th Cir. 1994), the Fourth Circuit stated clearly, "[O]ur determination that the officer was not entitled to qualified immunity in Rowland was not based on any case that was factually on all fours. Rather, it was based on the simple fact that the officer took a situation where there obviously was no need for the use of any significant force and yet took an unreasonably aggressive tack that quickly escalated it to a violent exchange when the suspect instinctively attempted to defend himself." *Smith*, 781 F.3d at 104.

*Keenan,* 524 F. Supp. 3d at 482–83.

In this case, Officer Hagen located Mr. Harrold at a time in which he was face-down on the floor and submissive (in the way that suspects are frequently asked by police submit to an arrest) and he was not a threat of injury or a risk of escaping. The situation presented no need for the use of *any* significant force and yet, Officer Hagen took an unreasonably aggressive approach when he sneakily and silently ordered K-9 Kona to attack Mr. Harrold from behind. Officer Hagen's actions were objectively unreasonable as clearly established by Fourth Circuit precedent on the use of force by police.

To the extent there was any justification for deploying the K-9 at any time Mr.

Harrold was actively fleeing, it does not mean the same significant force was

justified when Mr. Harrold was located and surrounded in the storage room and no

longer was a flight risk.[8]  *Waterman v. Batton*, 393 F.3d 471, 481 (4th Cir. 2005)

("We therefore hold that force justified at the beginning of an encounter is not

justified even seconds later if the justification for the initial force has been

eliminated.").  *See also Smith v. Town of S. Hill,* 611 F. Supp. 3d 148, 176 (E.D. Va.

2020) (Lauck, J.) ("Although the arresting officers could have used some force to

take Jones into custody, "[p]ainful, injurious, serious inflictions of force, like the use

of a taser, do not become reasonable simply because officers have authorization to

arrest a subject who is unrestrained.") (quoting *Estate of Armstrong ex rel.*

*Armstrong v. Vill. of Pinehurst,* 810 F.3d 892, 904 (4th Cir. 2016)).  In *Armstrong*,

this Court held that deploying a taser against a mentally ill individual who posed no

immediate safety risk and was only resisting handcuffing in a non-violent manner

---

[8] An officer who is justified in pulling his gun at the beginning of an encounter may
not be able to later shoot a suspect who has become compliant and is no longer a
threat.  It is beyond obvious that just because an officer has a weapon does not mean
he has to use it to make an arrest.  If an officer says, "freeze or I'll shoot" and a
suspect runs off and later is found by the officer, it does mean the officer should
shoot him at that time after he is no longer in flight.  The same applies for K-9s. *See
Meyers* (holding that the type of weapon is not dispositive).  And, importantly,
Officer Hagen did not actually deploy his K-9 in the usual way of letting a dog run
free to search for a suspect.  Instead, Officer Hagen kept the K-9 on a leash and,
thereby, directly controlled the dog as a weapon at all relevant times.

36

constituted excessive force. 810 F.3d at 895. *See also Cooper v. Sheehan,* 735 F.3d 153 (4th Cir. 2013) (holding that officers' use of deadly force was not objectively reasonable when the suspect, although armed, did not make any threatening movements or pose an immediate threat); *Cooper v. Sheehan*, 735 F.3d 153 (4th Cir. 2019) (using deadly force against a suspect who no longer poses a significant threat of death or serious physical injury is excessive.)

It was clearly established at all relevant times that an officer's right to use *any* force in effecting an arrest is severely limited unless the individual being arrested poses an objective threat. In a 2004 reported decision, a district court noted:

> It is clear from the Fourth Circuit's decision in *Jones* that it was well-established by September 2000 that when an individual does not pose an objective threat to an officer, the officer's right to use force is severely limited.

*Cowles v. Peterson*, 344 F. Supp. 2d 472, 483 (E.D. Va. 2004) citing *Jones v. Buchanan*, 325 F.3d 520, 531-35 (4th Cir. 2003). Under the facts of this case, Officer Hagen's right to use force was severely limited.

