—————————————

RECORD NO. 24-2073

—————————————

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

—————————————

RICHARD P. HARROLD,

Plaintiff-Appellant,

v.

LEWIS J. HAGEN III, individually and in his
official capacity as an Officer of the Chesterfield
County Police Department,

Defendant-Appellee.

—————————————

On appeal from the United States District Court
for the Eastern District of Virginia at Richmond
Civil Action No.: 3:23-cv-866

—————————————

**APPELLANT'S REPLY BRIEF**

—————————————

Robert J. Allen, Esquire
THORSENALLEN LLP
5413 Patterson Ave., Suite 201
P.O. Box 17094
Richmond, VA  23226
Telephone: (804) 447-7234
Facsimile: (804) 447-7813
*Counsel for Appellant*

# TABLE OF CONTENTS

Table of Contents…………………………………………………………….i

Table of Authorities………………………………………………….….iii

INTRODUCTION …………………………………………………………1

ARGUMENT ……………………………………………...…………………3

Several arguments by Appellee cannot be considered in the
absence of a cross-appeal……………………………………….....3

Mr. Harrold's rights were clearly established by core
constitutional principles even if this Court does not find
preexisting caselaw decided under sufficiently similar facts…………….4

The District Court erred in relying solely on cases from this
Circuit involving K-9 warnings while seemingly ignoring
applicable core constitutional principles, including those
set forth in cases involving weapons other than police dogs…………..7

Officer Hagen misconstrues the *Graham v. Connor* standard
by focusing on inapplicable facts and time periods,
speculation, incorrect factual assertions…………………………….10

Officer Hagen's nonsensical attempt to distinguish applicable
cases does not negate the existence of clearly established
precedent, core constitutional principles, and persuasive
authority from other circuits……………………………………………17

Officer Hagen's actions were plainly incompetent such
that he is not entitled to the benefit of qualified immunity……………..20

Officer Hagen did not carry his burden of proof to show
that Mr. Harrold's right at issue was not clearly established…………..…23

CONCLUSION………………………………………………………...23

Certificate of Compliance……………………………………………..25

Certificate of Service…………………………………………………..26

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Adams v. City of Cedar Rapids,*
    74 F.4th 935 (8th Cir. 2023)……………………………………………21

*Atkinson v. Godfrey*,
    100 F.4th 498 (4th Cir. 2024)…………………………………………..21

*Bailey v. Kennedy*,
    349 F.3d 731, 744-45 (4th Cir. 2003)………………………………...10

*Benton v. Layton*,
    2023 WL 3727934 (E.D. Va. May 30, 2023)…………………………....21

*Best v. Farr*,
    2023 WL 2975648 (Va. Ct. App. April. 18, 2023)………………..……21

*Booker v. S.C. Dep't of Corr*.,
    855 F.3d 533, 543 (4th Cir. 2017)……………………………….…..4

*Brandon Chrishon Polk v. Stanly Cnty.,*
    2024 WL 1287372 (M.D. N.C. Feb. 23, 2024)…………………….…21

*Bryant v. City of Cayce*,
    332 Fed. Appx. 129, 132 (4th Cir. 2009)………………………..…23

*Coffin v. United States*,
    156 U.S. 432, 453 (1895)……………………………………………1

*Cowles v. Peterson*,
    344 F. Supp. 2d 472, 483 (E.D. Va. 2004)………………………..…..6

*Cromartie v. Billings*,
    298 Va. 284, 305–06 (2020)…………………………………………6

*Dean v. McKinney*,
    976 F.3d 407, 419 (4th Cir. 2020)…………………………………4, 5

*Edwards v. City of Goldsboro,*
    178 F.3d 231, 251 (4th Cir. 1999)…………………………………………4

*Elliott v. Leavitt,*
    99 F.3d 640, 643 (4th Cir. 1996)…………………………………………..10, 15

*Estate of Armstrong ex rel. Armstrong v. Vill. of Pinehurst,*
    810 F.3d 892, 905 (4th Cir. 2016)…………………………………………10, 11

*Doriety for Estate of Crenshaw v. Sletten*,
    109 F.4th 670, 679–80 (4th Cir. 2024)…………………………………………3

*Graham v. Connor*,
    490 U.S. 386 (1989)…………………………………………………………passim

*Jean v. Collins,*
    155 F.3d 701, 708 (4th Cir.1998)…………………………………………4

*Jennings v. Stephens*,
    574 U.S. 271, 272 (2015)…………………………………………………………4

*Jones v. Buchanan*,
    325 F.3d 520, 531-35 (4th Cir. 2003)……………………………………...……6

*Keenan v. Ahern,*
    524 F. Supp. 3d 472, 482 (E.D. Va. 2021)…………………………8, 17, 22

*Kopf v. Wing*,
    942 F.2d 265, 268 (4th Cir. 1991)…………………………………………passim

*Krein v. Price*,
    596 Fed. Appx. 184, 189 (4th Cir. 2014)……………………………11, 12

*Maciariello v. Sumner*,
    973 F.2d 295, 298 (4th Cir. 1992)……………………………………….……22

*Malley v. Briggs*,
    475 U.S. 335, 341 (1986)……………………………………...……22

iv

*Maney v. Garrison*,
  681 Fed. Appx. 210 (4th Cir. 2017)………………………………18, 19

*Melgar ex rel. Melgar v. Greene*,
  593 F.3d 348, 363 (4th Cir. 2010)……………………………..……8, 18

*Meyers v. Baltimore Cnty., Md.*,
  713 F.3d 723, 734 (4th Cir. 2013)………………..…………8, 9, 10, 18