It is also clearly established by Virginia Supreme Court and Fourth Circuit precedent that a police officer cannot use significant force when the circumstances do not require it. In 2020 (before the acts giving rise to this case), the Virginia Supreme Court held that an officer was not entitled to qualified immunity when the officer "faced a situation where there was obviously no need for the use of any force—writing a traffic citation to Cromartie for speeding and her minor delay in

37

responding to his request to open her window—and took an unreasonably aggressive action of forcing her face-down onto the pavement[.]" *Cromartie v. Billings*, 298 Va. 284, 305–06 (2020). In so ruling, the Court relied on existing Fourth Circuit precedent in *Smith v. Ray*, 781 F.3d 95 (4th Cir. 2015) and *Rowland v. Perry*, 41 F.3d 167, 174 (4th Cir. 1994). *Id.* The Virginia Supreme Court and the Fourth Circuit recognize this principle as a "simple fact" and find it to be clearly established even in the absence of a case decided on the same facts. In *Smith*, the Court concluded:

> Our determination that the officer was not entitled to qualified immunity in *Rowland* was not based on any case that was factually on all fours. Rather, it was based on the simple fact that the officer took a situation where there obviously was no need for the use of any significant force and yet took an unreasonably aggressive tack that quickly escalated it to a violent exchange when the suspect instinctively tried to defend himself.

*Smith v. Ray*, 781 F.3d 95, 104 (4th Cir. 2015). The same simple fact is present in this case.

It is clearly established that if an officer uses significant force when the circumstances do not require it, it constitutes excessive force in violation of the Fourth Amendment. The method of force, whether by firearm, stun gun, baton, or K-9, is not critical because this "simple fact" is well-established. The Fourth Circuit holds:

> The fact that the force used in the present case emanated from a taser, rather than from a more traditional device, is not dispositive. The use

38

of any "unnecessary, gratuitous, and disproportionate force," whether arising from a gun, a baton, a taser, or other weapon, precludes an officer from receiving qualified immunity if the subject is unarmed and secured. [9]

*Meyers*, 713 F.3d at 734–35. *See also Owens*, 372 F.3d at 279 (4th Cir. 2004)

(holding "the exact conduct at issue need not have been held unlawful for the law

governing an officer's actions to be clearly established. And the absence of

controlling authority holding identical conduct unlawful does not guarantee

qualified immunity.") (internal citations and quotations omitted).  For example, in a

case involving the use of a taser or stun gun, this Court held:

> Force that imposes serious consequences requires significant [circumstances].[10] Our precedent, consequently, makes clear that tasers are proportional force only when deployed in response to a situation in which a reasonable officer would perceive some immediate danger that could be mitigated by using the taser.

*Estate of Armstrong*, 810 F.3d at 903.  The Court went on to find:

> Our precedent, then, leads to the conclusion that a police officer may only use serious injurious force, like a taser, when an objectively reasonable officer would conclude that the circumstances present a risk of immediate danger that could be mitigated by the use of force. At bottom, "physical resistance" is not synonymous with "risk of immediate danger."

---

[9] A police K-9 is effectively the same as any other police tool and can be considered a weapon. *Watkins v. City of Oakland*, Cal., 145 F.3d 1087, 1091 (9th Cir. 1998)("Oakland considered police dogs to be less dangerous weapons than police batons.").

[10] The decision on Westlaw says "circumscription" but it is believed it should be "circumstances."

39

*Id.*, 810 F.3d at 905 (quoting *Graham*).  The Court's ruling applies to "serious injurious force" such as a taser, but it also covers K-9s that can inflict serious injuries.[11]  Indeed, in reaching its decision, the Fourth Circuit considered cases involving other examples of force.  The Court noted "we have previously held that tasing suspects after they have been secured and that punching or pepper spraying suspects in response to minimal, non-violent resistance constitute excessive force." *Id.* at 908 (citations omitted); *see also Yates v. Terry*, 817 F.3d 877, 887 (4th Cir. 2016) (holding "it was clearly established in 2008 that a police officer was not entitled to use unnecessary, gratuitous, or disproportionate force by repeatedly tasing a nonviolent misdemeanant who presented no threat to the safety of the officer or the public and who was compliant and not actively resisting arrest or fleeing.").

### c.    Mr. Harrold's rights were clearly established by a consensus of persuasive authority from other circuits.

Courts "ordinarily" need not look beyond decisions from the Supreme Court, the relevant Court of Appeals, or the state's highest court to determine whether a right is clearly established, but they do so if there are no such decisions.  *Booker,* 855 F.3d at 538; *Owens*, 372 F.3d at 279.  In this case, the subject right is clearly established based on precedent from the Fourth Circuit, but there is also a consensus

---

[11] "The force of a police dog's bite is between 1,200 and 2,000 pounds per square inch." *Vathekan*, 154 F.3d 173, 177, fn 3.

of persuasive authority from other Circuits that clearly establish Mr. Harrold's rights.