*M.Y.M, by & through Portillo v. Chavis*,
  582 F. Supp. 3d 323, 339 (E.D. Va. 2022)……………………11, 14, 16, 19

*Nesbitt v. City of Greensville*,
  2025 WL 274619 (D.S.C. Jan. 23, 2025)…………………………………21

*Omeish v. Kincaid*,
  86 F.4th 546 (4th Cir. 2023)………………………………...……………21

*Orem v. Rephann*,
  523 F.3d 442, 448–49 (4th Cir. 2008)………………….…………22, 23

*Owens v. Lott*,
  372 F.3d 267, 279 (4th Cir. 2004)……………………………...………4, 5

*Pearson v. Callahan*,
  555 U.S. 223, 244 (2009)……………………………………….………22

*Putnam v. Harris*,
  66 F.4th 181 (4th Cir. 2023)…………………………………………21

*Rambert v. Harris*,
  107 F.4th 388 (4th Cir. 2024)……………………………...……………21

*Robinette v. Barnes*,
  854 F.2d 909 (6th Cir. 1988)………………………………………17, 20

*Rowland v. Perry*,
  41 F.3d 167 (4th Cir. 1994)…………………………………..……6, 11, 19

*Saucier v. Katz,*
    533 U.S. 194 (2001)…………………………………………………………3

*Schoonover v. Clay Cnty. Sheriff's Dep't.,*
    2023 WL 4026091 (4th Cir. June 15, 2023)………………...…………21

*Smith v. Murphy,*
    634 Fed. Appx. 914 (4th Cir. 2015)…………………………….………11, 19

*Smith v. Ray,*
    781 F.3d 95, 104 (4th Cir. 2015)………………………………6, 11, 14, 19

*Taylor v. Kentucky,*
    436 U.S. 478, 483 (1978)…………………………………………………1

*Thompson v. Commonwealth,*
    878 F.3d 89, 98 (4th Cir. 2017)…………………………………...…………7

*Thompson v. Gansler,*
    734 Fed. Appx. 846, 853 (4th Cir. 2018)……………………………………4

*United States v. Am. Ry. Express Co.,*
    265 U.S. 425, 435 (1924)…………………………………………………4

*Vathekan v. Prince George's Cnty.,*
    154 F.3d 173, 178 (4th Cir. 1998)………………………..…………passim

*Waterman v. Batton,*
    393 F.3d 471, 481 (4th Cir. 2005)………………………..………12, 22

*Williamson v. Stirling,*
    912 F.3d 154, 187 (4th Cir. 2018)………………………...…………5

## **Other**

Fourth Amendment to United States Constitution………………...…………5, 9, 17

*Merriam–Webster's Collegiate Dictionary* (11th ed.2007)…………...…………8

## <u>APPELLANT'S REPLY BRIEF</u>

Richard P. Harrold ("Mr. Harrold" or "Appellant"), by counsel, respectfully submits this reply brief in support of his appeal from the Final Order (JA64) of the United States District Court for the Eastern District of Virginia – Richmond Division ("District Court") dismissing this case on the basis of qualified immunity in favor of the defendant-appellee, Lewis J. Hagen III ("Officer Hagen" or "Appellee").

## I.      <u>INTRODUCTION</u>

Officer Hagen seems to have forgotten that in America every suspect is presumed innocent until proven guilty. *See generally Taylor v. Kentucky*, 436 U.S. 478, 483 (1978) citing *Coffin v. United States*, 156 U.S. 432, 453 (1895) ("The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law."). At the time of his arrest on December 26, 2021, Mr. Harrold was presumed to be innocent. Officer Hagen's primary duty was to respond to the alarm at the car dealership, investigate the situation, search for a suspect, determine if there was probable cause for an arrest and, if so, make the arrest. Unfortunately, after locating Mr. Harrold, Officer Hagen deployed his K-9 police dog, "Kona", to make the arrest in a violent and bloody manner when there was absolutely no need to use such serious and injurious force.

1

In an effort to justify his actions retrospectively, Officer Hagen misconstrues applicable law, cites a number of irrelevant cases, and spins the facts to the point of absurdity. Like the District Court, Officer Hagen focuses almost exclusively on the K-9 warnings given as the officers searched for Mr. Harrold, but this case is not dependent on the sufficiency of warnings. This is not a case in which an officer warns that a K-9 is going to be released and thereafter releases the dog and allows it to run freely to search for a missing suspect. Officer Hagen did not release Kona from its leash but rather used the K-9 on a leash as a weapon to make the arrest. Despite Officer Hagen's best efforts to reform the facts, it is clear that at the relevant time (*i.e.,* the moment of the arrest), Mr. Harrold was not actively fleeing, and he did not pose a threat of immediate injury to Officer Hagen or anyone else. Under the circumstances, it is clearly established that the level of force used in this case was excessive. Officer Hagen's attempt to distinguish existing caselaw is unavailing because a right can be clearly established in the absence of a factually similar case. The Fourth Amendment prohibits excessive force by police officers, and it matters not what the implement of force is. Here it was an aggressive and apparently poorly trained K-9, but principles from cases involving guns, tasers, batons, and other weapons are equally applicable to the facts presented. Mr. Harrold's right to be free from a violent K-9 attack under the circumstances is also manifestly apparently from fundamental, core constitutional principles. Moreover, Officer Hagen's actions

were incompetent to the point that he is not entitled to qualified immunity.  For the reasons that follow, the District Court's decision should be reversed.