Sixth Circuit

The Sixth Circuit has found an officer acted "contrary to clearly established law" when he "allowed a 'bite and hold' dog, whose training was questionable, to attack two suspects who were not actively fleeing and who, because of proximity, showed no ability to evade police custody." *Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 789 (6th Cir. 2012). The *Campbell* case involved two consolidated cases involving a suspected burglar who was lying next to an outbuilding hoping to avoid an interaction with the police and a person who had escaped from a police car and handcuffs who was hiding in a plastic playhouse in a third party's backyard. *Id.* at 784–86. The Sixth Circuit has also found that an officer used excessive force where he deployed a police dog against an "unarmed suspect detained on the basis of a traffic offense, who was on the ground and not attempting to flee." *Rainey v. Patton*, 534 Fed. Appx. 391, 397 (6th Cir. 2013)(unpublished) ("Based on the principles articulated in these cases, it would be clear to a reasonable officer that employing a police dog against an unarmed suspect detained on the basis of a traffic offense, who was on the ground and not attempting to flee, would constitute excessive force.").

<u>Seventh Circuit</u>

The Seventh Circuit has found a Fourth Amendment violation where a suspect had "ceased flight, was effectively trapped, and who immediately complied with police orders." *Alicea v. Thomas*, 815 F.3d 283, 290 (7th Cir. 2016) ("The district court erred in holding it was reasonable to command a dog to attack a suspect who had ceased flight, was effectively trapped, and who immediately complied with police orders."). In that case, the suspect was "effectively trapped" because he had jumped into "an empty, five-foot deep, above-ground pool" and was "hid[ing] by sitting inside the pool." *Id.* at 285. The court found the "prohibition against significant force against a subdued suspect applies notwithstanding a suspects previous behavior – including resisting arrest, threatening officer safety, or potentially carrying a weapon." *Id.* at 289 (quoting *Miller v. Gonzalez*, 761 F.3d at 829 (7th Cir. 2014)).

The Seventh Circuit has further found that a police officer used excessive force where he deployed a police dog on a suspect who was in the process of peacefully surrendering, noting that it was "well-established that 'police officers cannot continue to use force once a suspect is subdued'" *Becker v. Elfreich*, 821 F.3d 920, 928 (7th Cir. 2016) (quoting *Abbott v. Sangamon Cty.*, 705 F.3d 706 (7th Cir. 2013)).

42

Eighth Circuit

The Eighth Circuit upheld the denial of qualified immunity where a police officer had released a police dog onto a suspected burglar. *See Adams v. City of Cedar Rapids*, 74 F.4th 935 (8th Cir. 2023). The court found that, although warnings were issued, "taking the facts in the light most favorable to [the plaintiff], he did not hear the . . . officers' warnings and did not have an opportunity to surrender." *Id.* at 940.

Ninth Circuit

The Ninth Circuit has held "[o]ur precedent clearly establishes that releasing a police dog to bite a person who neither endangers officers nor attempts to flee or resist arrest violates that person's Fourth Amendment right to be free from unreasonable seizure." *Penaloza v. City of Rialto*, 836 F. App'x 547, 549 (9th Cir. 2020) (unpublished). The Ninth Circuit has also denied qualified immunity to a police officer who deployed a police dog to find a suspected burglar of an auto body shop. *Watkins v. City of Oakland*, 145 F.3d 1087 (9th Cir. 1998). In the *Watkins* case, the police officer deployed the dog to find the suspected burglar, who had hidden from the police, but did not instruct the canine to stop biting the suspect after the dog located and bit the suspect and the police officer arrived at the scene. *Id.* at 1090. Rather, he did not "call off" the dog until the suspect complied with his orders to "show his hands," during which point the dog held onto its bite of the suspect for

43

fifteen to thirty seconds. *Id.* The court upheld the district court's denial of qualified immunity, because "it was clearly established that the excessive duration of the bite and improper encouragement of a continuation of the attack by officers could constitute excessive force that would be a constitutional violation." *Id.* at 1093.[12] In another case, the Ninth Circuit observed that "excessive force has been used when a deputy sics a canine on a handcuffed arrestee who has fully surrendered and is completely under control." *Mendoza v. Block*, 27 F.3d 1357, 1362 (9th Cir. 1994).

### Tenth Circuit

The Tenth Circuit has found that a situation where a police officer released a dog to attack a suspect and struck the suspect in the face after the subject was apprehended was a clearly established violation of the Fourth Amendment. *See Vette v. Sanders*, 989 F.3d 1154, 1172 (10th Cir. 2021) ("Sergeant Sanders's alleged use of force against Mr. Vette—viz., striking him in the face and releasing a police dog to attack him after he was already apprehended—was objectively unreasonable.").