## II.    ARGUMENT

### A.    Several arguments by Appellee cannot be considered in the absence of a cross-appeal.

In his brief, Officer Hagen advances several arguments that have been waived due to his failure to file a cross-appeal.  For example, Officer Hagen argues the District Court failed in its analysis under *Graham v. Connor*, 490 U.S. 386 (1989), by not accounting for certain facts appropriately established by the body-worn camera ("BWC") video.[1]  (Brief of Appellee, at 12, ECF Doc. No. 12.)  Officer Hagen also contends the District Court erred in its analysis of the first prong of the test from *Saucier v. Katz,* 533 U.S. 194 (2001), and erred in concluding it was plausible that Officer Hagen's use of force was objectively unreasonable.  (*Id.* at 12-13.)  In doing so, Officer Hagen is attempting to enlarge his rights under the District

---

[1] Officer Hagen also seems to believe that the entirety of the BWC video could be considered because he spends considerable time discussing and spinning what the video depicts.  (Brief of Appellee, at 1-8, ECF Doc. No. 14.)   In fact, the BWC video could only be considered at the motion to dismiss stage  "when (1) the video is 'integral' to the complaint and its authenticity is not challenged, but (2) only to the extent that the video 'clearly depicts a set of facts contrary to those alleged in the complaint,' or 'blatantly contradicts' the plaintiff's allegations, rendering the plaintiff's allegations implausible." *Doriety for Estate of Crenshaw v. Sletten*, 109 F.4th 670, 679–80 (4th Cir. 2024).  In considering a motion to dismiss, a court "must credit the plaintiff's version of the facts to the extent they are not 'blatantly contradicted' by the recording." *Id.* at 680 (citations omitted).

Court's Memorandum Opinion and Final Order and lessen Mr. Harrold's rights. Such arguments are not allowed by an appellee who has not filed a cross-appeal. *Thompson v. Gansler*, 734 Fed. Appx. 846, 853 (4th Cir. 2018) citing *Jennings v. Stephens*, 574 U.S. 271, 272 (2015) and *United States v. Am. Ry. Express Co.*, 265 U.S. 425, 435 (1924). These arguments by Officer Hagen, including the discussion about the second *Graham* factor, (Brief of Appellee, at 22-28, ECF Doc. No. 12), have been waived because a cross-appeal was not filed, and they cannot now be considered on appeal.

### B. <u>Mr. Harrold's rights were clearly established by core constitutional principles even if this Court does not find preexisting caselaw decided under sufficiently similar facts.</u>

In this Circuit, a right is clearly established if: (1) "a general constitutional rule already identified in the decisional law applies with obvious clarity," *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 543 (4th Cir. 2017); (2) the right is "manifestly apparent from broader applications of the constitutional premise in question," *Owens v. Lott*, 372 F.3d 267, 279 (4th Cir. 2004); or (3) the right is "manifestly included within more general applications of the core constitutional principles invoked," *Dean v. McKinney*, 976 F.3d 407, 419 (4th Cir. 2020). This Court holds "the nonexistence of a case holding the defendant's identical conduct to be unlawful does not prevent the denial of qualified immunity." *Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4ᵗʰ Cir. 1999) citing *Jean v. Collins*, 155 F.3d 701, 708 (4th Cir.1998)

(en banc); *see also Owens*, 372 F.3d at 279 (holding "the exact conduct at issue need not have been held unlawful for the law governing an officer's actions to be clearly established. And the absence of controlling authority holding identical conduct unlawful does not guarantee qualified immunity.") (internal citations and quotations omitted). Public officials "can still be on notice that their conduct violates established law even in novel factual circumstances, so long as the law provided fair warning that their conduct was wrongful." *Williamson v. Stirling*, 912 F.3d 154, 187 (4th Cir. 2018) (internal quotation marks omitted); *see also Dean*, 976 F.3d at 418 (affirming a denial of qualified immunity based on "core constitutional principles set forth in numerous cases" even though the court had yet to "consider a case where an officer engaged in the same conduct as [the defendant], he [was] not absolved of liability solely because the court has not adjudicated the exact circumstances of his case.").

With regard to the facts of this case, there is direct, on-point binding authority from *Vathekan* and *Kopf*, two decisions that set forth the applicable core constitutional principle, that is, "[a]n attack by an unreasonably deployed police dog in the course of a seizure is a Fourth Amendment excessive force violation." *Vathekan v. Prince George's Cnty.*, 154 F.3d 173, 178 (4th Cir. 1998), *Kopf v. Wing*, 942 F.2d 265, 268 (4th Cir. 1991). More generally, it is clearly established and a core constitutional principle that an officer's right to use *any* force in effecting an

arrest is severely limited unless the individual being arrested poses an objective threat. *Cowles v. Peterson*, 344 F. Supp. 2d 472, 483 (E.D. Va. 2004) citing *Jones v. Buchanan*, 325 F.3d 520, 531-35 (4th Cir. 2003). This Court has denied qualified immunity when an officer unnecessarily escalates an encounter using significant physical force even in the absence of factually similar preexisting caselaw:

> Our determination that the officer was not entitled to qualified immunity in *Rowland*[2] was not based on any case that was factually on all fours. Rather, it was based on the *simple fact* that the officer took a situation where there obviously was no need for the use of any significant force and yet took an unreasonably aggressive tack that quickly escalated it to a violent exchange when the suspect instinctively tried to defend himself.