### Eleventh Circuit

The Eleventh Circuit has found that a police officer was not entitled to qualified immunity where a police canine was deployed to "attack and bite" a

---

[12] Similarly, in this case, Mr. Harrold was practically begging for Officer Hagen and the other officers to stop the K-9 from biting him, but the officers refused to do so until he was in handcuffs. The prolonged and excessive duration of the K-9 attack is the subject of Count II of the Complaint.

suspected burglar for two minutes who "did not pose a threat of bodily harm to the officers or to anyone else," was "not attempting to flee or resist arrest," and had "submitted immediately to the police." *Priester v. City of Riviera Beach*, 208 F.3d 919, 927 (11th Cir. 2000). The court found that "no particularized preexisting case law was necessary for it to be clearly established that what [the police officer] did violated Plaintiff's constitutional right to be free from excessive use of force. *Id.*

These cases from other circuits, along with precedent from the Fourth Circuit and basic constitutional principles, represent a consensus of persuasive authority that clearly establish Mr. Harrold's rights were violated in this case in which Officer Hagen used extraordinary force in using the K-9 and caused serious injury to Mr. Harrold, a man who did not pose a threat of injury to anyone and was not actively attempting to escape arrest. To paraphrase the Eleventh Circuit's decision in *Priester,* no preexisting case law is necessary for it to be clearly established that what Officer Hagen did violated Mr. Harrold's constitutional right to be free from excessive force. Officer Hagen's actions were so blatantly unnecessary and excessive that this Court should find a violation of Mr. Harrold's rights to be clearly established based solely on general constitutional principles if the Court is not otherwise persuaded by existing precedent from this Circuit and the consensus of authority from other circuits.

## VII.  CONCLUSION

For these reasons, the Complaint states a claim for excessive force and Mr. Harrold's rights were clearly established such that Officer Hagen is not entitled to qualified immunity.  The judgment of the District Court should be reversed.

## VIII.  REQUEST FOR ORAL ARGUMENT

Pursuant to Rule 34 and Local Rule 34(a), Mr. Harrold requests oral argument in support of this appeal in order to address any questions or concerns about the facts or Appellant's argument on the application of the law to the facts and to otherwise assist in the decisional process.


Respectfully submitted,
RICHARD P. HARROLD,
*Appellant*


Dated:        December 30, 2024.        By:   /s/ Robert J. Allen
                                                                Counsel

Robert J. Allen (VSB No. 65214)
THORSENALLEN LLP
5413 Patterson Avenue, Suite 201
P. O. Box 17094
Richmond, VA  23226
Telephone: (804) 447-7234
Facsimile: (804) 447-7813
E-mail: rallen@thorsenallen.com
*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

In accordance with Rule 32(a) of the Federal Rules of Appellate Procedure and the Local Rules of the Fourth Circuit Court of Appeals, I hereby certify that:

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains no more than 13,000 words. According to the word-processing system used to prepare the brief, Microsoft Word, it contains <u>12,252 words</u>.

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface with serifs using Microsoft Word, <u>Times New Roman, 14-point font</u>.


By:      /s/ Robert J. Allen
Robert J. Allen (VSB No. 65214)
THORSENALLEN LLP
5413 Patterson Avenue, Suite 201
P. O. Box 17094
Richmond, VA  23226
Telephone: (804) 447-7234
Facsimile: (804) 447-7813
E-mail: rallen@thorsenallen.com
*Counsel for Appellant*

<u>C**ERTIFICATE OF** S**ERVICE**</u>

In accordance with Rule 25 of the Federal Rules of Appellate Procedure and

the Local Rules of the Fourth Circuit Court of Appeals, I hereby certify that on this

30th day of December, 2024, I electronically filed the foregoing brief with the Clerk

of the Court using the CM/ECF system, which will send notification of such filing

to the following counsel:

> Julie A.C. Seyfarth, Esquire
> Senior Deputy County Attorney
> Chesterfield County, Virginia
> P.O. Box 40
> Chesterfield, VA 23832
> Email: seyfarthj@chesterfield.gov
> *Counsel for Appellee*

>                    By:   /s/ Robert J. Allen
>                    Robert J. Allen, Esquire
>                    VSB No. 65214
>                    ThorsenAllen LLP
>                    5413 Patterson Ave., Suite 201
>                    P.O. Box 17094
>                    Richmond, VA  23226
>                    Telephone: (804) 447-7234
>                    Facsimile: (804) 447-7813
>                    Email: rallen@thorsenallen.com
>                    *Counsel for Appellant*