*Smith v. Ray*, 781 F.3d 95, 104 (4th Cir. 2015) (emphasis added). In considering qualified immunity, the District Court erred in restricting its view to only *Vathekan* and *Kopf* when it was a "simple fact" and a core constitutional principle that an officer may not use significant force when there is no need for it. The same constitutional principle has been recognized by Virginia's highest state court prior to December 26, 2021 in the decision in *Cromartie v. Billings*, 298 Va. 284, 305–06 (2020). *See* Appellant's Brief, at 34-40, for a more detailed discussion.

---

[2] *Rowland v. Perry*, 41 F.3d 167 (4th Cir. 1994).

6

**C.** **The District Court erred in relying solely on cases from this Circuit involving K-9 warnings while seemingly ignoring applicable core constitutional principles, including those set forth in cases involving weapons other than police dogs.**

In considering whether the right at issue was clearly established, the District Court relied solely on *Vathekan* and *Kopf* to resolve the question of whether a warning about the K-9 was given. (Memo. Op. at 21, JA60.)  This is somewhat understandable because those are two main decisions from this Circuit addressing claims of excessive force involving police K-9s.  However, it was error for the court below to end its inquiry there and not consider whether the use of the K-9 under the circumstances of this case was excessive notwithstanding any warning.  It was also error for the District Court not to consider whether Mr. Harrold's right was clearly established by general constitutional principles or persuasive authority from other circuits.  *See Thompson v. Commonwealth*, 878 F.3d 89, 98 (4th Cir. 2017) ("In the absence of 'directly on-point, binding authority,' courts may also consider whether 'the right was clearly established based on general constitutional principles or a consensus of persuasive authority.'") (internal quotations omitted).

It was not dispositive that one or more warnings were given about K-9 Kona although the District Court found it was.  *See* Memo. Op., at 21, JA60.  Deployment of a police dog can be unreasonable and excessive force even when a pre-deployment

7

warning is given.[3]  Failing to give a prior warning is not the only way a K-9 can be

improperly deployed.  *See Keenan v. Ahern,* 524 F. Supp. 3d 472, 482 (E.D. Va.

2021) quoting *Meyers v. Baltimore Cnty., Md.*, 713 F.3d 723, 734 (4th Cir. 2013)

(finding "one could easily imagine other scenarios in which, notwithstanding a prior

warning, the deployment of a police dog would be entirely unreasonable and without

question a violation of clearly established law as a reasonable officer would plainly

know that such conduct is unlawful—even in 'the absence of a judicial decision [so]

holding.'").  (*See* Appellant's Brief at 31, ECF Doc No. 12.)  This is such a case.

Even with Officer Hagen's apparent warnings, the deployment and use of the K-9

was improper and objectively unreasonable under the circumstances existing at the

moment of Mr. Harrold's arrest.[4]

---

[3] Notably, the record, even as amplified by the BWC, does not establish Mr. Harrold heard any warnings.  Because this issue is unresolved, the District Court's dismissal of the case was improper.  *See Vathekan,* 154 F.3d at 18 (quoting *Kopf,* 942 F.2d at 266 ("where the fact that civilian witnesses 'heard no such warning' was enough for the plaintiffs to survive summary judgment on the issue of whether a warning was given.").  Even if appropriate warnings were given and *heard and understood* by Mr. Harrold, it does not end the inquiry because an officer can be liable for excessive force caused by a police K-9 even after warnings are given.  And it bears repeating that the District Court found, "it is plausible that Officer Hagen's use of force was objectively unreasonable for failing to issue a final warning before deploying Kona." (Memo. Op., at 20, JA59.).

[4] "'Deployment,' of course, refers to the arrangement or use of a thing or force for a 'deliberate purpose.'" *Melgar ex rel. Melgar v. Greene*, 593 F.3d 348, 363 (4th Cir. 2010) (Michael, J, dissent and concurring in part) citing *Merriam–Webster's Collegiate Dictionary* (11th ed.2007).  Under this definition, a K-9 is deployed when it is used, whether on or off its leash.

Similarly, it was error for the District Court to only review cases involving police K-9s because it is clearly established that if an officer uses significant force when the circumstances do not require it, such actions constitute excessive force in violation of the Fourth Amendment, and it matters not what kind of weapon was used. The method of force, whether by firearm, stun gun, baton, or K-9, is not dispositive. *Meyers*, 713 F.3d at 734–35 ("The fact that the force used in the present case emanated from a taser, rather than from a more traditional device, is not dispositive. The use of any 'unnecessary, gratuitous, and disproportionate force,' whether arising from a gun, a baton, a taser, or other weapon, precludes an officer from receiving qualified immunity if the subject is unarmed and secured.") (internal citations omitted). A police K-9 is a weapon just like any other police tool. (*See* Appellant's Brief at 39, fn. 9, ECF Doc No. 12.) The Court's ruling applies to "serious injurious force" such as a taser, but it also covers K-9s. Unquestionably a K-9 can inflict serious injuries, and Appellee does not contest the extent of Mr. Harrold's severe injuries as alleged.

In *Meyers*, this Court noted that it had "repeatedly held that it is not required that a right violated have been recognized by a court in a specific context before such right may be held 'clearly established' for the purposes of qualified immunity" and noted that it had stated in "forthright terms that 'officers using unnecessary, gratuitous, and disproportionate force to seize a secured, unarmed citizen, do not act

in an objectively reasonable manner and, thus, are not entitled to qualified immunity.'" *Meyers*, 713 F.3d at 734 (quoting *Bailey v. Kennedy*, 349 F.3d 731, 744-45 (4th Cir. 2003)).  *See* Appellant's Brief, at 32, ECF Doc. No. 12, for a more detailed discussion.

For these reasons, the District Court did not perform a complete analysis of the clearly established issue and erred in not considering whether Mr. Harrold's right was clearly established by core constitutional principles or persuasive authority from other circuits.

### D.    **Officer Hagen misconstrues the *Graham v. Connor* standard by focusing on inapplicable facts and time periods, speculation, incorrect factual assertions.**

This Court holds that "*Graham* requires us to focus on the moment force was used; conduct prior to that moment is not relevant in determining whether an officer used reasonable force." *Elliott v. Leavitt*, 99 F.3d 640, 643 (4th Cir. 1996). Therefore, Officer Hagen's argument about Mr. Harrold breaking the glass door, possibility using a "weapon or tool" to break the glass and going upstairs in the building away from officers is completely irrelevant.  At the moment Officer Hagen deployed the K-9, Mr. Harrold was laying still on the floor and presented no immediate danger to cause injury nor was he risk to flee.  But even if he was resisting arrest by laying on the floor, it was clearly established Officer Hagen could not use the level of force that he used when he deployed the K-9.  *See Estate of Armstrong*

*ex rel. Armstrong v. Vill. of Pinehurst,* 810 F.3d 892, 905 (4th Cir. 2016) ("At

bottom, "physical resistance" is not synonymous with "risk of immediate danger.").[5]

Officer Hagen continues to feign ignorance about when extreme force can be

used in an arrest even though his employer's policies clearly delineate it. No where

is this more evident than when Officer Hagen argues, "The mere fact that the suspect

is no longer actively searching for an exit to flee through or is changing his hiding

places is not indicative of a suspect who is no longer a threat." (Brief of Appellee,

at 23, ECF Doc. No. 12.) But the law is clearly established that when a suspect is

no longer actively fleeing and not an immediate threat, the use of extreme force, such

as that involved in this case, is unreasonable. A prior threat of harm does not justify

a significant use of force once that harm is no longer present. For example, in *Krein*

*v. Price*, the Fourth Circuit found an officer was justified in shooting at a suspect

while the suspect was driving a vehicle in the direction of officers but shooting at

the vehicle after it had passed them was excessive force, even though the suspect

---

[5] "Fourth Circuit case law clearly establishes that reflexive, or 'automatic,' resistance is not uncommon, should be anticipated by police officers, and does not justify the use of substantial force in response absent some additional reason to believe that force is necessary." *M.Y.M, by & through Portillo v. Chavis,* 582 F. Supp. 3d 323, 339 (E.D. Va. 2022) (citing *Smith v. Murphy*, 634 Fed. Appx. 914 (4th Cir. 2015) ("As for the third Graham factor, resistance from Smith could be characterized as instinctive, and we have twice concluded that such reactions do not constitute active resistance.") (citing *Smith v. Ray*, 781 F.3d 95 (4th Cir. 2015) and *Rowland v. Perry*, 41 F.3d 167 (4th Cir. 1994))).

was clearly actively fleeing at that point in time. *Krein v. Price*, 596 Fed. Appx. 184, 189 (4th Cir. 2014) ("But even allowing Price some leeway to account for the tense, hurried nature of the incident cannot change the fact that the record contains numerous indications that a reasonable officer would have realized that deadly force was not necessary to protect himself or others when he was no longer in the direction of Krein's vehicle."); *see also Waterman v. Batton*, 393 F.3d 471, 481 (4th Cir. 2005) ("We therefore hold that force justified at the beginning of an encounter is not justified even seconds later if the justification for the initial force has been eliminated."). A suspect should be able to change his mind about fleeing without getting mauled by a dog when he surrenders.

Mr. Harrold was not *actively* resisting arrest or *attempting* to evade arrest by flight at the moment Officer Hagen gave his K-9 the command to seize and bite him. In light of the fact that Mr. Harrold was unarmed, not actively fleeing, cornered, and surrounded by law enforcement, this was not one of those situations in which Officer Hagen was "forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397 (internal citations omitted). To the extent there was any justification for deploying the dog at the time Mr. Harrold was actively fleeing by walking around the building and up the stairs, it does not mean

the same significant force was justified when Mr. Harrold was located, surrounded in the storage room, and no longer was a flight risk.

Much of Officer Hagen's attempt to justify his extreme use of force relies on pure speculation as opposed to information which was actually known to him. For instance, Officer Hagen claims that a "tool or weapon" was used to break the glass door because other officers used their batons to enlarge the hole. (Brief of Appellee, at 19, ECF Doc. No. 12.) There are no facts in the Complaint or in the BWC video to support Officer Hagen's speculation. No weapon or tool is shown on the BWC, it is not alleged that any such tool or weapon was recovered, and, of course, a glass door can be broken in many different ways without a weapon or tool. Furthermore, a broken glass door does not provide a basis to think Mr. Harrold was armed when he was observed going up the stairs with nothing in his hand or on his person. Officer Hagen's irrational and baseless fears do not justify his actions when he later encountered Mr. Harrold, especially when the BWC shows that none of the officers had any reason to be fearful at any time after they encountered Mr. Harrold. Despite Officer Hagen's repeated assertions that Mr. Harrold was "armed" are simply untrue. A Sergeant with the Chesterfield County Police Department testified under oath at the preliminary hearing that Mr. Harrold was unarmed and there was no reason to think he was armed. (Compl. ¶ 55, JA11-12.) In fact, Mr. Harrold was unarmed, as alleged in the Complaint, and Officer Hagen had no reason to believe otherwise. (*Id.*

13

¶ 54, JA11.)  A utility knife is not a weapon, and it was not located until Mr. Harrold was in custody and handcuffed.  (*Id.* ¶ 21, JA7.)  Mr. Harrold was unarmed but, in any event, a belief that a suspect is armed, without more, is insufficient to justify the use of significant force. *M.Y.M.,* 582 F. Supp. 3d at 336 ("Fourth Circuit case law is clear that an officer cannot justify the use of force with the fear that a suspect may be armed where the officer can cite to no reason for thinking the detainee to be armed.").  In this case, Officer Hagen and the other officers did not even know about the utility knife until after the arrest so it could not justify the officer's use of force. *See Smith*, 781 F.3d at 104-5.  Officer Hagen's arguments in this regard are borderline asinine.

In an effort to defend his extreme and unwarranted use of force, Officer Hagen misstates and misconstrues the facts so badly that he crosses the line into fantasy. For instance, he says that "[i]t appears [on the BWC] Appellant had something stashed in the front pocket of his hoodie." (Brief of Appellee, at 6, ECF Doc. No. 12.) Of course, Officer Hagen does not disclose the truth - that there was no weapon in the front pocket of Mr. Harrold's hooded sweatshirt or hoodie and, of course, hoodie pockets stick out by nature and can be used to carry innocuous items. Furthermore, as with the pocketknife, Officer Hagen observed the hoodie pocket *after* he had already sicced the K-9 on Mr. Harrold, so it does not provide a basis for the use of that extreme force.

Unfortunately, at this point, Officer Hagen sounds less like a trained police officer and more like George Zimmerman who suspected Trayvon Martin was armed because he wore a hoodie.  It is lawful to wear a hoodie.  It is lawful to carry a pocketknife.  It can be lawful to carry a concealed weapon.  In order for a police officer to use *any* amount of force in making an arrest, there has to be an immediate risk of injury to the officer or another person.  Wearing a hoodie or having a pocketknife that is concealed out of view and not brandished is not an immediate risk of injury to anyone.  This Court should not give credence to Officer Hagen's claim that he was scared for his safety when nothing in the Complaint or BWC provides any factual support for it.

According to Officer Hagen, the prior attempt to flee means he is justified in using the K-9 to effect the violent, bloody arrest.  Allowing the District Court's ruling to stand would set a very dangerous precedent that would allow officers to use extreme force that is based facts that occurred in the past rather than the circumstances existing at the moment of the arrest.  Officer Hagen's position is the polar opposite of the holdings in *Graham* and *Elliott* which instruct courts to focus on the moment force was used because conduct prior to that moment is not relevant in determining whether an officer used reasonable force.

It is important to note that Officer Hagen's allegations about what he thought are not based on any evidence in the record, such as testimony, police reports or

15

other documentary evidence.  They are simply his (or more likely his counsel's) arguments based on the BWC, but they lack factual, evidentiary support.  At the same time, the District Court seemingly did not consider other facts properly in the record that establish Mr. Harrold was not a danger.  For instance, Mr. Harrold is an amputee (missing his lower left leg below the knee) who also has serious a medical condition that can cause him to do things that are out of character, and he was having an episode caused by his condition.  (Compl. ¶¶ 2, 31, JA4, 8.)  To quote one of the officers, Mr. Harrold was a "tiny human with one leg" and he was cornered in a room with the only exit blocked by Officer Hagen in a building surrounded by law enforcement officers.  (*Compl.* ¶¶ 22, 58, JA 7, 12).  These facts are important to consider when determining whether the circumstances justified the level of force used.  *See M.Y.M.,* 582 F. Supp. 3d at 335 (discussing that "Fourth Circuit case law makes clear that a reasonable officer could and ought to take into account the 6–7-inch difference in height and the 70-pound difference in weight….").

These allegations in the Complaint are presumed correct for purposes of a motion to dismiss and there is no evidence to refute any of them.  The District Court's decision to resolve this case based on the meager record existing at the motion to dismiss stage means Mr. Harrold did not get an opportunity to explain whether he heard the K-9 warnings or understood what was transpiring, among other things.  Now Officer Hagen contends that when he found Mr. Harrold, he assumed

Mr. Harrold was armed and dangerous (a bald assumption), but Mr. Harrold just as easily could have been incapacitated in some way just like the unresponsive vehicle passenger in *Keenan v. Ahern*, 524 F.Supp.3d 472, 483 (E.D. Va. 2021). These are all valid reasons why this case should not have been decided as it was below, but rather at the summary judgment stage at the earliest.

E. **Officer Hagen's nonsensical attempt to distinguish applicable cases does not negate the existence of clearly established precedent, core constitutional principles, and persuasive authority from other circuits.**

Officer Hagen's argument about existing case precedent is frankly baffling. On the one hand, Officer Hagen would have us believe the Sixth Circuit's decision in *Robinette v. Barnes*, 854 F.2d 909 (6th Cir. 1988) involves similar facts. (Brief of Appellee, at 24, ECF Doc. No. 12.) In that case, officers fully released a K-9 from its leash to allow the dog to search for a burglary suspect in a dark building. Officer Hagen says the *Robinette* case "is about as factually similar a case as one will find in the Fourth Amendment context[.]" (Brief of Appellee, at 41, fn. 6, ECF Doc. No. 12.) But in reality, Officer Hagen did not release Kona from its leash but rather allowed the dog to attack while on the leash. So, the operative and material facts in *Robinette* are quite different. On the other hand, Officer Hagen tries to distinguish this Court's decisions in *Kopf* and *Vathekan* by pointing out that those cases involved "the release of a K-9 off leash" and he says, "unlike in *Kopf* and *Vathekan*, Kona was on a lead held by Officer Hagen." (Brief of Appellee, at 36-37, ECF Doc. No.

17

12.)  In fact, because Officer Hagen never relinquished control of the K-9, the issues presented are more analogous to cases involving officers using tasers and guns because, as with those weapons, Officer Hagen maintained complete control of Kona at all relevant times.  Officer Hagen knowingly commanded the K-9 to "Packen" much as an officer would knowingly fire a gun or taser.  Again, the type of weapon is not dispositive, and it is clearly established that unnecessary, gratuitous, or disproportionate force is excessive.  *Meyers*, 713 F.3d at 734–35

Two of the cases relied upon by Officer Hagen were decided prior to the subject incident involve police using K-9s on leashes to search for a suspect or missing person.  *Melgar ex rel. Melgar v. Greene*, 593 F.3d 348 (4th Cir. 2010) and *Maney v. Garrison*, 681 Fed. Appx. 210 (4th Cir. 2017).  In those cases, the K-9 basically accidentally bit someone.  In *Maney*, the police dog accidentally bit a homeless person who was camping in some bushes.  In *Melgar*, the dog was being used to search for a missing thirteen-year-old boy and bit him instead.  In contrast, the case at bar involves no accident because Officer Hagen intentionally deployed Kona to attack Mr. Harrell by giving him the command "Packen" which Appellee says is German for "seize, bite, or grab."  (Appellee's Brief, at 6, ECF Doc. No. 14.) In these cases, this Court recognized:

> There is a vast difference between an officer releasing a dog off a leash knowing with a good degree of certainty that it will find and bite its target and an officer exercising substantial control over a leashed animal with the expectation of being able to prevent any injury.

*Melgar*, 593 F.3d at 358; *see also Maney*, 681 Fed. Appx. at 216.

Moreover, this Court recognizes that the question of whether or not a warning was given is not critical where an officer maintains control over the K-9, as Officer Hagen did.  In the *Melgar* decision, this Court held:

> While the *Vathekan* and *Kopf* decisions do establish that a warning is necessary before releasing a dog [ ] this case does not involve that situation. Here, in fact, the officer expected his control over the animal by means of the leash would render any warning unnecessary.

*Melgar*, 593 F.3d at 358 (internal citation omitted).

In contrast to the allegations in the Complaint and what the BWC video shows about Mr. Harrold's location and demeanor once located by Officer Hagen, Appellant contends Mr. Harrold was resisting arrest or attempting to flee.  Based on existing case precedent, this argument is without merit.  Fourth Circuit case law clearly establishes that "reflexive, or 'automatic,' resistance is not uncommon, should be anticipated by police officers, and does not justify the use of substantial force in response absent some additional reason to believe that force is necessary." *M.Y.M.*, 582 F. Supp. 3d at 339 (citing *Smith v. Murphy*, 634 Fed. Appx. 914 (4th Cir. 2015) ("As for the third Graham factor, resistance from Smith could be characterized as instinctive, and we have twice concluded that such reactions do not constitute active resistance.") (citing *Smith v. Ray*, 781 F.3d 95 (4th Cir. 2015) and *Rowland v. Perry*, 41 F.3d 167 (4th Cir. 1994))).

The case of *Robinette v. Barnes* involves a similar overall fact pattern in that a police dog was used by a K-9 officer named Barnes to apprehend a burglary suspect at a car dealership. 854 F.2d at 911.  However, the K-9 in *Robinette* named "Casey" was used in such a different way from Officer Hagen's K-9 that the case is inapplicable.[6]  In *Robinette*, the officers saw the suspect in a building, the suspect was actively fleeing, and the K-9 was turned loose.  *Id*.  ("As soon as Casey returned, Barnes gave the command, "Find him." Barnes and the dog then began to search the building. The dog ran ahead of Barnes while the officer checked some closed doors that Casey bypassed.").  At the moment the dog was deployed and the force used, the K-9 officer was searching for a fleeing suspect and "attempt[ing] to arrest a suspect hidden inside an unfamiliar building during the nighttime." 854 F.2d at 914. In contrast, Officer Hagen did not release his K-9 but rather kept the dog on a leash. When Officer Hagen commanded his K-9 to attack, he had already located Mr. Harrold, who was on the floor in a submissive and vulnerable position, in a well-lit room, surrounded by other officers, with no way to escape.  Because Mr. Harrold was not an immediate threat to Officer Hagen or anyone else when the K-9 was ordered to bite, the use of force was excessive under the second *Graham* factor and clearly established precedent.

---

[6] Besides the important factual distinctions, *Robinette* was decided on summary judgment instead of a motion to dismiss.  854 F.2d at 914.

There are no identical cases (nor must there be for the clearly established analysis) and any cases can be distinguished from one another in some way.   As discussed above, a right can be clearly established in the absence of a preexisting case decided on similar facts so it unnecessary to engage in Officer Hagen's mental gymnastics to distinguish the cases discussed by Mr. Harrold.  (*See* Appellant's Brief, at 34-45, ECF Doc. No. 12.)  The cases cited by Mr. Harrold from this Circuit and from the other circuits universally stand for the proposition that significant force cannot be lawfully deployed by an officer in the absence of a threat of immediate injury and the type of force deployed is not dispositive.[7]

---

[7] Appellant acknowledges Appellee's point that *Adams v. City of Cedar Rapids,* 74 F.4th 935 (8th Cir. 2023), does not constitute preexisting precedent since it was decided after December 26, 2021.  (*See* Brief of Appellee, at 44, ECF Doc. No. 14.) While Mr. Harrold mistakenly included one case decided after the relevant time period, Officer Hagen cited a plethora of cases decided after December 26, 2021 which are likewise not relevant to the clearly established analysis, including the following: *Atkinson v. Godfrey*, 100 F.4th 498 (4th Cir. 2024); *Benton v. Layton*, 2023 WL 3727934 (E.D. Va. May 30, 2023); *Best v. Farr*, 2023 WL 2975648 (Va. Ct. App. April. 18, 2023); *Brandon Chrishon Polk v. Stanly Cnty.,* 2024 WL 1287372 (M.D. N.C. Feb. 23, 2024); *Nesbitt v. City of Greensville*, 2025 WL 274619 (D.S.C. Jan. 23, 2025); *Omeish v. Kincaid*, 86 F.4th 546 (4th Cir. 2023); *Putnam v. Harris*, 66 F.4th 181 (4th Cir. 2023); *Rambert v. Harris*, 107 F.4th 388 (4th Cir. 2024); and *Schoonover v. Clay Cnty. Sheriff's Dep't*., 2023 WL 4026091 (4th Cir. June 15, 2023).

**F.** **Officer Hagen's actions were plainly incompetent such that he is not entitled to the benefit of qualified immunity.**

"The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Pearson v. Callahan*, 555 U.S. 223, 244 (2009).  But qualified immunity does not protect "the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Waterman v. Batton*, 393 F.3d 471, 476 (4th Cir. 2005).

In this case, it can be said that "deploying a police dog against a motionless, unresponsive, and outnumbered individual, who, in his physical state, has given police virtually no cause to suspect that he poses a risk of injury to others or will attempt to flee, cannot seriously be characterized as a permissive 'bad guess[ ] in [a] gray area[.]'" *Keenan*, 524 F. Supp. 3d at 483 quoting *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).  In addition to violating clearly established law, Officer Hagen's actions violated the Chesterfield County Police Department's own policy which "acknowledges that use of a K-9 to make physical contact with a suspect is a significant use of force and one that shall be done only in relatively serious situations and where lesser means of force are not available or reasonably practical." (Compl. ¶ 63, JA10.)  Overall, Officer Hagen's use of the K-9 to bite Mr. Harrold was not for any legitimate purpose because there were nonviolent options of making the arrest.  *See Orem v. Rephann*, 523 F.3d 442, 448–49 (4th Cir. 2008)

22

(discussing that "the taser gun was not used for a legitimate purpose, such as protecting the officers, protecting Orem, or preventing Orem's escape."). Officer Hagen violated Mr. Harrold's clearly established rights, and the District Court erred in finding otherwise.

### G.   Officer Hagen did not carry his burden of proof to show that Mr. Harrold's right at issue was not clearly established.

On the question of whether Mr. Harrold's right was clearly established at the relevant time, Officer Hagen bore the burden of proof. *Bryant v. City of Cayce*, 332 Fed. Appx. 129, 132 (4th Cir. 2009). Officer Hagen failed to carry his burden of proof and, rather, Mr. Harrold showed it was clearly established that a violation of his constitutional rights occurred.

### III.   CONCLUSION

For these reasons, the Complaint states a claim for excessive force and Mr. Harrold's rights were clearly established such that Officer Hagen is not entitled to qualified immunity. The judgment of the District Court should be reversed.

Respectfully submitted,

RICHARD P. HARROLD,

*Appellant*

Dated:    February 20, 2025.    By:___/s/ Robert J. Allen_____
                                              Counsel

Robert J. Allen (VSB No. 65214)
THORSENALLEN LLP
5413 Patterson Avenue, Suite 201
P. O. Box 17094
Richmond, VA  23226
Telephone: (804) 447-7234
Facsimile: (804) 447-7813
E-mail: rallen@thorsenallen.com
    *Counsel for Appellant*

<u>**CERTIFICATE OF COMPLIANCE**</u>

In accordance with Rule 32(a) of the Federal Rules of Appellate Procedure and the Local Rules of the Fourth Circuit Court of Appeals, I hereby certify that:

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains no more than 13,000 words. According to the word-processing system used to prepare the brief, Microsoft Word, it contains 6,194 words.

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface with serifs using Microsoft Word, Times New Roman, 14-point font.

By:      /s/ Robert J. Allen
Robert J. Allen (VSB No. 65214)
THORSENALLEN LLP
5413 Patterson Avenue, Suite 201
P. O. Box 17094
Richmond, VA  23226
Telephone: (804) 447-7234
Facsimile: (804) 447-7813
E-mail: rallen@thorsenallen.com
*Counsel for Appellant*

## CERTIFICATE OF SERVICE

In accordance with Rule 25 of the Federal Rules of Appellate Procedure and the Local Rules of the Fourth Circuit Court of Appeals, I hereby certify that on this 20th day of February, 2025, I electronically filed the foregoing brief with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel:

> Julie A.C. Seyfarth, Esquire
> Senior Deputy County Attorney
> Chesterfield County, Virginia
> P.O. Box 40
> Chesterfield, VA 23832
> Email: seyfarthj@chesterfield.gov
> *Counsel for Appellee*

> By:   /s/ Robert J. Allen
> Robert J. Allen, Esquire
> VSB No. 65214
> ThorsenAllen LLP
> 5413 Patterson Ave., Suite 201
> P.O. Box 17094
> Richmond, VA  23226
> Telephone: (804) 447-7234
> Facsimile: (804) 447-7813
> Email: rallen@thorsenallen.com
> *Counsel for Appellant*